# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YOUT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:20-cv-01602-SRU |
| | ) | |
| vs. | ) | |
| | ) | |
| THE RECORDING INDUSTRY | ) | |
| ASSOCIATION OF AMERICA, INC. and | ) | January 14, 2021 |
| DOE RECORD COMPANIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT RIAA'S MOTION TO DISMISS PLAINTIFF YOUT LLC'S
FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND .................................................................................................4

    A.    YouTube's Rolling Cipher and the DMCA's Anti-Circumvention Provisions...................................................................................................4

    B.    RIAA's Circumvention Notices........................................................................6

ARGUMENT .........................................................................................................................7

I.    THE COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIM OR, AT A MINIMUM, EXERCISE ITS DISCRETION TO DECLINE TO ENTERTAIN THE CLAIM ...........................7

    A.    Plaintiff's Allegations Do Not Satisfy the *Iqbal/Twombly* Pleading Standard ..........................................................................................................7

        1.    Plaintiff Does Not Plausibly Allege that the Rolling Cipher Does Not Effectively Control Access to Protected Works ...................................7

        2.    Plaintiff Does Not Plausibly Allege that the Yout Service Does Not Circumvent the Rolling Cipher ................................................................10

    B.    At a Minimum, the Court Should Exercise Discretion to Decline Jurisdiction Over Plaintiff's Declaratory Judgment Claim.................................12

II.    PLAINTIFF'S SECTION 512(F) CLAIM FAILS BECAUSE THE STATUTE DOES NOT PROSCRIBE ALLEGED MISREPRESENTATIONS ABOUT CIRCUMVENTION AND BECAUSE PLAINTIFF DOES NOT (AND CANNOT) PLEAD RIAA HAD ACTUAL KNOWLEDGE OF THE ALLEGED MISREPRESENTATION....................................................................................14

    A.    Plaintiff's Claim Fails as a Matter of Law Because Section 512(f) Proscribes Notices of Copyright Infringement, Not Circumvention ...................14

    B.    Even if Plaintiff Could State a Section 512(f) Claim for Alleged Misrepresentations Regarding Circumvention, Plaintiff Fails to Plausibly Allege RIAA's Knowledge of a Misrepresentation.................................15

III.    PLAINTIFF'S CLAIMS FOR DEFAMATION PER SE AND BUSINESS DISPARAGEMENT SHOULD BE DISMISSED BECAUSE PLAINTIFF DOES NOT SUFFICIENTLY PLEAD FALSITY .........................................................16

CONCLUSION......................................................................................................................18

i

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
 307 F. Supp. 2d 1085 (N.D. Cal. 2004) ....................................................................8

*Arista Records, Inc. v. Mp3Board, Inc.*,
 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) .........................................................15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................7

*Cabell v. Zimmerman*,
 2010 WL 996007 (S.D.N.Y. Mar. 12, 2010) ......................................................15, 16

*Chevrestt v. Am. Media, Inc.*,
 204 F. Supp. 3d 629 (S.D.N.Y. 2016) ......................................................................16

*Complex Media, Inc. v. X17, Inc.*,
 2019 WL 2896117 (C.D. Cal. Mar. 4, 2019) ...........................................................17

*Coretti v. Lefkowitz*,
 965 F. Supp. 3 (D. Conn. 1997) .................................................................................7

*Flamm v. Am. Ass'n of Univ. Women*,
 201 F.3d 144 (2d. Cir. 2000) ....................................................................................17

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) .................................................................................................12

*Mercer v. Gupta*,
 712 F.3d 756 (2d Cir. 2013) .......................................................................................7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005) ...................................................................................................5

*Ningbo Mizhihe I&E Co., Ltd. v. Does 1-200*,
 2020 WL 2086216 (S.D.N.Y. Apr. 30, 2020) ...............................................10, 15, 16

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
 344 U.S. 237 (1952) .................................................................................................12

*RealNetworks, Inc. v. DVD Copy Control Ass'n*,
 641 F. Supp. 2d 913 (N.D. Cal. 2009) ...............................................................8, 9, 12

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Rossi v. Motion Picture Ass'n of Am., Inc.*,
    391 F.3d 1000 (9th Cir. 2004) ................................................................................................15

*Skakel v. Grace*,
    5 F. Supp. 3d 199 (D. Conn. 2014)...................................................................................17, 18

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)................................................................................................................13

*TD Bank, N.A. v. Hill*,
    2015 WL 4523570 (D.N.J. July 27, 2015)..............................................................................16

*Twelve Inches Around Corp. v. Cisco Sys., Inc.*,
    2009 WL 928077 (S.D.N.Y. Mar. 12, 2009) .........................................................................15

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001)......................................................................................................5

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000)..................................................................................8, 13

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007)...................................................................................12

