## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YOUT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:20-cv-01602-SRU |
| | ) | |
| vs. | ) | |
| | ) | |
| THE RECORDING INDUSTRY | ) | |
| ASSOCIATION OF AMERICA, INC. and | ) | October 20, 2021 |
| DOE RECORD COMPANIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT RIAA'S MOTION TO DISMISS PLAINTIFF YOUT LLC'S**
**SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................4

    A.    YouTube, The Digital Music Economy, and Yout .......................................4

    B.    RIAA's Notices To YouTube And Plaintiff's Lawsuit ...............................6

    C.    Plaintiff's Second Amended Complaint ......................................................7

STANDARD ............................................................................................................................8

ARGUMENT ...........................................................................................................................9

I.    PLAINTIFF DOES NOT AND CANNOT PLEAD FACTS THAT MAKE ITS CLAIM OF NON-CIRCUMVENTION PLAUSIBLE ...................................9

    A.    Plaintiff Cannot Plead Around The Fact That YouTube Employs TPMs That Are Effective Under The DMCA At Safeguarding Access To The Record Companies' Copyrighted Works ..............................................10

    B.    Plaintiff Cannot Plead Around The Fact That Yout Circumvents YouTube's TPMs ...............................................................................13

        1.    Plaintiff's Allegations Make Clear That The Yout Service Avoids Or Bypasses YouTube's TPMs ...............................................13

        2.    Plaintiff Does Not And Cannot Allege That It Has The Copyright Owner's Authority To Access The Copyrighted Works ...............14

II.    PLAINTIFF'S SECTION 512(F) CLAIM FAILS BECAUSE THE STATUTE DOES NOT APPLY TO RIAA'S NOTICES AND PLAINTIFF COULD NOT PLAUSIBLY PLEAD A VIOLATION EVEN IF THE STATUTE DID APPLY ..........16

    A.    Section 512(f) Proscribes Only Misrepresentations Regarding Infringement, Not Circumvention ............................................................16

    B.    Even If Section 512(f) Applied, Plaintiff Does Not And Cannot Allege A Knowing Misrepresentation By RIAA .....................................................17

III.    PLAINTIFF'S STATE LAW DEFAMATION CLAIMS FAIL BECAUSE PLAINTIFF DOES NOT ALLEGE RIAA MADE ANY FALSE STATEMENT ..........19

IV.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ...................21

CONCLUSION ......................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
  307 F. Supp. 2d 1085 (N.D. Cal. 2004) ........................................................................12, 15

*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009) ...............................................................................12

*Arista Records, Inc. v. Mp3Board, Inc.*,
  No. 00 CIV.4660 (SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 26, 2002) ................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................8, 9, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................8

*Cabell v. Zimmerman*,
  No. 09 Civ. 10134 (CM), 2010 WL 996007 (S.D.N.Y. Mar. 12, 2010).....................17, 18, 19

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
  No. 16-cv-3346, 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017)......................................20, 21

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) .........................................................................................15

*Flamm v. Am. Ass'n of Univ. Women*,
  201 F.3d 144 (2d. Cir. 2000)..........................................................................................20

*Hall v. United Techs., Corp.*,
  872 F. Supp. 1094 (D. Conn. 1995)..................................................................................21

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009)..............................................................................................9

*Humble Surgical Hosp., LLC v. Aetna Life Ins. Co.*,
  No. 3:13-CV-01903-VLB, 2014 WL 12768253 (D. Conn. Sept. 30, 2014) ..........................19

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)............................................................................................9

*Learning Care Grp., Inc. v. Armetta*,
  No. 3:13-CV-01540 (VLB), 2014 WL 12651264 (D. Conn. Sept. 30, 2014) ........................19

*McGucken v. Newsweek LLC*,
  464 F. Supp. 3d 594 (S.D.N.Y. 2020)................................................................................5

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Ningbo Mizhihe I&E Co., Ltd. v. Does 1-200*,
    2020 WL 2086216 (S.D.N.Y. Apr. 30, 2020)........................................................................18

*Okyere v. Palisades Collection, LLC*,
    961 F. Supp. 2d 522 (S.D.N.Y. 2013)................................................................................17

*RealNetworks, Inc. v. DVD Copy Control Ass'n*,
    641 F. Supp. 2d 913 (N.D. Cal. 2009) .................................................................3, 11, 12, 14

*Rossi v. Motion Picture Ass'n of Am., Inc.*,
    391 F.3d 1000 (9th Cir. 2004) ........................................................................................16, 17

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*,
    457 F. Supp. 2d 957 (N.D. Cal. 2006) ..................................................................................12

*Staton v. Holzbach*,
    No. 3:20-cv-631 (SRU), 2021 WL 293566 (D. Conn. Jan. 27, 2021)....................................19

*Tannerite Sports, LLC v. NBCUniversal News Grp., a
    division of NBCUniversal Media, LLC*, 864 F.3d 236 (2d Cir. 2017).............................20, 21

*Twelve Inches Around Corp. v. Cisco Sys., Inc.*,
    No. 08 CIV. 6896 (WHP), 2009 WL 928077 (S.D.N.Y. Mar. 12, 2009)...............................16

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)..................................................................................21

*UMG Recordings, Inc. v. Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) .................................................................................................2

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001)....................................................................................6, 14, 15

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000)....................................................................3, 11, 12

*Verragio, Ltd. v. AE Jewelers, Inc.*,
    No. 15-cv-6500, 2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017)......................................20, 21

**STATE CASES**

*Gleason v. Smolinski*,
    125 A.3d 920 (Conn. 2015) .................................................................................................20

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*QSP, Inc. v. Aetna Cas. And Sur. Co.*,
  773 A.2d 906 (Conn. 2001) ...........................................................................................19