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)................................................................................................................12

*Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*,
    2017 WL 1386357 (S.D.N.Y. Apr. 17, 2017).........................................................................12

**STATE CASES**

*Gleason v. Smolinski*,
    319 Conn. 394 (2015) .......................................................................................................17, 18

*Jaiguay v. Vasquez*,
    287 Conn. 323 (2008) .............................................................................................................17

*QSP, Inc. v. Aetna Cas. & Sur. Co.*,
    256 Conn. 343 (2001) .............................................................................................................17

*Simms v. Seaman*,
    308 Conn. 523 (2013) .............................................................................................................17

**TABLE OF AUTHORITIES**
(Continued)

**Page**

**FEDERAL STATUTES**

17 U.S.C. § 106(1)...........................................................................................................4

17 U.S.C. § 106(6)...........................................................................................................4

17 U.S.C. § 512(f)..................................................................................................... passim

17 U.S.C. § 1201(a)(1)(A)..............................................................................................2, 5

17 U.S.C. § 1201(a)(2).......................................................................................................5

17 U.S.C. § 1201(a)(3)(A)........................................................................................6, 10, 11

17 U.S.C. § 1201(a)(3)(B)..................................................................................................9

Declaratory Judgment Act, 28 U.S.C. § 2201.....................................................................3, 12

Digital Millennium Copyright Act, 17 U.S.C. § 1201.......................................................... passim

**STATE RULES**

Rule 12(b)(6).............................................................................................................3, 7, 12

**OTHER AUTHORITIES**

4 *Nimmer on Copyright* § 12A.03 (2020).............................................................................8

## INTRODUCTION

Defendant Recording Industry Association of America, Inc. ("RIAA") represents the record companies that own or control the copyrights in the great majority of the world's most popular sound recordings. RIAA members authorize online streaming services, such as Google's YouTube, to stream their copyrighted works. In return, Google shares revenue with RIAA members and commits to protecting their copyrighted sound recordings from unauthorized access and copying. Such business relationships are the cornerstone of the legitimate digital music economy.

Plaintiff Yout LLC ("Plaintiff") operates an unauthorized stream-ripping service, available at yout.com ("Yout"). Plaintiff's service is a haven for copyright infringement. As Plaintiff readily admits, the purpose of Yout is to enable its users to turn *authorized streams* of sound recordings on services such as YouTube into *unauthorized permanent downloads*, so that users can listen to those sound recordings "without the necessity of visiting the website on which the original content resides [*i.e.*, YouTube]." (ECF No. 9, First Amended Complaint ("FAC") ¶¶ 23–24.) By using Plaintiff's illicit service, Yout's users have no need to pay for downloaded copies of the sound recordings or to subscribe to streaming services, such as Spotify, that permit offline listening and compensate the record companies for the exercise of their exclusive rights. Plaintiff reaps ill-gotten profits by facilitating the unlawful reproduction of the record companies' copyrighted sound recordings without obtaining licenses or paying the record companies for the exploitation of the works that fuel Plaintiff's business.

Google has implemented a technological measure on YouTube called a "rolling cipher," the purpose of which is to protect copyrighted works by preventing precisely what the Yout service offers its users—unlawful access to and reproduction of copyrighted works that YouTube streams. Congress recognized the importance of preventing services like Yout from

circumventing technological measures like the YouTube rolling cipher when it enacted the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* ("DMCA").  Section 1201 of the DMCA prohibits "circumvent[ing] a technological measure that effectively controls access to" copyrighted works.  17 U.S.C. § 1201(a)(1)(A).  Aware that some services may violate section 1201 by circumventing the YouTube rolling cipher, Google has a process through which copyright owners can report circumvention violations to Google.  This lawsuit arises from RIAA's use of that process to report Plaintiff's (and numerous other stream-ripping services') circumvention of the YouTube rolling cipher to Google, and Google's decision to "de-list" the Yout service from its search results.  RIAA was well within its rights to report Plaintiff's unlawful action to Google.

Plaintiff is no stranger to legal challenges to its service.  Yout has been the subject of legal proceedings in Italy, Denmark, Brazil, and Spain.  Courts in those countries have uniformly concluded that the Yout service is illegal and issued orders blocking it from their jurisdictions.[1] After suffering repeated defeats in foreign courts, Plaintiff now seeks this Court's help in continuing its illegal activities in the United States.  It is apparent, however, that the Yout service is just as unlawful under U.S. law as it is under the laws of Denmark, Italy, Spain, and Brazil.

Plaintiff's claims are meritless, and the First Amended Complaint should be dismissed.