**FEDERAL STATUTES**

17 U.S.C. § 512............................................................................................... 4, passim

17 U.S.C. § 1201............................................................................................. 2, passim

**FEDERAL RULES**

Fed. R. Civ. P. 12...........................................................................................1, 8, 20

Fed. R. Evid. 201 ...............................................................................................5

**OTHER AUTHORITIES**

Legislative History, House Comm. on Judiciary, Section-by-Section Analysis of
  H.R. 2281 as passed Aug. 4, 1998 ...........................................................................11

4 *Nimmer on Copyright* § 12A.03 (2020) ....................................................................12

**INTRODUCTION**

Plaintiff Yout, LLC ("Plaintiff") has sued the Recording Industry Association of America ("RIAA") based on manifestly implausible claims that its stream-ripping service ("Yout") does not circumvent technological measures that restrict access to digital music video files on YouTube.  RIAA respectfully moves to dismiss Plaintiff's Second Amended Complaint (ECF No. 45) ("SAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

This Court dismissed Plaintiff's First Amended Complaint ("FAC") with leave to amend to give Plaintiff the opportunity to add greater factual details so the Court could better evaluate the plausibility of Plaintiff's claims.  (Aug. 5, 2021 Hr'g Tr. 47:21–48:3.)  But Plaintiff has failed to fix a fundamental deficiency in its pleading: the lack of any detailed description of *how the Yout service operates*.  Although Plaintiff has added allegations and screenshots that show what someone sees when he or she visits Plaintiff's website (SAC ¶¶ 34–47), and allegations that describe a complicated process by which someone *not* using Plaintiff's service can supposedly download a music video from YouTube (*id.* ¶¶ 55–78), Plaintiff has conspicuously avoided alleging facts that explain how Yout actually works.  Instead, Plaintiff has merely alleged that "Yout's software platform enables a person to complete the process described above [*i.e.*, the process followed by someone *not* using Yout], but in fewer steps."  (SAC ¶ 79.)  This vague reference to unexplained "steps" is the antithesis of the non-conclusory, *factual* allegations the law requires.  Because Plaintiff has failed yet again to plead its allegations with sufficient facts, its SAC should be dismissed with prejudice.

Plaintiff's claims also fail the plausibility standard as pleaded.  Anyone who has ever used www.YouTube.com to view popular music videos knows YouTube provides streaming of those videos, not free downloads.  YouTube's users can watch and listen to music videos for free on its ad-supported service, but those users do not get access to the digital files that contain the

1

record companies' most valuable copyrighted works.  YouTube prevents such access through built-in technological mechanisms that safeguard the underlying digital copies.

Plaintiff's Yout service is one of a number of stream-ripping services whose *raison d'être* is to bypass YouTube's technological restrictions on accessing the digital copies of works streamed on YouTube (and violate YouTube's legal restrictions set forth in its Terms of Service ("TOS"), discussed *infra*).  Stream-ripping services have become a substantial source of music piracy and a major focus of RIAA's and its members' anti-piracy efforts.  *See, e.g.*, *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 349 (4th Cir. 2020).  Courts around the world have found that Yout is a circumvention tool that violates their countries' respective laws.[1]  Hoping to turn the legal tide and obtain a U.S. court's blessing of its illicit technology, Plaintiff filed this action after RIAA notified Google (YouTube's parent) that Yout violates the United States' anti-circumvention provisions, which are set forth in the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201.

Plaintiff has not plausibly alleged any of its  claims.

First, Plaintiff's claim for a declaration that Yout does not violate Section 1201 is implausible under both of the DMCA's elements regarding what is proscribed circumvention:

---

[1] *See, e.g.*, Chris Cooke, *Danish courts block stream-ripping site Yout.com despite it employing the "but we don't copy anything" defence*, Complete Music Update (Apr. 27, 2020), https://completemusicupdate.com/article/danish-courts-block-stream-ripping-site-yout-com-despite-it-employing-the-but-we-dont-copy-anything-defence/; *Italian court confirms stream ripping is illegal*, IFPI (Aug. 2, 2019), https://www.ifpi.org/italian-court-confirms-stream-ripping-is-illegal/.  Site-blocking orders also have issued against Yout in Spain and Peru, and a criminal investigation is ongoing in Brazil.  *See* Jonathan Nader (Yout's founder and operator), https://twitter.com/nadermx/status/1422663182234042368 ("Having never been to Brazil, I just got summoned by the Brazilian government's public prosecutor office.  They are running a criminal investigation against me.").

- Plaintiff misapprehends the standard for whether YouTube's technological protection measures ("TPMs") "effectively control[] access to" the record companies' copyrighted works. 17 U.S.C. § 1201(a)(1)(A), (a)(2). Plaintiff alleges that the answer is no because it and others have found ways to get around YouTube's TPMs. (SAC ¶¶ 65–76.) This contention fails as a matter of law: Under the DMCA, a TPM is "effective" if "in the ordinary course" it "functions" to restrict access to the digital copy. 17 U.S.C. § 1201(a)(3)(B); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317–18 (S.D.N.Y. 2000). That question is judged from the perspective of the "ordinary consumer," not someone seeking to avoid or hack those measures. *RealNetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 932 (N.D. Cal. 2009). It is clear from the SAC (and from simply going to YouTube and clicking play on a music video) that YouTube's TPMs *do not* allow the ordinary consumer to access and download digital copies of music videos. Indeed, if the ordinary consumer could access and download digital music files through YouTube, no one would need the Yout service.