---

[1] *See, e.g.*, Chris Cooke, *Danish courts block stream-ripping site Yout.com despite it employing the "but we don't copy anything" defense*, Complete Music Update (Apr. 27, 2020), https://completemusicupdate.com/article/danish-courts-block-stream-ripping-site-yout-com-despite-it-employing-the-but-we-dont-copy-anything-defence/; *Italian court confirms stream ripping is illegal*, IFPI (Aug. 2, 2019), https://www.ifpi.org/italian-court-confirms-stream-ripping-is-illegal/.  These decisions provide context and support the RIAA's position in this lawsuit, but are not necessary to resolving the motion to dismiss.  If the Court is interested in the decisions, RIAA would be glad to submit translated copies.

*First*, Plaintiff's claim under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA") fails to allege enough facts to state a claim that the Yout service does not violate section 1201. On the contrary, the few non-conclusory facts that Plaintiff has alleged demonstrate that the Yout service bypasses a technological measure (the YouTube rolling cipher) to gain access to copyrighted sound recordings without the authority of the copyright owners—*i.e.*, the service circumvents in violation of section 1201.  Plaintiff contends that the DMCA does not proscribe bypassing the YouTube rolling cipher because the rolling cipher is not effective at restricting access to the sound recording files.  But the law is clear that a technological measure's effectiveness is judged from the perspective of an ordinary consumer, and Plaintiff tacitly admits that the rolling cipher is effective because without it, the ordinary consumer would only be able to listen to, and not "record" and "store on the user's computer in the form of an MP3 file"—*i.e.*, copy—"the audio of a streamed video" on YouTube.  (FAC ¶ 23.)  Plaintiff cannot cure this deficiency with more facts, which would only make its violation of section 1201 even more clear.

Even if Plaintiff's DJA claim did not fail to state a claim under Rule 12(b)(6), the Court should exercise its discretion to decline DJA jurisdiction because Plaintiff's request for a broad declaration that the Yout service does not violate any of Defendants' rights, nor apparently Google's rights, reaches beyond the claims and parties at issue in the alleged dispute.

*Second*, Plaintiff has failed to state a claim that RIAA violated 17 U.S.C. § 512(f). Section 512(f) creates a cause of action expressly limited to alleged misrepresentations regarding *copyright infringement*.  Plaintiff does not allege that RIAA reported copyright infringement to Google.  Instead, Plaintiff alleges that RIAA reported that the Yout service circumvents YouTube's rolling cipher, which is a distinct legal issue.  This allegation does not and cannot

constitute a section 512(f) violation, because the statute does not proscribe alleged

misrepresentations regarding *circumvention*.  Moreover, even if section 512(f) permitted claims

challenging representations regarding circumvention (which it does not), Plaintiff's claim would

still fail because Plaintiff has not plausibly alleged that RIAA submitted its notices to Google

with actual knowledge of their falsity, which is a required element of a section 512(f) claim.

> *Finally*, the Court should dismiss Plaintiff's business disparagement and defamation per

se claims because Plaintiff fails to plead that RIAA's reports to Google amounted to a false

statement.

> Because Plaintiff has already amended once and these deficiencies cannot be cured,

RIAA respectfully requests that the Court dismiss the First Amended Complaint with prejudice.

## FACTUAL BACKGROUND

### A.      YouTube's Rolling Cipher and the DMCA's Anti-Circumvention Provisions

> YouTube and other authorized online streaming services are an important source of

revenue for copyright owners.  When such services stream songs to their users, they publicly

perform the sound recordings by means of digital audio transmissions, an exclusive right of the

copyright owner.  *See* 17 U.S.C. § 106(6).  The copyright owner receives contractual

compensation for such performances.  If a user obtains access to the digital file embodying the

sound recording and then copies it, the copyright owner's exclusive reproduction right has been

infringed.  *See id.* § 106(1).  If the user has a copy of the unlawfully copied sound recording on

his or her computer or handheld device, there is no need for the user to stream the song through

YouTube (or any other online music streaming service), and thus no compensation is paid to the

copyright owner.  Moreover, once the user has an unprotected copy of the digital file, the user is

able to unlawfully copy and distribute the same file to others.

The harm from the copying and dissemination of digital copies of sound recordings and other copyrighted works is well known and has been confirmed repeatedly in the case law.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928–29 (2005) ("[D]igital distribution of copyrighted material threatens copyright holders as never before, because every copy is identical to the original, copying is easy, and many people (especially the young) use file-sharing software to download copyrighted works.").