- Plaintiff likewise is wrong that Yout does not "circumvent" YouTube's TPMs. 17 U.S.C. § 1201(a)(1)(A), (a)(2). Plaintiff alleges that circumvention requires decrypting or descrambling the protected work and that Yout does neither. (SAC ¶¶ 29, 33.) But the DMCA expressly defines circumvention to include not only decryption and descrambling but also any other conduct that "avoid[s], bypass[es], remove[s], deactivate[s], or impair[s]" access-control technology "without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). Plaintiff's allegations show that Yout does bypass or avoid YouTube's TPMs, and Plaintiff does not and cannot plausibly allege that it has the authority of copyright owners to access and copy their works.

3

Second, Plaintiff does not and cannot plead a violation of 17 U.S.C. § 512(f), which applies only to "*knowing*[]" misrepresentations "that material or activity *is infringing*." *Id.* (emphasis added). Plaintiff's Section 512(f) claim is based on RIAA's notices to Google, which alleged circumvention, not infringement. Even if Section 512(f) were applicable, Plaintiff does not and cannot plausibly allege, as it must, that RIAA knew its allegation was false (it was not).

Third, Plaintiff cannot plausibly plead state-law defamation or business disparagement claims, both of which require Plaintiff to allege a *false* statement. Nothing in RIAA's notices was false. On the contrary, RIAA's allegation that the Yout service is circumvention technology is true as a matter of law.

RIAA respectfully requests that the Court dismiss Plaintiff's twice-amended and still implausible claims with prejudice.

## BACKGROUND

### A.     YouTube, The Digital Music Economy, and Yout

YouTube is one of the most popular websites in the world and a main source for individuals to watch and listen to music videos of popular sound recordings. The SAC's overarching premise is that YouTube and the record companies allow unrestricted access to the digital files that embody the record companies' valuable works. That is absurd. YouTube allows users to watch and listen to *streams* of music videos; it does not allow users to freely *download* music videos. Simply visiting YouTube's website confirms this: There is no download button or other feature that allows users to copy the underlying digital files. It is obvious that technology is responsible for putting a wall between what users can and cannot do with the music videos on YouTube. And it is equally obvious why YouTube technologically allows only streaming and not downloading. Streaming through YouTube and downloading permanent copies provide the user with different value propositions—watching and listening for

free but seeing ads, versus possessing a permanent digital copy.  The two models also provide the copyright owners with different economic returns, which are critical to their ability to recoup the substantial investments they make in creating those works.  There are authorized services that provide consumers the ability to download digital files of the record companies' content, but YouTube's free-to-the-user streaming service is not one of them.[2]

YouTube reinforces the technological limitations on accessing and copying the digital files with its Terms of Service ("TOS").  The TOS make clear that users are authorized to watch and listen to copyrighted content, but not to copy it or gain unauthorized access to the underlying digital files:

> You may *view or listen* to Content for your personal, non-commercial use.
>
> You are not allowed to:
>
> 1. *access, reproduce, download* . . . any Content except: (a) as expressly authorized by the Service; or (b) *with prior written permission from YouTube and, if applicable, the respective rights holders*;
>
> 2. circumvent, . . . or otherwise interfere with any part of the Service . . . that (a) prevent[s] or restrict[s] the copying or other use of Content.

Ex. A at 5–6 (emphasis added).[3]

Plaintiff's service enables users to circumvent these technological and legal restrictions and thereby denies the copyright owners due compensation for the exploitation of their works.

---

[2] YouTube also offers paid, premium subscription services that allow subscribers temporary "downloads" for offline listening.  These premium services are not at issue here.

[3] Because Plaintiff contends it has implied authorization to access the digital copy files of the sound recordings from YouTube (SAC ¶ 100), this Court can take judicial notice of the YouTube TOS.  *See McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 600 (S.D.N.Y. 2020) (taking judicial notice of Instagram Terms of Service because alleged infringer asserted a sublicense defense based on the copyright owner's "decision to post the Photograph publicly on Instagram"); *id.* at 600 n.2 (the terms are "publicly accessible; there is no dispute as to the authenticity of the items; and while the meaning of the terms in the items may be in dispute, the existence of the terms themselves is not" (citing Fed. R. Evid. 201(b)(2))).

As Plaintiff admits, its users who download digital music files have no need to pay for authorized downloads of the sound recordings; to subscribe to premium streaming services; or even to "visit[] [the ad-supported and revenue-generating YouTube platform,] on which the original content resides."  (SAC ¶ 44.)

### B.    RIAA's Notices To YouTube And Plaintiff's Lawsuit

RIAA is the trade organization that supports and promotes the creative and financial vitality of the major recorded music companies in the United States (SAC ¶¶ 3–4), including by combatting the ever-present threat of piracy to its members.

RIAA's efforts to combat stream-ripping fully align with the exercise of rights that Congress intended when it enacted the DMCA.  Section 1201 of the DMCA targets unscrupulous actors who traffic in technology that circumvents measures that safeguard access to and copying of copyrighted works.  *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440–41 (2d Cir. 2001) (describing Congress's purpose in enacting the DMCA and the statute's anti-circumvention provisions).

RIAA's anti-piracy work includes notifying online service providers when their services are being used for unlawful purposes.  Google provides a webform process for copyright owners and their representatives to submit notices of unlawful uses.  This lawsuit arises from RIAA's use of Google's process to report Plaintiff's (and other stream-ripping services') unlawful distribution of circumvention tools.  (*See* SAC ¶¶ 83–89; ECF No. 1, Complaint ("Compl."), Exs. A–C (copies of notices).)  Plaintiff alleges that in response to RIAA's notices, Google "de-listed" the Yout service from its search results.  (SAC ¶ 143.)

Plaintiff responded to RIAA's notices by filing this lawsuit.  Plaintiff asked this Court to declare that its Yout service does not violate the DMCA.  The Court granted RIAA's motion to dismiss (ECF No. 28), but gave Plaintiff the opportunity to amend to allege the factual details

regarding how its service works so the Court could better assess the plausibility of its claim that

the Yout service complies with the DMCA.