In recent years, with the increased prevalence of authorized streaming services, unlawful stream-ripping services like Yout have become a substantial source of music piracy. Unsurprisingly, when copyright owners authorize services like YouTube and other online music services to stream their content, the owners require those services to employ technological protection measures ("TPMs") that safeguard against unauthorized access to and copying of their works.  The services, in turn, implement technology like the YouTube rolling cipher and prohibit users from circumventing such technology to make copies of protected sound recordings.[2]

Congress enacted section 1201 of the DMCA to target unscrupulous actors who develop and deploy technology that circumvents measures that safeguard access to and copying of copyrighted works.  *See generally Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440–41 (2d Cir. 2001) (describing the DMCA's purpose and anti-circumvention provisions).  Section 1201 prohibits circumventing technological measures that safeguard access to copyrighted works, 17 U.S.C. § 1201(a)(1)(A), or trafficking in circumvention technology, *id.* § 1201(a)(2). Section 1201 specifically defines what it means "to circumvent" an access-control technological

---

[2] *See, e.g.*, YouTube's Terms of Service, Permissions and Restrictions ¶ 2, https://www.youtube.com/static?template=terms (last visited Jan. 11, 2021) ("You are not allowed to . . . circumvent, disable, fraudulently engage with, or otherwise interfere with any part of the Service . . . , including security-related features or features that [] prevent or restrict the copying or other use of Content.").

measure: "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id*. § 1201(a)(3)(A).

**B.     RIAA's Circumvention Notices**

RIAA is a trade organization that supports and promotes the creative and financial vitality of the major recorded music companies. (FAC ¶ 29.) RIAA works to protect record companies from piracy in a number of ways, including by notifying online services, such as YouTube, when users employ technology that circumvents the TPMs that services employ to protect RIAA members' works from unauthorized copying. (*See id.* ¶¶ 30–35.)

Plaintiff alleges that RIAA submitted notices to Google on three occasions "with the purpose of causing Yout's URL to be delisted." (*Id.*) The notices reported that Plaintiff was engaged in unauthorized circumvention. (*Id.*) Each notice stated: "To our knowledge, [Yout's URL] provide[s] access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading." (*Id.* ¶¶ 31, 33, 35; ECF No. 1, Complaint ("Compl."), Exs. A–C.[3]) Plaintiff alleges that Google has delisted its service. (FAC ¶ 79.)

---

[3] Plaintiff appears to have inadvertently omitted Exhibits A–C from the First Amended Complaint.

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIM OR, AT A MINIMUM, EXERCISE ITS DISCRETION TO DECLINE TO ENTERTAIN THE CLAIM**

**A.    Plaintiff's Allegations Do Not Satisfy the *Iqbal/Twombly* Pleading Standard**

The Court should dismiss under Rule 12(b)(6) where a complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Courts "giv[e] no effect to legal conclusions couched as factual allegations." *Mercer v. Gupta*, 712 F.3d 756, 758 (2d Cir. 2013) (citation omitted); *see also Coretti v. Lefkowitz*, 965 F. Supp. 3, 4 (D. Conn. 1997) (same).

Most of Plaintiffs' DJA allegations simply assert, with no factual support, that the Yout service does not satisfy one or more of the elements of a section 1201 violation. (*See, e.g.*, FAC ¶¶ 37, 39, 54–55, 60.) Plaintiff's conclusory assertions are based on a misreading of section 1201. Moreover, Plaintiff is largely silent about almost all aspects of how its service actually works. The facts that it does plead lead to the only plausible conclusion—that the Yout service unlawfully circumvents.

**1.    Plaintiff Does Not Plausibly Allege that the Rolling Cipher Does Not Effectively Control Access to Protected Works**

Plaintiff first alleges that YouTube's rolling cipher is not effective at safeguarding access to the copyrighted sound recording files that YouTube streams and therefore that the Yout service's bypassing of the rolling cipher is not circumvention. (FAC ¶¶ 40, 42, 43.) Relying primarily on a letter from a third-party that purports to describe how to defeat YouTube's rolling

cipher (FAC ¶ 43 n.3), Plaintiff alleges that the rolling cipher does not "prevent" copying (*id.* ¶ 40) or require "secret knowledge" in order to access the copyrighted sound recording (*id.* ¶ 42), and that the means of defeating the rolling cipher are "publicly available" (*id.* ¶ 43).  Plaintiff misinterprets the law.

First, the allegation that Plaintiff or others with technical expertise have figured out how to defeat the rolling cipher does not establish that the rolling cipher is ineffective for purposes of section 1201.  If Plaintiff's position were correct, it would amount to a free pass because the statute would only apply to those TPMs that could not be defeated.  For this reason, numerous courts have rejected the same argument upon which Plaintiff bases its claim about the alleged ineffectiveness of the YouTube rolling cipher.  *See RealNetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 932 (N.D. Cal. 2009) (rejecting argument that a TPM was ineffective under section 1201 because it had "already been cracked or hacked"); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1095 (N.D. Cal. 2004) (rejecting argument that wide availability of keys made a TPM an ineffective access control, because "this is equivalent to a claim that, since it is easy to find skeleton keys on the black market, a deadbolt is not an effective lock to a door"); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317–18 (S.D.N.Y. 2000) (rejecting argument that 40-bit encryption amounts to a "weak cipher" because "defendants' construction, if adopted, would limit the application of the statute to access control measures that thwart circumvention, but withhold protection for those measures that can be circumvented").  Indeed, the leading copyright treatise explains that the position advanced by Plaintiff would render section 1201 "nonsensical."  *See* 4 *Nimmer on Copyright* § 12A.03 (2020) ("The mere circumstance that [a] defendant succeeds in deactivating the subject

technology cannot mean that the technology fails to offer 'effective control,' as otherwise the statute would be rendered nonsensical.").