### C.    Plaintiff's Second Amended Complaint

Plaintiff did not comply with the Court's request for greater detail in important respects:

Plaintiff's allegations are still vague as to how the Yout service works; how YouTube's

technology works; and how the Yout service gets around that technology.

Regarding the operation of its own service, Plaintiff alleges that a user enters a YouTube

link to a music video on the Yout service; and that the digital file comprising that video, which

"*originates* from source url[,] … *becomes saved* as a file on the person's local computer."  (SAC

¶ 43 (emphasis added).)  What does Yout do to access the files and allow them to "become

saved," i.e., copied?  The SAC does not say.  Instead, the SAC sets forth nine pages of text and

images describing a convoluted, multi-step process whereby someone *not* using the Yout service

allegedly can download a music video available on YouTube.  (*Id*. ¶¶ 62–74.)  Plaintiff alleges

that, "[t]o some, this [process] could appear complicated."  (*Id.* ¶ 75.)  That is an understatement.

According to Plaintiff, this non-Yout process requires the user to take the following steps:

1.  access YouTube not through the YouTube website or app, but through the Chrome
    browser;

2.  select "View" from the Chrome menu bar;

3.  select "Developer";

4.  select "Developer Tools," which opens a layout including the code that operates
    YouTube and the video player;

5.  sort a list of files by file size;

6.  "highlight the first of the largest files";

7.  "observe the 'Request URL,' and copy it";

8. paste the "Request URL" into a new browser;

9. "*modif[y]*" the "*sequence of numbers* following the text 'range='" so those numbers "*begin at 0 and end at a much larger number*";

10. "click[] 'return' or 'enter' . . . to access the *modified* 'Request URL,'" at which point a full-size video, albeit without sound, appears within the Chrome window and begins to play";

11. use a menu in this *modified* player to select "Download"; and

12. repeat the same process to access and download the audio file for the work

(*Id.* ¶¶ 65–74 (emphasis added).)

Significantly, however, the SAC continues to leave unexplained how it is that *Yout* enables users to download music videos from YouTube.  Plaintiff merely alleges that the Yout service "enables a person to complete the process described above [*i.e.*, the process for people who do *not* use Yout], but in fewer steps."[4]  (SAC ¶ 79.)

The SAC is likewise vague about YouTube's technology.  Plaintiff alleges in conclusory fashion that what RIAA refers to as YouTube's "rolling cipher" is a "misnomer," and that the technology to safeguard the digital files from unauthorized access "doesn't exist."  (*Id.* ¶¶ 96, 97.)

## STANDARD

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must allege facts that establish its claims are plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Evaluating plausibility is a "context-specific task" that

---

[4] Plaintiff is fully capable of describing how its service works in court filings.  Plaintiff did just that before a Danish court.  That court then held that the Yout service violated Danish law.  *See* Ex. B at 4–6.

requires the Court "to draw on its judicial experience and common sense." *Harris v. Mills*, 572

F.3d 66, 71–72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).  In so doing, the Court must

consider "the full factual picture presented by the complaint, the particular cause of action and its

elements, and the existence of alternative explanations so obvious that they render plaintiff's

inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

## ARGUMENT

Plaintiff's request for a declaratory judgment that its stream-ripping service is lawful

under the DMCA cannot be squared with the SAC's allegations, judicially noticeable facts, or

common sense.  YouTube employs TPMs that effectively control access to digital file copies of

copyrighted works.  And the Yout service avoids or bypasses those TPMs without permission.

Plaintiff's Section 512(f) claim fails because the statute applies only to misrepresentations

regarding infringement, not circumvention.  And, even if the statute did apply, Plaintiff does not

allege a knowing misrepresentation.  Finally, Plaintiff's state-law claims for defamation and

business disparagement fail because RIAA's representations that the Yout service circumvents

TPMs are true.

## I.   PLAINTIFF DOES NOT AND CANNOT PLEAD FACTS THAT MAKE ITS CLAIM OF NON-CIRCUMVENTION PLAUSIBLE

Plaintiff's first cause of action seeks a declaration that the Yout service is not a

proscribed circumvention tool.  Section 1201(a) makes it illegal to "circumvent a technological

measure that effectively controls access to a [copyrighted] work" or to traffic in circumvention

technology that is produced or marketed for the purpose of circumvention.[5]  17 U.S.C.

---

[5] Section 1201 prohibits both the act of circumvention, 17 U.S.C. § 1201(a)(1), and trafficking in
circumvention technology, *id.* § 1201(a)(2).  Plaintiff does not and cannot allege that if Yout is
circumvention technology Plaintiff would not be liable for violating the anti-trafficking

§ 1201(a)(1)(A), (a)(2).  Hence, whether Yout is an unlawful circumvention tool turns on the answers to two questions: (1) whether YouTube's technology "effectively controls access to a work," and (2) whether the Yout service "circumvents" that technology.  *Id*. § 1201(a)(3).  Plaintiff fails to plausibly plead that the answers to these questions are no; the SAC's allegations and all permissible inferences show the answers are clearly yes.

> **A.    Plaintiff Cannot Plead Around The Fact That YouTube Employs TPMs That Are Effective Under The DMCA At Safeguarding Access To The Record Companies' Copyrighted Works**

YouTube's technology is effective under the DMCA if, "in the ordinary course of its operation, [it] requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."  17 U.S.C. § 1201(a)(3)(B).  Plaintiff's claim that YouTube's TPMs do not meet this test is based on an erroneous interpretation of the controlling standards.