Second, it is well settled that the question of whether a TPM effectively controls access to a work for purposes of section 1201 must be assessed at the level of an "ordinary" or "average" consumer—not an online security engineer with a background in computer science.[4] *RealNetworks*, 641 F. Supp. 2d at 932 ("A plain reading of this statutory language means that access-control is at the level of the ordinary consumer, to prevent the easy creation of widely available and usable copyrighted works.").  Plaintiff has not alleged any facts that would allow the court to draw the reasonable inference that the YouTube rolling cipher is so ineffective that an ordinary consumer could figure out how to defeat it.  To the contrary, the third-party letter Plaintiff cites requires several pages of technical instructions to explain (supposedly) how to defeat the rolling cipher.  Under section 1201, a technological measure is effective if it, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."  17 U.S.C. § 1201(a)(3)(B).  The third-party letter makes clear that gaining access to the copyrighted works protected by the YouTube rolling cipher cannot be achieved in "the ordinary course" of the rolling cipher's operation; rather, it requires the application of technical information and a detailed process.  Moreover, the letter acknowledges that a German court has concluded, among other things, that circumventing the YouTube rolling cipher is "beyond the capabilities of the

---

[4] The author of the third-party letter on which Plaintiff relies for its allegation that the rolling cipher is ineffective (*see* FAC ¶ 43 n.3) is a former "security engineer at Netscape Communications" with a background in computer science who claims to have "worked to secure Web browsers against malware and coordinated the security research efforts of hackers on three continents."  EFF's Staff and Contributors, Mitch Stoltz bio page, https://www.eff.org/about/staff/mitch-stoltz.

average user," and that it "was on this basis that the court declared the code to be an effective technical measure under Germany's analogue of Section 1201."[5]  (FAC ¶ 43 n.3 (quoting EFF letter cited by Plaintiff)).   Plaintiff's allegations therefore allow for only one plausible inference: the YouTube rolling cipher is an effective TPM.

### 2.   Plaintiff Does Not Plausibly Allege that the Yout Service Does Not Circumvent the Rolling Cipher

Plaintiff also seeks a declaration that the Yout service does not circumvent the YouTube rolling cipher.  As noted, "to circumvent" means, among other things, "to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).  Plaintiff's claim that it does not avoid or bypass the rolling cipher is not plausible on its face.  Indeed, the only plausible conclusion from the few facts alleged is that the Yout service *does* circumvent.

First, Plaintiff admits that the entire purpose of the Yout service is to allow users to access for copying sound recording files the users otherwise could not access and copy.  As Plaintiff alleges, the purpose of the Yout service is to "allow[] a user to record the audio of a streamed video and store it locally on the user's computer in the form of an MP3 file."  (FAC ¶ 23.)  Plaintiff explains that "the user can thereby listen or view the locally stored content when not connected to the Internet and without the necessity of visiting the website on which the original content resides."  (*Id.* ¶ 24.)  In other words, Plaintiff concedes that while YouTube

---

[5] The referenced German decision, issued December 18, 2017 by the Hamburg Regional Court in the Matter of Sony Music Entertainment Germany GmbH, File No. 308 0 230/17, is available on the court's website at http://www.rechtsprechung-hamburg.de/jportal/portal/page/bsharprod.psml?doc.id=JURE180006255&st=ent&doctyp=juris-r&showdoccase=1&paramfromHL=true#focuspoint.  The German court found that YouTube's rolling cipher is beyond the capabilities of the average user and is an effective technical measure under Germany's analogue of Section 1201.  If the Court is interested, RIAA would be glad to submit a translated copy of the decision.

allows users only to listen to streams of sound recordings while they are online, the Yout service enables users to access the sound recording files and copy them in the form of permanent downloads.  If YouTube allowed users to turn streams into downloads, there would be no need for services like Yout.  The Yout service exists precisely because YouTube tries to prevent users from turning certain streams into downloads, and expressly forbids them from doing so.  The technological measure that Google uses to achieve that objective is the rolling cipher.  Plaintiff concedes that it "encounters" the rolling cipher and then "reads and interprets the JavaScript program" and "derives a signature value" to access the file.  (FAC ¶ 41.)  The only reasonable inference to draw from those vague allegations is that the Yout service enables users to avoid or bypass that technological measure—that is the very definition of circumventing a TPM under section 1201.  For this straightforward reason, Plaintiff cannot plausibly allege a claim for declaratory judgment under section 1201.