First, Plaintiff's allegations make clear that YouTube's TPMs require application of "information, or a process or a treatment" in order to gain access to the copyrighted works on YouTube.  *Id.*  Indeed, Plaintiff's SAC refers repeatedly to the "process" that users can apply to YouTube's TPMs to gain access to copyrighted works.  (*See, e.g.*, SAC ¶¶ 73, 76, 79.)  As the SAC alleges, a user in the ordinary course visits YouTube and is able to watch and listen to a *stream* of the music video.  (*Id.* ¶ 64 (explaining "The Lakes" can be streamed at a specific URL).)  In the ordinary course, the user does not get access to digital files the user can *copy*.  The SAC alleges that, to get access to those files, the user must go through a convoluted multi-step process.  (*Id.* ¶¶ 62–74.)  While neither that process nor Yout's (unexplained) process is

---

provision.  *See, e.g.*, *id*. § 1201(a)(2)(B) (statute applies if technology "has only limited commercially significant purposes other than to circumvent").

authorized, they both confirm that a user cannot gain access to the digital files without the

application of "information," a "process," or a "treatment."  17 U.S.C. § 1201(a)(3)(B).

Plaintiff alleges that YouTube's TPMs are not "effective" because they do not encrypt,

scramble, or encode the digital files.  (SAC ¶¶ 30–32.)  But Plaintiff misconstrues the standard.

To be "effective" under the DMCA, the TPM does not have to be of a particular type, like

content encryption or scrambling.  Rather, the TPM need only serve the "function" of

safeguarding access to be effective.  *Reimerdes*, 111 F. Supp. 2d at 318 (citing Legislative

History, House Comm. on Judiciary, Section-by-Section Analysis of H.R. 2281 as passed Aug.

4, 1998 at 10).  Hence, YouTube's TMPs can effectively safeguard access to copyrighted works

even if they do not involve encryption or scrambling.

Second, Plaintiff alleges that YouTube's TPMs are not effective because some users

purportedly have found ways to defeat those TPMs, for example, by following the convoluted

multi-step process the SAC describes.  (SAC ¶¶ 55–78.)  Again, Plaintiff ignores controlling law.

It is well settled that whether TPMs effectively control access to a work for purposes of Section

1201 must be assessed at the level of an "ordinary" or "average" consumer.  *RealNetworks*, 641

F. Supp. 2d at 932 ("A plain reading of this statutory language means that access-control is at the

level of the ordinary consumer.").  Plaintiff does not and cannot allege that the average YouTube

user bypasses the TPMs in the ordinary course of YouTube's operation, either through what

Plaintiff concedes is an apparently "complicated" process (SAC ¶ 76), or otherwise. [6]  Indeed, if

an average consumer could bypass YouTube's TPMs, there would be no need for Yout to exist.

---

[6] A German court analyzed whether YouTube's TPMs were effective under that country's anti-
circumvention proscriptions and similar arguments as made here—it concluded that the
YouTube TPMs "in normal operation" were "effective" in controlling access to the storage
location of the video files under the German equivalent of Section 1201.  (See Ex. C at 6–7.)

The entire premise of Plaintiff's allegations about users devising ways to bypass YouTube's TPMs is that for TPMs to be effective, they must successfully prevent people from devising ways to circumvent them.  Courts have flatly rejected that premise for decades: "The fact that circumvention devices may be widely available *does not* mean that a technological measure is not, as the DMCA provides, effectively protecting the rights of copyright owners in the ordinary course of its operation."  *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 941–42 (N.D. Cal. 2009) (quoting *Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965 (N.D. Cal. 2006)); *see also RealNetworks*, 641 F. Supp. 2d at 932 (rejecting argument that a TPM was ineffective under section 1201 because it had "already been cracked or hacked"); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1095 (N.D. Cal. 2004) (rejecting argument that wide availability of keys made TPM ineffective: "this is equivalent to a claim that, since it is easy to find skeleton keys on the black market, a deadbolt is not an effective lock to a door"); *Reimerdes*, 111 F. Supp. 2d at 318 ("defendants' construction, if adopted, would limit the application of the statute to access control measures that thwart circumvention, but withhold protection for those measures that can be circumvented").  The leading copyright treatise explains that the position Plaintiff advances would render Section 1201 "nonsensical."  *See* 4 *Nimmer on Copyright* § 12A.03 (2020) ("The mere circumstance that [a] defendant succeeds in deactivating the subject technology cannot mean that the technology fails to offer 'effective control,' as otherwise the statute would be rendered nonsensical.").

*     *     *

Plaintiff's allegations about the effectiveness of YouTube's TPMs are legal conclusions that are wrong as a matter of law.  Based on the SAC's factual allegations, only one conclusion is plausible:  YouTube's TPMs are effective technological measures under the DMCA.

**B.      Plaintiff Cannot Plead Around The Fact That Yout Circumvents YouTube's TPMs**

Congress broadly defined the conduct that would constitute circumvention:  "[T]o 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).

**1.      Plaintiff's Allegations Make Clear That The Yout Service Avoids Or Bypasses YouTube's TPMs**

As noted, Plaintiff remains vague as to how *its* technology operates.  But from the allegations Plaintiff does include, it is clear that the Yout service circumvents YouTube's TPMs.

Plaintiff describes a multi-step process that is not Yout's process, but through which the user allegedly can gain access to the digital files.  (SAC ¶¶ 62–74.)  Part of that elaborate process involves identifying a portion of YouTube's source code, specifically, numbers that follow a "Request URL" command.  Plaintiff alleges that if the user copies this code into a browser other than the Chrome browser through which the user starts this process, the user is able to "modif[y]" the "sequence of numbers following the text 'range='" by having those numbers "begin at 0 and end at a much larger number."  (*Id.* ¶ 69.)  While Plaintiff does not allege that Yout uses this process, Plaintiff does allege that it achieves the same result "in fewer steps."  (*Id.* ¶ 79.)