Second, Plaintiff's claim ignores the definition of circumvention.  Section 1201 provides that a service like Yout "circumvent[s] a technological measure" if it bypasses or avoids that measure "*without the authority of the copyright owner.*"  17 U.S.C. § 1201(a)(3)(A) (emphasis added).  Plaintiff of course has not alleged (nor could it), that Plaintiff has the authority of RIAA members (the copyright owners of sound recordings) to bypass the YouTube rolling cipher or to turn authorized streams of their recordings into unauthorized downloads.  Absent the authority of the copyright owners, Plaintiff's claim for a declaratory judgment necessarily fails.

Third, Plaintiff seems to suggest that it does not circumvent a TPM because it merely uses "publicly available means" to bypass the rolling cipher.  (FAC ¶¶ 41–43.)  But technology does not have to "crack" or "break" a TPM to circumvent it.  *See RealNetworks*, 641 F. Supp. 2d

at 935–36 (rejecting as "legal legerdemain" the argument that because "RealDVD does not 'remove' the layers of CSS protection").

In sum, Plaintiff's allegations do not establish a plausible claim that the Yout service does not circumvent.  The allegations actually establish the reasonable inference that Yout circumvents the rolling cipher and thereby violates section 1201.

**B.    At a Minimum, the Court Should Exercise Discretion to Decline Jurisdiction Over Plaintiff's Declaratory Judgment Claim**

Jurisdiction pursuant to the DJA rests squarely within the discretion of the district court. The DJA provides that a court "*may* declare the rights" of litigants.  28 U.S.C. § 2201(a) (emphasis added).  The Supreme Court has "[made] clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

A district court may consider equitable, prudential, and policy arguments in deciding whether to exercise its discretion to dismiss a claim. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007).  Courts must exercise caution in entertaining declaratory relief actions where the plaintiff seeks a ruling that would reach far beyond the particular case. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952).  If this Court does not dismiss Plaintiff's claim under Rule 12(b)(6) (which it should), it should nonetheless decline to exercise its discretion to hear Plaintiff's claim for two reasons.

First, "courts regularly reject the use of the declaratory judgment procedure to anticipatorily assert affirmative defenses." *Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*, 2017 WL 1386357, at *9 (S.D.N.Y. Apr. 17, 2017); *see also Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) ("[U]sing the Declaratory

Judgment Act to anticipate an affirmative defense is not ordinarily proper, and numerous courts have refused to grant declaratory relief to a party who has come to court only to assert an anticipatory defense.").  Here, Plaintiff seeks to preemptively assert defenses that its product does not circumvent or that its conduct is protected by the affirmative defense of fair use.[6]

Second, Plaintiff is using the declaratory judgment statute too broadly, attempting to insulate its business model against any claims that RIAA (or its members) have against the Yout service.  (FAC ¶ 65(c).)  Even if limited to section 1201, Plaintiff seeks a ruling that would reach far beyond this particular case—that a TPM is not effective if an internet browser can interpret the mechanism.  (*Id.* ¶¶ 41–43.)  Such a ruling could upend music streaming and have drastic consequences for how copyrighted works are shared online.  The Court should therefore exercise its discretion to decline jurisdiction over Plaintiff's DJA claim.

---

[6] Plaintiff alleges that its software platform allows for "time-shifted viewing and listening." (FAC ¶ 44.)  Plaintiff thus tries to cloak its conduct in the discussion of the Copyright Act's fair use defense in *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) (holding that manufacturers of home videocassette recorders were not liable for contributory copyright infringement because third parties could use those devices for private, noncommercial time-shifting of programs broadcast on over-the-air television, which the Court deemed to be a fair use).  But the potential for a user to make a fair use of a copyrighted work unlawfully accessed with circumvention technology is irrelevant to a section 1201 violation.  *Reimerdes*, 111 F. Supp. 2d at 323–24 (noting that Congress considered and rejected a fair use defense to section 1201 claims), *aff'd*, *Corley*, 273 F.3d at 434–35.