Regardless of the number of steps it employs, Yout obviously is "avoid[ing]" or "bypass[ing]" YouTube's TPMs, and it is doing so without any authority from the copyright owners—i.e., Yout circumvents YouTube's TPMs.  17 U.S.C. § 1201(a)(3)(A).  Plaintiff tries to plead around this result with erroneous legal conclusions.

First, Plaintiff alleges that Yout cannot circumvent because it is not uncracking a "password, key, or other secret knowledge" in order to access the digital files.  (SAC ¶ 99.)  But

13

the DMCA does not require that the TPM "crack" or "break" anything, or that the TPM be a password or secret key. *See RealNetworks*, 641 F. Supp. 2d at 935–36 (rejecting as "legal legerdemain" the argument because "RealDVD does not 'remove' the layers of CSS protection" it does not circumvent). The relevant question instead is whether the accused technology is, *inter alia*, "avoid[ing]" or bypass[ing]" the TPM that is in place to restrict access to the copyrighted work. 17 U.S.C. § 1201(a)(3)(A). The Yout service plainly does that; otherwise, there would be no reason for Yout to exist.

Second, Plaintiff alleges in conclusory fashion that Yout cannot circumvent because YouTube purportedly provides the means for accessing the digital files "to anyone who requests them." (SAC ¶ 100.) Plaintiff does not explain how YouTube allegedly provides such means, and it is clear from Plaintiff's own allegations and the YouTube site itself that YouTube does *not* freely provide the means to access the digital files. On the contrary, and as explained above, a YouTube user ordinarily gains access only to the stream. Whatever it is that Yout is doing to access the underlying digital files, Yout is doing that in a way the normal operation of YouTube's service does not. Those indisputable facts allow for only one conclusion: Yout is circumventing YouTube's TPMs.

### 2. Plaintiff Does Not And Cannot Allege That It Has The Copyright Owner's Authority To Access The Copyrighted Works

To avoid liability under Section 1201(a)(3)(A), one must have "the authority" of the copyright owner to employ the particular means in issue for avoiding or bypassing the TPMs. *Corley*, 273 F.3d at 444 ("That provision exempts from liability those who would 'decrypt' an encrypted DVD with the authority of a copyright owner"). Significantly, Plaintiff does not allege it has any such authority. Plaintiff cannot plausibly make such an allegation because

YouTube's TOS expressly prohibit gaining access to copyrighted works on its service without the "prior written permission" of the "respective rights holders."[7] *See* Ex. A at 5.

Notwithstanding the plain terms of YouTube's TOS, Plaintiff alleges that it does not need specific authorization for what Yout does because that authority has "already been provided to everyone in the world." (SAC ¶ 61.) Plaintiff does not explain what this authority is or where one might find it. To the extent Plaintiff means that because users have the right to stream music videos, the Yout service has authorization to access the digital files, the argument is wrong as a matter of law. In *Corley*, the Second Circuit rejected the same argument in the context of DVDs, i.e., that someone who buys a copy of a movie on DVD has "the 'authority of the copyright owner'" to access the digital files on those discs. *Corley*, 273 F.3d at 444. The court explained that "the authority of a copyright owner" requirement means the specific authority to engage in the conduct that constitutes circumvention, i.e., the specific authority to avoid, bypass, or otherwise gain access to the digital file of the copyrighted work. *Id.*; *see also 321 Studios*, 307 F. Supp. 2d at 1096 (rejecting defendants argument that "the purchaser of the DVD has authority of the copyright holder to bypass CSS" because they are permitted to view the contents of a DVD on an authorized player); *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865 (9th Cir. 2017) (lawful owner of disc had right to view the contents on an authorized DVD player, but did not have authority to use circumvention software to access and copy digital files on discs).

\*      \*      \*

---

[7] It makes no difference that Yout may have authority from copyright owners other than RIAA's members to avoid or bypass YouTube's TPMs and gain access to those owners' works. (*See* SAC ¶¶ 48–54, ¶ 81 ("many content creators encourage their audience and fans to use Yout to record and play back their original content").) Yout seeks a declaratory judgment that would apply to *all* copyright owners, including RIAA's members who have *not* authorized Yout's circumvention.

In sum, Plaintiff's allegations do not establish a plausible claim that the Yout service does not circumvent.  The allegations actually leave only one plausible inference:  Yout circumvents YouTube's TPMs and thus is proscribed circumvention technology.

II.     **PLAINTIFF'S SECTION 512(f) CLAIM FAILS BECAUSE THE STATUTE DOES NOT APPLY TO RIAA'S NOTICES AND PLAINTIFF COULD NOT PLAUSIBLY PLEAD A VIOLATION EVEN IF THE STATUTE DID APPLY**

A.     **Section 512(f) Proscribes Only Misrepresentations Regarding Infringement, Not Circumvention**

Section 512(f) provides a cause of action against "[a]ny person who knowingly materially misrepresents under this section … that material or activity *is infringing.*"  17 U.S.C. § 512(f) (emphasis added).  By its terms, the statute applies only to misrepresentations regarding *copyright infringement.  See, e.g.*, *Twelve Inches Around Corp. v. Cisco Sys., Inc.*, No. 08 CIV. 6896 (WHP), 2009 WL 928077, at *3 (S.D.N.Y. Mar. 12, 2009) (statute "requires that the misrepresentation be 'under [Section 512],' which deals exclusively with copyright infringement" (alteration in original)); *see also Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (Section 512(f) is an "expressly limited cause of action for improper *infringement* notifications" (emphasis added)).

Section 512(f) "does not provide a cause of action for … misrepresenting" other kinds of liability.  *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 CIV.4660 (SHS), 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 26, 2002) ("misrepresenting that a service provider may be liable for hosting certain material," without specifically claiming infringement, not actionable under Section 512(f)); *Twelve Inches Around*, 2009 WL 928077, at *3 (alleged misrepresentations regarding trademark infringement not actionable under Section 512(f)).