## II.    PLAINTIFF'S SECTION 512(f) CLAIM FAILS BECAUSE THE STATUTE DOES NOT PROSCRIBE ALLEGED MISREPRESENTATIONS ABOUT CIRCUMVENTION AND BECAUSE PLAINTIFF DOES NOT (AND CANNOT) PLEAD RIAA HAD ACTUAL KNOWLEDGE OF THE ALLEGED MISREPRESENTATION

### A.    Plaintiff's Claim Fails as a Matter of Law Because Section 512(f) Proscribes Notices of Copyright Infringement, Not Circumvention

Plaintiff's section 512(f) claim is based on RIAA's alleged misrepresentations to Google that the Yout service is circumvention technology.  (FAC ¶ 73 ("Defendants failed to determine whether Yout's software platform would, in fact, circumvent such digital mechanism."); *id.* ¶ 74 ("Defendants misrepresented that Yout's software platform circumvents digital copyright mechanisms."); Compl. Exs. A–C ("To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading.").)

Plaintiff's claim fails as a matter of law because the statutory text makes clear that section 512(f) penalizes only misrepresentations regarding alleged *copyright infringement*, but not misrepresentations regarding alleged *circumvention.*  Section 512(f) provides:

> Any person who knowingly materially misrepresents under this section . . . *that material or activity is infringing* . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as a result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . .

17 U.S.C. § 512(f) (emphasis added).[7]  Courts have uniformly recognized this limitation on section 512(f).  "Section 512 only penalizes copyright holders for knowingly materially misrepresenting 'that material or activity is infringing.'  It does not provide a cause of action for knowingly materially misrepresenting [other claims]."  *Arista Records, Inc. v. Mp3Board, Inc.*,

---

[7] Section 512 was enacted as part of the DMCA, but is distinct from the circumvention provisions at 17 U.S.C. §§ 1201 *et seq.*

2002 WL 1997918, at \*15 (S.D.N.Y. Aug. 26, 2002) (finding there could be no section 512(f)

claim for representations regarding whether "a service provider may be liable for hosting certain

material"); *Twelve Inches Around Corp. v. Cisco Sys., Inc.*, 2009 WL 928077, at \*3 (S.D.N.Y.

Mar. 12, 2009) (concluding section 512(f) was limited to misrepresentations of copyright

infringement); *see also Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir.

2004) (noting that section 512(f) is an "expressly limited cause of action for improper

infringement notifications").

Because Plaintiff's section 512(f) claim is based solely on alleged misrepresentations

regarding the Yout service's unlawful circumvention (*see generally* FAC ¶¶ 67–84), and because

Plaintiff has not alleged that RIAA made misrepresentations regarding infringement, Plaintiff has

failed to state a claim under section 512(f).

### B. Even if Plaintiff Could State a Section 512(f) Claim for Alleged Misrepresentations Regarding Circumvention, Plaintiff Fails to Plausibly Allege RIAA's Knowledge of a Misrepresentation

Even if section 512(f) were applicable (which it is not), Plaintiff's claim would fail

because Plaintiff has not plausibly alleged that RIAA knew that the Yout service did not

circumvent, which is a required element of a section 512(f) claim.

Plaintiff has superficially alleged that RIAA "knew" that the Yout service "does not

circumvent." (FAC ¶ 75.) But that conclusory allegation is wholly unsupported by any facts.

For a section 512(f) claim to survive a motion to dismiss, the plaintiff must allege facts to

support an inference of knowing misrepresentation. *See Ningbo Mizhihe I&E Co., Ltd. v. Does

1-200*, 2020 WL 2086216, at \*3–4 (S.D.N.Y. Apr. 30, 2020) (dismissing section 512(f) claim

where "there is insufficient material in the pleadings to support the inference that Plaintiff knew

their copyrights were not enforceable"); *Cabell v. Zimmerman*, 2010 WL 996007, at \*4

(S.D.N.Y. Mar. 12, 2010) ("[A]s a prerequisite to liability under section 512(f), a defendant must

have actual knowledge that it is making a misrepresentation of fact."); *TD Bank, N.A. v. Hill*,

2015 WL 4523570, at *21 (D.N.J. July 27, 2015) (liability under Section 512(f) attaches only

"where there is a demonstration of some actual knowledge of misrepresentation on the part of the

copyright owner" (internal quotation marks and citation omitted)); *Chevrestt v. Am. Media, Inc.*,

204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016) (noting the complaint "contains no factual allegations

supporting those conclusions (speculations?), such as showing that [the movant] was confronted

or otherwise made aware of its alleged[] [misrepresentation]," and dismissing DMCA claim).

Plaintiff has not alleged any facts that would support such an inference here.

Plaintiff alleges that "Defendants failed to determine whether Yout's software platform

would, in fact, circumvent [YouTube's rolling cipher] by testing the platform" with protected

works.  (FAC ¶ 73.)  But purportedly failing to perform an adequate investigation is insufficient

to establish a section 512(f) claim.  *See Ningbo Mizhihe*, 2020 WL 2086216, at *3 ("[T]his

contention effectively is one accusing Plaintiff of failing to perform an adequate investigation of

the available prior art, which sounds merely in negligence."); *Cabell*, 2010 WL 996007, at *4

("[N]egligence is not the standard for liability under section 512(f)."); *TD Bank*, 2015 WL

4523570, at *21 (under section 512(f), appropriate inquiry is not "whether a copyright owner

*should have known* that it was making a material representation").