The SAC does not allege RIAA made any misrepresentation regarding *infringement*. Rather, Plaintiff's Section 512(f) claim is premised on the notices RIAA sent to Google, which by their terms (alleged in the SAC) concern only *circumvention*:

> To our knowledge, the URLs indicated provide access to a service (and/or software) that *circumvents YouTube's rolling cipher*, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading . . . . circumvention mechanism: To our knowledge, the URLs indicated provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading.

(*Id.* ¶¶ 83–88 & Compl. Exs. A–C) (emphasis added)).  Plaintiff itself concedes that RIAA's notices allege *circumvention*.[8]  (*See id.* ¶¶ 83, 87 (alleging that RIAA sent "*anti-circumvention* notice[s]" to Google (emphasis added)), 89 ("Essentially, the . . . DMCA notices sent to Google by the RIAA . . . allege violations of 17 U.S.C. § 1201(a)").)  Because Plaintiff fails to allege any misrepresentation regarding infringement, its Section 512(f) claim fails as a matter of law.

**B.      Even If Section 512(f) Applied, Plaintiff Does Not And Cannot Allege A Knowing Misrepresentation By RIAA**

Even if Section 512(f) applied to statements regarding circumvention (it expressly does not), the claim must still be dismissed because Plaintiff has again failed to allege facts showing RIAA had "*actual knowledge* that it [was] making a misrepresentation of fact" when it sent the anti-circumvention notices to Google.  *Cabell v. Zimmerman*, No. 09 Civ. 10134 (CM), 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010); *accord Rossi*, 391 F.3d at 1004–05 (Section 512(f)

---

[8] The SAC asserts that the "DMCA Notices … very clearly accuse Yout of secondary copyright infringement." (SAC ¶¶ 136, 137.)  That is a legal conclusion, which must be disregarded in deciding whether Plaintiff has stated a claim.  *See Iqbal*, 556 U.S. at 678–79; *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 528 (S.D.N.Y. 2013).  That legal conclusion also misconstrues RIAA's notices.  Those notices stated that YouTube's rolling cipher TPM "protects our members' works on YouTube from unauthorized copying/downloading." (SAC ¶ 137.)  The key word there is "*protects*."  The DMCA is about protecting works from being accessed (Section 1201(a)) or from being copied (Section 1201(b)).  The notices did not assert that Yout was copying, i.e., infringing RIAA's members' works.

"impose[s] liability only if the copyright owner's notification is a *knowing misrepresentation*." (emphasis added)).

The SAC does include allegations that RIAA "knew" the Yout service "does not circumvent" and "knowingly misrepresented the nature of Yout's services." (SAC ¶¶ 137–40.) But these are conclusory allegations, without any allegations of fact to back them up. Such allegations are not sufficient to plead a plausible claim under Section 512(f). *See, e.g.*, *Ningbo Mizhihe I&E Co., Ltd. v. Does 1-200*, 2020 WL 2086216, at *3–4 (S.D.N.Y. Apr. 30, 2020) (dismissing Section 512(f) claim where "there [wa]s insufficient material in the pleadings to support the inference that Plaintiff knew their copyrights were not enforceable"); *Cabell*, 2010 WL 996007, at *4 (dismissing Section 512(f) claim where complaint "allege[d] no facts from which a court could find it facially plausible that Defendant knew it was misrepresenting the facts when it wrote to YouTube"). And, the existence of decisions from courts in other countries that have found the Yout service is circumvention technology further renders implausible Plaintiff's claim that RIAA *knowingly*, falsely represented that Yout is circumvention technology.

Plaintiff likewise fails to plead knowledge by alleging RIAA "failed to … determine whether Yout's software platform would, in fact, circumvent [YouTube's rolling cipher] by testing the platform." (SAC ¶ 135.) Failing to investigate whether material or activity infringes (even negligently) does not satisfy Section 512(f)'s knowledge requirement. *See, e.g.*, *Ningbo Mizhihe*, 2020 WL 2086216, at *3 (dismissing Section 512(f) counterclaim for failure to allege a knowing misrepresentation where defendant pleaded that plaintiff "fail[ed] to perform an adequate investigation of the available prior art"); *Cabell*, 2010 WL 996007, at *4 ("[N]egligence is not the standard for liability under section 512(f)."). A fortiori, an alleged

18

failure to investigate whether technology circumvents cannot be grounds to allege a Section

512(f) claim, even if the statute applied to such representations (which it does not).

### III.   PLAINTIFF'S STATE LAW DEFAMATION CLAIMS FAIL BECAUSE PLAINTIFF DOES NOT ALLEGE RIAA MADE ANY FALSE STATEMENT[9]

Plaintiff made no substantive amendments to its claims for business disparagement and

defamation per se, which are also based on the notices RIAA sent to Google.  (SAC ¶¶ 147–

165.)  Those claims fail with Plaintiff's declaratory judgment claim:  If Yout is circumvention

technology, then Plaintiff as a matter of law cannot allege a false statement.

Plaintiff's state law claims fail for additional reasons.[10]  Business disparagement and

defamation per se are species of common law defamation and therefore require some form of

*false*, damaging statement about the plaintiff.  *See, e.g.*, *Humble Surgical Hosp., LLC v. Aetna

Life Ins. Co.*, No. 3:13-CV-01903-VLB, 2014 WL 12768253, at *4–5 (D. Conn. Sept. 30, 2014)

---

[9] Plaintiff's state law claims should be dismissed, but to the extent these claims alone survive this motion, the Court should decline to exercise supplemental jurisdiction over them.  *See Staton v. Holzbach*, No. 3:20-cv-631 (SRU), 2021 WL 293566, at *6 (D. Conn. Jan. 27, 2021) (dismissing state law defamation claims after dismissal of federal law claims); *Cabell*, 2010 WL 996007, at *5 ("Because plaintiff's copyright claim was the only alleged basis for federal subject matter jurisdiction … the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims.").