For these reasons, Plaintiff's allegations fall far short of stating a claim under section

512(f), and the claim should be dismissed.

### III.   PLAINTIFF'S CLAIMS FOR DEFAMATION PER SE AND BUSINESS DISPARAGEMENT SHOULD BE DISMISSED BECAUSE PLAINTIFF DOES NOT SUFFICIENTLY PLEAD FALSITY

Plaintiff asserts claims for defamation per se and business disparagement based on

RIAA's statements in its submissions to Google that the Yout service circumvents YouTube's

rolling cipher.[8]  (FAC ¶¶ 85–117.)  Both business disparagement and defamation per se are

species of common law defamation.  *See QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 358

(2001); *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014).  Accordingly, they require

pleading of a defamatory statement.  *Simms v. Seaman*, 308 Conn. 523, 547–48 (2013) (listing

elements).  A defamatory statement "must be false to be actionable as defamation."  *Skakel*, 5 F.

Supp. 3d at 206.  In cases "when an allegedly defamatory statement is made about a plaintiff

who is a private figure, but relates to a matter of public concern"—here, violations of section

1201 of the DMCA—"those 'defamatory statements must be provably false, and the plaintiff

must bear the burden of proving falsity.'"  *See Gleason v. Smolinski*, 319 Conn. 394, 444 (2015)

(quoting *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144 (2d. Cir. 2000)); *see also Complex

Media, Inc. v. X17, Inc.*, 2019 WL 2896117, at *3 (C.D. Cal. Mar. 4, 2019) (DMCA notices were

matter of public concern).

    Plaintiff does not satisfy this burden.  Plaintiff alleges that "[t]he Defendants' DMCA

Notices to Google falsely and impliedly stated that Yout's software program violates 17 U.S.C.

§ 1201."  (FAC ¶ 93.)  But simply stating that a claim is false is not sufficient to state a prima

facie claim of defamation and meet the plaintiff's pleading burden.  *See Gleason*, 319 Conn. at

444–45; *Skakel*, 5 F. Supp. 3d at 206–08 (while falsity is ultimately a question for jury, the

plaintiff must "specifically ple[a]d" facts that if accepted as true would establish a defamatory

statement).  As explained in Section I.A., *supra*, Plaintiff has failed to allege sufficient, non-

---

[8] Plaintiff does not allege which state's law applies.  Under Connecticut's choice of law
principles, courts apply the law of the state with the most significant relationship to the
occurrence and the parties.  *See, e.g.*, *Jaiguay v. Vasquez*, 287 Conn. 323, 349–53 (2008).  For
purposes of the present motion only, RIAA assumes that Connecticut law would apply to
Plaintiff's state law claims given that Yout:  (1) is a limited liability company registered in and
with its principal place of business in Connecticut; and (2) alleges that it "suffered harm from
Defendants' conduct in the State of Connecticut."  (FAC ¶¶ 2, 18.)

conclusory facts to establish that the Yout service does not circumvent YouTube's rolling cipher.

If anything, as discussed above, Plaintiff's allegations demonstrate that RIAA's notices are true.

For these reasons, the Court should dismiss Plaintiff's state law claims with prejudice.

## CONCLUSION

RIAA respectfully requests that the Court dismiss Plaintiff's First Amended Complaint,

with prejudice.

DATED:  January 14, 2021              Respectfully submitted,


                                      */s/ Rose Leda Ehler*
                                      GLENN D. POMERANTZ (*appearing pro hac vice*)
                                      ROSE LEDA EHLER (*appearing pro hac vice*)
                                      SHANNON AMINIRAD (*appearing pro hac vice*)
                                      MUNGER, TOLLES & OLSON LLP
                                      350 South Grand Avenue
                                      Fiftieth Floor
                                      Los Angeles, CA 90071-3426
                                      T:  (213) 683-9100
                                      F:  (213) 687-3702
                                      glenn.pomerantz@mto.com
                                      rose.ehler@mto.com
                                      shannon.aminirad@mto.com

                                      JAMES O. CRAVEN (ct18790)
                                      DAVID NORMAN-SCHIFF (ct30082)
                                      WIGGIN AND DANA LLP
                                      One Century Tower
                                      265 Church Street
                                      P.O. Box 1832
                                      New Haven, CT 06508-1832
                                      T:  (203) 498-4400
                                      F:  (203) 782-2889
                                      jcraven@wiggin.com

                                      Attorneys for Defendant Recording Industry
                                      Association of America, Inc.