[10] Plaintiff's business disparagement claim fails for two additional reasons not applicable to its defamation per se claim.  First, business disparagement requires a false statement that "denigrat[es] the *quality* of the business, goods, or services," not just "impugn[es] the basic integrity or creditworthiness of a business."  *QSP, Inc. v. Aetna Cas. And Sur. Co.*, 773 A.2d 906, 917 n.15 (Conn. 2001) (citation omitted) (emphasis added).  Because Plaintiff's claim is based on statements regarding Yout's legality, not the service's *quality* (SAC ¶¶ 147–62), Plaintiff has failed to allege business disparagement.  *See Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 WL 12651264, at *16 (D. Conn. Sept. 30, 2014) (dismissing business disparagement claim for, *inter alia*, alleging statements that went to the plaintiff's "integrity and reputation, not the quality or value of its services").  Second, the SAC fails to plead the required element of special damages.  Vaguely alleging harm to reputation does not satisfy this element; Plaintiff was required and failed to "allege facts that would enable the Court to discern how [the alleged false statements] . . . proximately led to 'pecuniary loss that has been realized or liquidated.'"  *Id.* at *15–16.

(prima facie claims for defamation and business disparagement both require a false, injurious

statement); *Gleason v. Smolinski*, 125 A.3d 920, 955–56 (Conn. 2015) (listing elements of

defamation).  Moreover, in this case, the statements relate to matters of public concern, namely,

whether Plaintiff's distribution of the Yout service violates the DMCA.  That being the case, the

alleged "'defamatory statements must be provably false, and the plaintiff must bear the burden of

proving falsity.'"  *See Gleason*, 125 A.3d at 955–56 (quoting *Flamm v. Am. Ass'n of Univ.

Women*, 201 F.3d 144, 149 (2d. Cir. 2000)).

Plaintiff does not come close to meeting its burden.  Plaintiff alleges that "[t]he

Defendants' DMCA Notices to Google falsely and impliedly stated that Yout's software program

violates 17 U.S.C. § 1201."  (SAC ¶ 156.)  But, as explained in Section I, *supra*, Plaintiff does

not plausibly allege that the Yout service is not circumvention technology.  In fact, Plaintiff's

allegations demonstrate that RIAA's notices to Google were *true*.

Plaintiff's contrary allegations are legal conclusions that must be disregarded on a Rule

12(b)(6) motion.  *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, *a division of

NBCUniversal Media, LLC*, 864 F.3d 236, 247, 251–52 (2d Cir. 2017) ("when falsity is an

element of a state defamation claim," a plaintiff in federal court must "plead facts that, if proven,

would allow a reasonable person to consider the statement false" to overcome a motion to

dismiss); *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15-cv-6500, 2017 WL 4125368, at *7

(S.D.N.Y. Aug. 23, 2017) (dismissing counterclaim for defamation where defendants did "not

present any well-pleaded factual allegations suggesting that the [contested] statement [was]

false" and "merely offer[ed] conclusory assertions"); *Cabello-Rondon v. Dow Jones & Co., Inc.*,

No. 16-cv-3346, 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017) ("To plausibly plead falsity,

[the plaintiff] must do more than perfunctorily state that a statement is false; rather, [the plaintiff]

20

must identify *how* the defendant's statement was false." (quotation marks and citation

omitted)).[11]

## IV.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff has now amended its complaint twice, and it is clear Plaintiff cannot cure the

SAC's deficiencies with additional pleading.  The SAC therefore should be dismissed with

prejudice.  *See, e.g.*, *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 344 (S.D.N.Y. 2011)

("[A]s plaintiff has already amended his complaint twice, dismissal with prejudice is

appropriate."); *Hall v. United Techs., Corp.*, 872 F. Supp. 1094, 1102–03 (D. Conn. 1995)

(dismissing second amended complaint with prejudice where "plaintiffs repeatedly . . . failed to

cure the substantive defects . . . in their complaint[]" and noting that further amendments would

prejudice defendant).

## CONCLUSION

RIAA respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint

with prejudice.

---

[11] *Tannerite Sports*, *Verragio Ltd.*, and *Cabello-Rondon* involved New York defamation claims,
but the relevant analysis in those decisions applies equally here because falsity is an element of
defamation in Connecticut, as it is in New York.

DATED:  October 20, 2021                    Respectfully submitted,


                                            _____*/s/ Rose Leda Ehler*_____
                                            GLENN D. POMERANTZ (*appearing pro hac vice*)
                                            ROSE LEDA EHLER (*appearing pro hac vice*)
                                            SHANNON AMINIRAD (*appearing pro hac vice*)
                                            MUNGER, TOLLES & OLSON LLP
                                            350 South Grand Avenue
                                            Fiftieth Floor
                                            Los Angeles, CA 90071-3426
                                            T:  (213) 683-9100
                                            F:  (213) 687-3702
                                            glenn.pomerantz@mto.com
                                            rose.ehler@mto.com
                                            shannon.aminirad@mto.com

                                            JAMES O. CRAVEN (ct18790)
                                            DAVID NORMAN-SCHIFF (ct30082)
                                            WIGGIN AND DANA LLP
                                            One Century Tower
                                            265 Church Street
                                            P.O. Box 1832
                                            New Haven, CT 06508-1832
                                            T:  (203) 498-4400
                                            F:  (203) 782-2889
                                            jcraven@wiggin.com
                                            dnorman-schiff@wiggin.com

                                            Attorneys for Defendant Recording Industry
                                            Association of America, Inc.