# Exhibit B



# COURT OF
# HOLBÆK RULING

**delivered on 12 March
2020**

---

**Case BS-25268/2019-HBK**

RettighedsAlliancen,
representative of the Danish
Producers' Association
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative
of ZENTROPA PRODUCTIONS2
ApS
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen,
representative of NIMBUS FILM
ApS
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen,
representative of NORDISK FILM
A/S
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative of
FRIDTHJOF FILM PRODUCTION ApS
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen,
representative of the Danish
Actors' Association
(lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative of
FORENINGEN AF DANSKE VIDEODISTRIBUTØRER f.m.b.a. (ASSOCIATION
OF DANISH VIDEO DISTRIBUTORS)
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative of
SCANBOX ENTERTAINMENT DENMARK A/S
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen,
representative of the Danish
Writers' Guild
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen,
representative of the Danish Film
Directors
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen,
representative of the Danish
Scenographers
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen,
representative of IFPI Danmark
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative of
SONY MUSIC ENTERTAINMENT DENMARK A/S
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative
of KODA
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative
of the Danish Artists' Association
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen, representative
of the Danish Musicians'
Association
(Lawyer Maria Fredenslund)

and

RettighedsAlliancen representative
of Elsevier B.V.
(Lawyer Maria Fredenslund)

Versus

Fibia P/S

Intervened as co-intervener: Yout.com.

This ruling was passed by Judge Kinna Eidem.

**Background to the case and the claims of the Parties**

The case was brought before the Court on 6 June 2019. On 18 September 2019, the Court imposed an injunction against Fibia P/S providing access for its customers to a number of internet services. Yout.com was covered by the request for an injunction, but the element of the case relating to Yout.com was deferred to be decided later at the request of the parties.

Thus, the present ruling relates to whether the conditions for imposing an injunction against Fibia P/S providing access for its customers to Yout.com have been met. In accordance with Section 420, Sub-section 2 of the Danish

Administration of Justice Act, Yout.com has intervened in the case as co-intervener in support of Fibia P/S.

As representative of the above claimant, RettighedsAlliancen has put forward the following claims:

1. Fibia P/S, as an internet provider, is prohibited from granting its customers access to the internet service which the website yout.com currently grants access to.

2. Fibia P/S is required to implement a technical solution, for example, a DNS block, which is able to prevent Fibia P/S' customers from accessing those internet services which the website mentioned in the claim above currently grants access to, and to other websites which grant access to the same internet service and which RettighedsAlliancen, in accordance with the Code of Conduct (Appendix 1) brings to the explicit attention of Fibia P/S as, in this regard, RettighedsAlliancen undertakes to assume legal and financial responsibility for other such websites granting access to those internet services to which the decision relates.

Fibia P/S has requested that the prohibitory injunction claim is dismissed.

Yout.com has also requested that prohibitory injunction claim is dismissed.

**Information pertaining to the case**

The ruling does not include a full statement of claim, cf. the Danish Administration of Justice Act, Section 218b.

On 18 September 2019, the Court imposed an injunction, following which Fibia P/S was prohibited from granting its customers access to several internet services which several websites granted access to. Yout.com was covered by the request for the injunction but the decision regarding Yout.com was deferred until a later date.

During preparations for the case, Yout.com obtained a declaration from Luis Peter Wahl Knudsen on 7 November 2019 regarding, inter alia, Yout.com, other programmes and services as well as YouTube. The declaration read as follows:

> "As part of the preparatory work for this declaration, I have examined the system behind the website Yout.com. As part of my investigations, I have analysed the source code behind Yout.com's Record function and established how Yout.com functions in technical terms when a user, via Yout.com, enters a web address (URL) for a media source – for example, a video on YouTube.com – and gains access to saving a copy of this media source locally on his/her computer.
>
> Furthermore, I have analysed Yout.com's recording function from the perspective of a user and compared the functionality offered by Yout.com with the functionality in other similar programmes and services, for example, Xbox Game Bar from Microsoft, a programme that forms an integral part of Windows 10.
>
> <u>Conclusion</u>

From the analysis of the source code for Yout.com's recording function, it can be concluded that Yout.com does not contain any functionality which stores/saves content from media sources (For example, YouTube.com) on Yout.com's servers.

By analysing the source code for the system behind Yout.com's recording function it can be observed that Yout.com establishes a connection (a so-called "Pipeline") between the media source (for example, YouTube.com) and the user's computer. Via this "pipeline", data is transported from the media source to the user's computer without being stored on Yout.com's (or anyone else's) servers along the way.

The functionality offered by Yout.com's recording function is also found in other programmes and services. For example, the programme Xbox Game Bar is built into Windows 10, and this also gives the user the opportunity to save media sources from, for instance, YouTube.com.

Mode of operation for Yout.com
Yout.com's recording function works by allowing a user to enter a web address (URL) for a media source which, for example, is to be found on YouTube.com. Yout.com sends the entered web address further to, for example, YouTube.com, which responds to Yout.com by returning the content of the website from the web address in question with a reference to where the requested media source is to be found.

Hereafter, Yout.com opens a so-called "Pipeline 1", which is a connection between the user's computer and the server on which the requested media source is to be found, for example, YouTube.com.

According to the expert's declaration in relation to Yout.com given that the pipeline has been established, Yout.com sends an instruction to the user's computer with the result that the user can choose to save the stream of the media source to the user's computer. Once the pipeline has been established and, for example, YouTube.com starts to send data originating from the chosen media source, this data is thus transmitted immediately to the user's computer via the opened pipeline. Thus, the user is granted access to the ability to store the media source as a file on his/her computer.

To save bandwidth, YouTube.com (and other similar streaming services) often uses "fragment loading", which is a technology that breaks a media source up into fragments. When a fragment is sent from YouTube.com via Yout.com to the user, Yout.com carries on transmitting the next fragment to the user via the opened pipeline. The fragments are subsequently gathered together, one by one, on the user's computer and a contiguous file is created.

When Yout.com (at the user's request) contacts YouTube, this is done using the same methodology as the user's own internet browser would have used to access the media source on YouTube.com.

Yout.com uses a method which results in the incoming data stream from, for example, YouTube.com is transmitted further to the user's computer with storing the stored/saved the received data on Yout.com's server along the way.

See Appendix 1 for an outline of Yout.com's mode of operation.

Programmes/services which offer the user similar opportunities to Yout.com
Xbox Game Bar2 from Microsoft is a programme which is built into Windows 10 and which is activated when the user enters EE + G (Windows key + G). Xbox Game Bar offers a functionality that enables video and audio that is played back on the computer (for example, from YouTube.com) to be saved locally (in the same way as when you can take a

screenshot using the "Print screen" function. Xbox Game Bar allows users to save video, sound and images. The programme is executed locally on the user's computer, and the saved data stream can either be saved locally or published to a wider public via the built-in "broadcast" function. Xbox Game Bar from Microsoft is just one example of a wide selection of available programmes which specifically offer the opportunity to save streamed services from, for example, YouTube. By using this or a similar programme, the user can store/save a media source as a file on his/her own computer.

See Appendix 2 for an outline of Xbox Game Bar's mode of operation.

<u>YouTube and protection against the storing of media sources via effective technical measures</u>
YouTube has not implemented effective technological measures in its browser-based service to prevent people from retrieving media sources from YouTube's servers. Below, I have provided examples of effective technological measures that it would be relatively simple for YouTube to implement in order to prevent the storage of protected media sources:

- A dedicated YouTube playing device produced specifically for that purpose.
- A protected YouTube software that can only be installed on controlled platforms.
- Known user accounts on YouTube whereby media sources are uniquely "watermarked" with the
  protected user account so that it will be possible to trace any infringement of rights to that account.
1. Implicated user account.

…"

The declaration is accompanied by three graphic illustrations.

On 21 January 2020, RettighedsAlliancen obtained a declaration from Dr. Georg Nolte, Senior Legal Counsel, Google Germany GmbH in relation to YouTube's use of cipher technology. The declaration reads as follows:

"**Statement on the use of the so-called cipher technology on YouTube**
YouTube's current business model in Europe is primarily based on ad-financed streaming. "Streaming" means a contemporaneous digital communication of the content via the Internet to a user-operated Internet enabled device in such a manner that the data is intended for real-time viewing and not intended to be permanently downloaded, copied, stored, or redistributed by the user.

Permanent-copy downloads are prohibited in YouTube's Terms of Service.

In order to prevent unauthorized downloads on a technical level, YouTube implements so-called "cipher" technology to mitigate unauthorized access to YouTube content. A "cipher" is a specific algorithm for performing encryption and/or decryption. Specifically, the cipher scrambles certain URLs – known as "media URLs" – that an end user's web browser must use in order to access content on YouTube's servers, and they can only be unscrambled by web browsers using YouTube's authorized video player. For instance, when a user requests YouTube content by submitting a standard YouTube URL to their web browser that is, a URL of the form www.youtube.com/watch ?v=[VIDEO_ID]" - YouTube will return a scrambled media URL to the user's web browser. If the user is using a web browser that is capable of rendering the YouTube player, then YouTube will launch the player on the user's browser, and the code that YouTube uses for its player will be able to unscramble the media URL using a secret key that typically updates many

times a week.

YouTube implements this cipher technology to satisfy the requirements of YouTube's license agreements with copyright owners, who do not authorize YouTube to allow permanent downloads of their content on YouTube's ad-financed streaming service."

**Testimony**

Luis Peter Wahl Knudsen gave testimony.

<u>Luis Peter Wahl Knudsen</u> has explained that he can uphold his declaration of 7 November 2019. He is employed as technical manager in Minuba ApS, which has around 40 employees and is active in 7 countries. He has previously worked as a consultant on major and minor infrastructure projects.

His investigations show that nothing is saved on Yout.com's servers. Yout.com has implemented a method whereby the content of the stream is not saved. The recording function functions in the same way as an internet browser so that Yout.com opens the website the user has entered into his/her window, after which Yout.com takes the opened content and sends it to the user. Yout.com's servers act as both the server for the end-user and thereafter as the client to YouTube's servers. This is what he has illustrated in the drawing he has appended to his declaration. When the user enters a query in Yout.com, Yout.com forwards the query to YouTube. Communication takes place between the end-user and Yout.com. Thereafter, YouTube sends fragments to Yout.com, which sends data back to the end-user where a contiguous file is created which is
then saved on the end-user's computer. Nothing is stored on Yout.com's servers in this regard.

Xbox Game Bar can do something similar. It is a product produced by Microsoft. A lot of resources are used up to record sessions on users' computers. This includes, for example, the recording of a computer game the user has played. Xbox Game Bar functions in such a way that a file is saved on the user's own computer or on a broadcast channel. It will be possible to record what is happening on the computer. For example, you can record a music video that is being played on the computer. If you, for instance, retrieve an audio file, it will also be possible to save it via Xbox Game Bar.

The witness is of the view that YouTube has not implemented effective technological measures to prevent users retrieving material.  YouTube has decided that you can access their servers via an ordinary web browser and that there is no technology to prevent the downloading of data. Nor is there any requirement for users to create a user account in YouTube. Providers can protect their material with regard to publication, for example, by making it a condition that the material can only be accessed via the YouTube Premium service, which requires a user account for which a subscription is paid.

A cipher is a long number that is generated randomly. It corresponds to a unique serrated key. When you access material that has been put on YouTube you will be sent a cipher that functions as a "key" to the material that has been requested. For the material to be accessed, the key has to pass through a "lock", and the lock is a stub code that comes from YouTube and is sent to the browser as a programme stub. When the "key" is inserted into the programme stub, a new number comes out which gives access to the file. This corresponds to YouTube handing over the lock and key at the same time. YouTube will not be able to protect itself against others retrieving the content. YouTube must use another technology if it wants its content to be adequately protected. You could choose to make the retrieved data stream traceable so that it would be possible to trace the account in question in the event of a copyright infringement. The cipher solution is inadequate because the "lock" and "key" are sent at the same time.

If you click on material on YouTube, you do it by means of streaming technology which gives the user the opportunity to play the content. You can only download if you use Xbox Game Bar, Yout.com or a similar service. YouTube does not provide a direct function whereby you, as an end-user, can save the content from YouTube. You must enter the web address of the media source on Yout.com's website. You can also use search words on Yout.com. The connection between Yout.com and YouTube is made automatically when the end-user enters something into Yout.com after which Yout.com retrieves data from YouTube. As far as the end-user is concerned, this is done automatically. Once the connection has been established, Yout.com sends the data stream on immediately to the end-user, who is then asked if they want to save the material. If you start Xbox Game Bar, such a query is not sent. There is an in-built function in Xbox Game Bar that asks whether you want to broadcast or save the material, so that when you start you choose whether you want to save it or send it. If you are going to save a music video via Xbox Game Bar, you must play the entire video first as it is a case of recording what is happening on the user's screen locally. If you use Xbox Game Bar, for example, Xbox Game Bar does not access YouTube on behalf of the user. It is solely a matter of recording what is happening on the user's screen. The witness does not know whether there is a Search function in Xbox Game Bar.

**The viewpoints of the Parties**

<u>As representative of the applicants, RettighedsAlliancen has</u>, in a claim document of 23 January 2020, stated the following in support of the claims:

> "…
> RettighedsAlliancen has received the pleading of 10 December 2019 with the claims G to L from Yout.com, and will respond to these claims below, and give the claimants' summarising allegations in the case.
>
> *1. Yout.com's most recent claims*
> In response to Yout.com's **claims G and H,** RettighedsAlliancen comments, with reference to the section below, on the illegal activities on Yout.com, that in Yout.com's case, it is

immaterial whether copies are saved on their servers, as Yout.com, **by providing their tool**, enables users to access the protected works which, merely by making them available is facilitating a communication of the works to the public, which requires the claimants' consent. Reference to the European Court of Justice's ruling in case C-527/15 (Filmspeler).

RettighedsAlliancen upholds its interpretation of the Italian case against Yout.com. The Regional Administrative Court in Lazio referred to the large-scale, uncontrolled and irremediable nature of the copyright infringements being committed daily on Yout.com and decided therefore to uphold AGCOM's blocking of Yout.com. In response to Yout.com's claim I, it can be stated that RettighedsAlliancen is not aware of any other cases against Yout.com apart from the Italian case.

In response to Yout.com's claims J, K and L, RettighedsAlliancen can say that neither RettighedsAlliancen nor the applicant are making any accusation or wish to declare that Yout.com is stealing its users' personal information and using it in other criminal activities. Obviously, RettighedsAlliancen has no knowledge of this. RettighedsAlliancen was urged to explain why Appendix 5 was presented along with the request for the injunction, and RettighedsAlliancen explained that the Appendix described a general trend among illegal services that make protected content available without the copyright holder's consent.  Due to the restricted nature of this case, RettighedsAlliancen withdraws this appendix for the sake of simplicity.

*2. Summarising allegations relating to infringement of the Danish Copyright Act*
Yout.com communicates protected works to the public in breach of the claimants' rights in accordance with Section 2, Sub-section 2, number 1 of the Danish Copyright Act. Yout.com is also instrumental in the user making illegal copies of musical works, in breach of Section 2, Sub-section 1, cf. Sub-section 2. Below, you will find details of the relevant claims relating to Yout.com's illegal activities as well as Fibia's obligation to block the website.

The claimants have the exclusive right under the Danish Copyright Act to produce copies of musical works and to make these available to the Danish market. Reference is made to the request for an injunction dated 6 June 2019 for a more detailed account of the copyright holders. The right of **communication to the public** is a harmonised EU exclusive right which gives the copyright holders the exclusive right  to make copyright-protected works available on the internet, cf. European Parliament and Council's Directive 2001/29 of 22 May 2001 on the harmonisation of certain aspects of copyright and related rights in the information society (the Infosoc Directive) Article 3(1). The exclusive right to communicate the works to the public has been implemented in Danish Law in Section 2, sub-section 4, number 1 of the Danish Copyright Law.

Yout.com's illegal communication consists of the fact that Yout.com makes protected works available to its users without the consent of the claimants. More specifically, the communication consists of Yout.com providing a tool for its users which enables them to gain access to *permanent copies* of musical works at a place and time chosen by the individual.

In its ruling C 527/15 (Filmspeler), the European Court of Justice found that the actual offering of a tool which makes it possible for users to gain access to protected works without the consent of the copyright holders can constitute an illegal communication. Furthermore, this has been the conclusion reached in Danish as well as international legal practice, for example, in the cases relating to the Popcorn Time service in Denmark and the United Kingdom.

This case concerns Yout.com making works available through the use of a new technological procedure which differs from the original communication on YouTube. By its

very nature, the criteria of a **new public** is fulfilled when a work is communication by means of a new technological procedure, and it is an independent communication which requires the claimant's consent.  Therefore, Yout.com cannot refer to the fact that the works in question are also available on YouTube to support their claim that they do not need to obtain consent from the claimants. In this regard, particular reference is made to the European Court of Justice's ruling in case C-607/11 (TV Catch-up) and to C-266/12, which addresses the concept of a *new public*.

The assertion that Yout.com uses a new technological procedure is illustrated by the fact that Yout.com makes it possible to download *permanent copies* of musical works that can be played offline on any device, whereas the musical works in the original communication on YouTube can only be played *temporarily* (streamed) over the internet in the specific YouTube media player. In terms of technology, there is a significant difference here, and therefore it cannot be said that the claimants took into account that it should also be possible to download and play their works without an internet connection when they allowed the first communication on YouTube. In this regard, reference is made to the European Court of Justice's ruling in case C-265/16 (VCAST), premise 43 and 48-50, where communication over the internet was regarded as a new technological procedure and different to communication via radio and television.

It is an aggravating circumstance that Yout.com is operated for financial gain, including the fact that they offer their users a paid subscription solution "You PRO" (Appendix 9, screenshot 5). This is stated in, for example, the EU Court of Justice's ruling in case C-610/15 (Brein vs. Ziggo).

The communication of protected works by Yout.com is to the public. According to European Court of Justice practice and the Infosoc Directive, in general, a high level of protection should be introduced for rights holders and there should also be a broad interpretation of the concept of the public, according to which the concept should be defined as the potential number of users who are granted access to the claimant's works. Reference is made to the rulings in cases C-610 (Brein vs Ziggo) and C-527/15 (Filmspeler). Therefore, the actual use of Yout.com is not a decisive factor, even though Appendix 3 and Appendix H confirm that Yout.com is used by many Danes.

Yout.com has been aware of the consequences of making their tool available. According to legal practice, it is an essential element of communication to the public that Yout.com was **aware of the consequences** of making their tool available to its users. The objective of Yout.com is to enable users to download permanent copies of content that are available for playing in the form of temporary streaming on, for example, YouTube. The tool and its functionality are the primary objective of the website yout.com, and thus the main attraction for users who have visited Yout.com approximately 131 million times in 2019, including visits by Danes, cf. Appendix H. The fact that Yout.com was aware of the consequences of making their tool available to users is apparent in several places on the Yout.com site, where it is explicitly described that the tool can be used to create permanent copies of music, cf. screenshots 3, 6, 7 and 8 and the associated text in Appendix 9. The programmer and operator of Yout.com, Jonathan Nader (aka nadermx) has also, in a post of 9 January 2016 on the popular internet forum Reddit.com1 propounded in extracts presented as **Appendix 11,** advertised Yout.com and acknowledged "*I'm trying to make [Yout.com] the main place people think of when trying to* **convert YouTube videos** *to whatever. The only way I think I can make that a reality is if I become really good at that exact thing and only that thing in a way that is **very simple, intuitive, and fast***. *I.e., kissing it.*" (own emphasis) cf. Appendix 11 page 5. In the forum thread presented as Appendix 11, on several occasions Jonathan Nader is informed by other users that Yout.com, it would appear from Jonathan Nader's description, is in contravention of American and German law and also breaches YouTube's Terms of Service. To this, Jonathan Nader replies, among other things "*You may be right, and I may not see the*

*gravity of the situation I am in. But if I get to the point where this becomes an issue, I will fight for a cause I believe in, and I'm content with that*", cf. Appendix 11 page 2 and "*I am no lawyer, but I'm sure YouTube has their reasons, Yout.com is a DVR for the internet*", cf. Appendix 11 page 3. Thus, there is no doubt that Yout.com is aware of the consequences of making their tool available.

RettighedsAlliancen contests the claim that Yout.com. with reference to its Terms of Service, can disclaim their responsibility for being aware of the illegal activities, just as it is immaterial whether Yout.com uses the word "record" or "download". The reality is that users can download permanent copies of music from YouTube to their computers, cf. Appendix 9, screenshot 5 on page 5, and that Yout.com is aware of this, cf. the section above. The fact that the objective of Yout.com is to download music is underlined further by the fact that the standard setting for the download format on Yout.com has been set to "MP3 (Audio)", cf. screenshot 3 on page 3 in Appendix 9. Also, in response to the following question "*Is there any loss in quality when you download a video?*" (own emphasis), Jonathan Nader replies: "*The bitrate varies on the video, I'm working on being able to set the quality*", cf. Appendix 11, page 6. Here, Jonathan Nader himself acknowledges that Yout.com is used for downloading.

Yout.com plays an **essential role** in making the works available to the public, which is also a crucial criterion in the assessment of whether Yout.com is facilitating a communication of the claimant's works to the public. Yout.com plays an essential role as the users, without the functions available on Yout.com, would not be able to, or at the very least, would find it difficult to, gain access to the claimant's works in a way that Yout.com enables them to. The fact that there are other and more difficult ways of making permanent digital copies of musical works from YouTube makes no difference. Reference is made to the rulings in C-610/15 (Brein vs. Ziggo), C-527/15 (Filmspeler), and to the Court of Frederiskberg's ruling of 5 December 2017 in a blocking case relating to the Popcorn Time service.

It is significant that Yout.com provides a search engine which, together with Yout.com's other functionality, makes it *simple, intuitive and quick* for users to gain access to protected works. Providing the search engine is one of the many factors which the European Court of Justice has taken account of in its assessment of whether someone plays an essential role in its users' ability to gain access to protected works and this whether it involves a communication to the public which requires consent from the rights holders. Reference is made to C-610/15 (Brein vs. Ziggo).

The essential role that Yout.com plays with regard to making the works available to the public is supported by the unilateral declaration obtained from Yout.com (Appendix I). Here, there is a description of the mode of operation for Yout.com, including the way in which **Yout.com sends** web addresses entered by users in the **search engine** further to YouTube, how YouTube responds to Yout.com on these queries with the content of the web address, how **Yout.com opens** a "pipeline" between YouTube and the user, how **Yout.com sends** instructions to the user's computer so that the user can save the content from YouTube on the user's computer with the pipeline, how fragments of the content are sent from YouTube to the user via **Yout.com** so that they can be gathered together on the user's computer, and how **Yout.com re-transmits data** from YouTube to the user without any data being saved on Yout.com.

By comparison, with Microsoft Xbox Game Bar the user him/herself must take all the necessary steps to acquire a permanent copy. Thus, the functions mentioned above, which Yout.com carries out on the user's behalf, contribute significantly to differentiating Yout.com from Microsoft Xbox Game Bar and, at the same time, are the reason why Yout.com plays an important and essential role, whereas Microsoft Xbox Game Bar does not.

The fact that the declaration from the expert in Appendix I comes to the conclusion that *"The functionality that Yout.com's Record function offers is found in other programmes and services"* cannot be presented as proof that there is no difference between Yout.com and Microsoft Xbox Game Bar. Appendix I describes the actual differences, cf. above, and it is a matter of a legal assessment as to whether the tools carry out a communication to the public. Thus, Appendix I's description of the functions in Yout.com underline the essential role Yout.com plays in the user's ability to download permanent copies, and it is a crucial factor in the assessment of whether it is a case of communication to the public, cf. above. At the same time, Appendix I shows how, with Microsoft Xbox Game Bar, the user him/herself is responsible for taking all the steps in the process of downloading a permanent copy.

The older cases from the USA, Norway and the Netherlands from 1984 and the beginning of the 00s respectively, which Yout.com refers to, are irrelevant in the assessment of whether Yout.com has a legal objective and is carrying out a communication to the public. For example, the Betamax case from 1984 revolves around the specifically American term *fair use*, which has neither a Danish nor an EU legal counterpart, which is why the case has no legal relevance in this case.

In relation to the Dutch case, RettighedsAlliancen refers to Premise 47 in the European Court of Justice's ruling from 2017 in case C-610/15 (Ziggo v Brein): It must therefore be concluded that the provision and **administration of an online sharing platform constitutes a "communication to the public"**, as dealt with in Article 3, sub-section 1 in Directive 2001/29", (own emphasis). Furthermore, reference is made to the European Court of Justice's ruling from 2017 in case C8 527/15 (Filmspeler), where the offering and sale of a media player (hardware/tool), the objective of which was to be used for illegal purposes, was regarded as being a communication to the public which required the consent of the copyright holder in order for it to be legal. Both the Ziggo ruling and the Flimspeler ruling are Dutch cases. Therefore, there is no doubt that both the file sharing services and the distributors of tools that are used for illegal purposes can breach the law.

Yout.com helps users of the service make illegal copies of musical works in breach of the claimant's rights pursuant to Section 2, Sub-section 1, cf. Sub-section 2.

The fact that Yout.com helps users make illegal copies is a consequence of it not being possible to use Yout.com to produce digital copies of either film or musical works that are covered by the exemption in Section 12, sub-section 1, number 5 of the Danish Copyright Act relating to copying for personal use. Firstly, it is prohibited to use so-called outside help to make copies, cf. Section 12, Sub-section 4, Numbers 1 and 2 of the Danish Copyright Act. The outside help comprises using the tool on Yout.com. Secondly, the users' copies of musical works is not covered by exemption on the grounds that the copies have a detrimental impact on the normal use of the works and breach the legitimate interests of the copyright holders, cf. The Berne Convention of 9 September 1886 for the Protection of Literary and Artistic Works, Article 9, Sub-section 2, cf. Sub-section 3.  The provisions in the Berne Convention are a prerequisite for the exemptions that restrict exclusive rights pursuant to the Danish Copyright Act being applicable at all. In its ruling on the Filmspeler case, the European Court of Justice has applied the aforementioned principle and stated that temporary acts of reproduction can **be contrary to the normal use of a work and entail unreasonable harm to the copyright holder's legitimate interests**, because the number of legal transactions will be reduced as a result thereof, and it constitutes unjustified harm to the copyright holder.

The claimants suffer unjustified and unreasonable harm in a similar way from Yout.com's tool as the number of legal transactions on YouTube and other legal streaming platforms, all else being equal, will be reduced as a result of the users' use of Yout.com.

*3. Summarising allegations relating to the Danish Administration of Justice*
*Act's conditions for the notification of an injunction and requirement*
RettighedsAlliancen maintains that the conditions in the Danish Administration of Justice Act for imposing injunctions and requirements have been met in this case relating to Yout.com. RettighedsAlliancen has substantiated that Yout.com's actions, against which an injunction is sought, violate the claimant's rights, cf. Section 413, Section 1, number 1 of the Danish Administration of Justice Act and above.  RettighedsAlliancen has also substantiated that Yout.com's illegal actions result in unreasonable harm to the claimant, as the legal transactions involving their works are reduced when Yout.com's users do not access YouTube to play the works or pay for a subscription with a legal streaming service which allows them to play the works offline.

RettighedsAlliancen has substantiated that Yout.com's illegal activities, against which an injunction is sought, must be expected to continue, cf. Section 413, Sub-sections 1 and 2 of the Danish Administration of Justice Act. Appendix 11 with Jonathan Nader's comments support this.

RettighedsAlliancen has substantiated that the law's general rules on penalties and compensation do not provide the copyright holder with adequate legal protection as it is observed that with regard to the tightening up of the Danish Administration of Justice Act's conditions for imposing a temporary injunction, the legislator, in its preparatory work, has explicitly stated that the conditions for injunctions generally will be met in cases relating to the infringement  of intellectual property rights, cf. the comments on the bill, Section 642 (now Section 413). RettighedsAlliancen cannot exercise any control over the time it takes the courts to handle the cases, which is why the fact that case was initiated 6 months ago cannot lead to any other result.

A blocking of Yout.com is a proportional legal resource as Yout.com has many current and potential Danish users. There is no legal way in which Yout.com can be used for the service's intended purpose. The fact that Yout.com has chosen to base its business model on an illegal basis cannot suggest that a blocking will be disproportionate to Yout.com's interest in continuing its activities. Besides, users still have access to the content on YouTube, and for that reason will not be denied any legal ways of using it if Danes are blocked from accessing Yout.com.

The imposition of an injunction is in keeping with legal practice. There is no factor which makes it necessary for security to be provided in connection with the injunction as it is a matter of obviously illegal activities and the fact that users of the website – irrespective of Yout.com's responsibility for the actions – are acting illegally.
…"

In a claim document of 27 January 2020, <u>Fibia P/S</u> stated the following in support of the presented claim:

"…
that   it is the responsibility of the Copyright holder to discharge the burden of proof that an injunction can be imposed, as claimed,
that      it is the responsibility of the Copyright holder to proof that the websites mentioned in the request for an injunction contain sufficient illegal material to just this and that the requirement for proportionality has been met,
that   Fibia is merely the internet provider and is not aware of – or has responsibility for – the websites being dealt with in the case,
that Fibia's primary interest in the case is that a substantively correct legal ruling is delivered so that Fibia has a secure legal basis to follow, and

…"

In a claim document of 24 January 2020, <u>Yout.com</u> stated the following in support of the presented claim:

"…

In support of the presented claim, it is submitted that it is the responsibility of RettighedsAlliancen to discharge the burden of proof that an injunction can be imposed as claimed. No burden of proof has been discharged.

It is submitted that it is the responsibility of RettighedsAlliancen to prove or substantiate that Yout.com is **transmitting    works to the public** in violation of the claimant's rights under Section 2, Sub-section 4, Number 1 of the Danish Copyright Act and that Yout.com is **making illegal copies of** musical works in violation of Section 2, Sub-section 1, cf. Sub-section 2 of the Danish Copyright Act.
This burden of proof has not been discharged.

In this regard, it is submitted

that     Yout.com solely has a **legal objective**, which is clearly stated on the website,
that     Yout.com does not contain files of any kind and therefore does not make works available to its users,
that     no audio or image recordings are made available through Yout.com,
that     Yout.com only provides software – a legal recording tool,
that     it is an actual misconception to believe that there is copying and thereby a temporary making of copies on Yout.com cf. Section 11a of the Danish Copyright Act,
that     even if, according to Section 11 a. of the Danish Copyright Act, there was a temporary making of copies via Yout.com, then it is being done on the basis of a legal source as the user **must** have the rights to the **videos** [not music] which the user records via Yout.com, also cf. the Terms of Use in Appendix C,
that     the actions, against which an injunction is sought, are therefore not in breach of RettighedsAlliancen's rights of any kind, simply by virtue of the fact that there no illegal activity whatsoever is being perpetrated through the users' access to Yout.com, let alone on the aforementioned website,
that     the cumulative conditions for there being a communication of a work to **the public** have not been met,
that     the term **communication to the public** must be assessed on an individual basis, cf. The European Court of Justice's case C-610/15 (Brein v Ziggo – The Pirate Bay) Premise 23, and for that reason RettighedsAlliancen's **general references** to the European Court of Justice's practices have no legal relevance to the judgement of this particular case,
that     RettighedsAlliancen has not documented how often Yout.com is being used either to commit breaches of copyright or used legally, which must be taken into account, cf. case  C-355/12 of 23.4.2014 (Nintendo),
that     Yout.com has documented that only 804 Danes visited the website in March 2019, cf. Appendix H, and for that reason the plaintiff's claim that there were 26,514 Danish visitors during the month of March 2019 is incorrect,
that     closing access to Yout.com will not have any effect on the user's ability to download permanent files from YouTube using other recording tools, for example, Microsoft's Xbox Game Bar, cf. the expert's declaration in Appendix I, in which the expert concludes: "… **both services enable the user to save media sources from, for example, YouTube.com**",
that     closing access to Yout.com will unnecessarily deny users the opportunity to

|       | legally record videos to which they have the rights, which is disproportionate, |
|-------|---|
| that  | Yout.com has not circumvented any kind of effective technical measures, neither on YouTube nor elsewhere, which moreover has been neither proven nor substantiated by RettighedsAlliancen either, |
| that  | there are no effective technological measures to circumvent YouTube, cf. the expert's declaration in Appendix I, |
| at    | for the above reasons, Yout.com is not infringing the Danish Copyright Act and the proceedings to impose an injunction should therefore be halted forthwith. |

--ooOOoo--

It is also submitted that the **EU Court of Justice Practice and Danish Legal Practice** appended to the request for an injunction have no relevance to the case as the injunctions have been granted because

(i)   the website owners did not turn up in court, and it is a case of *judgement in absentia, or*

(ii)  because the facts differed significantly, both **technically and factually**, from the Yout.com case in that it involved services that encouraged illegal use and made works protected by copyright available to users and **indexed** this material etc.

Below, the specific allegations in support of the fact that the cases differ factually from one another:

Re Filmspeler (C 527/15):

In case C-527/15, Premise 48, the European Court of Justice stated that when the rights holders themselves have made the works available on a website, for example, YouTube, then they must have been aware that the **public** comprises all internet users and therefore it is not a case of a new audience, cf. Filmspeler, Premise 48, Documentation files 207.

In the Filmspeler case, the European Court of Justice found that it was illegal to make a media player available which gives access to works that have been posted on the internet **illegally**, whereas Yout.com provides a Record function which gives access to material that has been posted on the internet **legally**, for example, YouTube. Filmspeler markets itself in such a way that It could be used to gain access to illegal works on the internet, **whereas** Yout.com does not market itself in such a way but rather actively informs its users that the Record function must be **used legally.**

Re Svensson (C 466/12):

The Svensson case is irrelevant in the specific circumstances relating to Yout.com as the Svensson case deals with a website with a login access, which is a way in which a work can be posted on the internet without taking all internet users into consideration as an audience, **whereas** the rights holders in the Yout.com case must have been aware that the **public** comprises all internet users when the rights holders upload a work to, for example, YouTube, which is why it does **not** involve a new public in relation to Yout.com.

Re Convert2mp3 (BS-8065/2018-FRB):

In the Convert2mp3 case the fact was that a copy of a copyright-protected work was saved on Convert2mp3's servers for at least 4 hours, **whereas** Yout.com does not save any copyright-protected works material on its servers.

Furthermore, in the Convert2mp3 case it was documented that more than 5 million Danes visited the website in 2017, **whereas** Yout.com only had **5469** Danish visitors in 2019, cf. Appendix H.

Also, it was also documented in the Convert2mp3 case that users had downloaded nearly a million illegal copies via the website in 2017, **whereas** there is no shadow of a doubt that the 5469 Danish visitors on Yout.com use the Record function for illegal purposes, or in any given case how many copyright infringements should it involve.

Re Ziggo v Brein/The Pirate Bay (C-610/15):

The Pirate Bay case involved an online sharing platform in which it was an indisputable fact that copyright-protected works were being made available to the public, **whereas** Yout.com disputes the claim that it was making copyright-protected material available to the public.

Furthermore, the result in The Pirate Bay case was very specifically substantiated as it was crucial to the result that the administrators of the website indexed copyright-protected works on the sharing platform, **whereas** Yout.com does not carry out indexing of any kind as it merely provides a search engine.

In The Pirate Bay case, it was also a crucial factor that the administrators of the website obviously expressed their objective of making the protected works available to users, and directly **encouraged these users to make copies of the works, whereas** Yout.com informs its users that no illegal copies may be made and that the Record function must be **used legally.**

Re Popcorn Time (BS FOR-969/2017):

In the case involving Popcorn Time, Popcorn Time acquired, collated and presented the user with copyright-protected films and TV series and the associated metadata, **whereas** Yout.com does not independently gather or present copyright-protected material to its users.

Re the Italian case against Yout.com (Regional Administrative Court in Lazio):

The Italian case against Yout.com, to which RettighedsAlliancen refers, only described an Italian administrative procedure which concerns an Italian authority blocking Yout.com with 5 days' notice without the case being brought before a court.

The Italian case is now pending in the proper courts while the case has not been decided, therefore no relevance can be attached to the circumstances in the Italian case.
*In summary, it is submitted that in relation to the attaches European Court of Justice practice and Danish legal practice, the cases do not have any legal relevance to the specific circumstances in the Yout.com case.*

--ooOOoo—

**It is submitted that the conditions for the imposition of an injunction in Section 413, cf. also Section 414, Sub-section1 and 2 of the Danish Administration of Justice Act have not been met.**

With regard to the **first condition for imposing an injunction in Section 413, Number 1 of the Danish Administration of Justice Act** (that the party has the right to seek protection through the imposition of an injunction or a requirement), it is submitted that RettighedsAlliancen has neither proved  nor substantiated that they have the right to seek to be protected by means of an injunction.

RettighedsAlliancen has said that "the claimants in this case are the owners of the exclusive

rights to the overwhelming majority of the audio-visual, literary and musical works that are distributed **on the Danish market** (my emphasis), cf. claim document of 11 September 2019. However, RettighedsAlliancen has not proved  (i) that their rights are being infringed via Yout.com, or (ii) the extent to which this should be the case.

In this regard, it is observed that only a very small proportion of the content on YouTube comprises protected musical works. Several million ordinary videos are uploaded to YouTube with a view to allowing third parties to use and edit them, cf. Appendix B. Yout.com's Record function may be used to record videos to which the user holds the rights, which is a legal objective. Therefore, Yout.com is not infringing the specific rights administered by RettighedsAlliancen.

In this regard, it is submitted that Yout.com actively makes its users aware what it legal and what is illegal respectively, cf. Yout.com's Terms of Service in Appendix C, which state (is) that the service if for private use, (ii) that the user must have the rights to the videos he/she is recording via Yout.com, and (iii) that the service must not be used to commit copyright infringements.

Yout.com explicitly states that it is not permitted to record videos to which the user does not hold the rights.

It is disputed that RettighedsAlliancen has proved  or substantiated that Yout.com is an illegal service with an **illegal objective**.

Indeed, RettighedsAlliancen also acknowledges that they do not know whether Yout.com is operating illegal activities, cf. page 3 of the final claim document:

**"... neither RettighedsAlliancen nor the applicant are making any accusation or wish to declare that Yout.com is stealing its users' personal information and using it in other criminal activities.  Obviously, RettighedsAlliancen has no knowledge of this."**

Thus, RettighedsAlliancen is admitting that they have no knowledge regarding, nor have they discharged the burden of proof for the presented postulate.

Insofar as the **second condition for imposing an injunction in Section 413, Number 2 of the Danish Administration of Justice Act** (that the counterparty's conduct necessitates notification of an injunction or requirement), it is submitted that Yout.com does not display any conduct that necessitates a temporary injunction being imposed.

In this regard, it is submitted that RettighedsAlliancen must substantiate the claim the Yout.com proposes to infringe the specific rights administered by RettighedsAlliancen. This cannot be substantiated as it is not happening, and also because Yout.com makes its users aware that the Record function may only be used for legal purposes, see also above.

In 1984, the courts ruled in favour Sony (applicant number 130) who found that they, as hardware distributors, were not responsible for users using Betamax video recorders for pirate copying. The background to this was that the Betamax video recorder could be used predominantly for non-infringing purposes, which is precisely the case with Yout.com. It is now 35 years later, and it is submitted that the same principles should apply to a video recorder on the internet.

With regard to the **third condition for imposing an injunction in Section 413, Number 3 of the Danish Administration of Justice Act** (that the party's ability to attain their entitlement will be forfeited if the party is asked to await the ruling in the dispute), this condition has not been met, for the simple reason that RettighedsAlliancen has neither

proved nor substantiated the claim that their right will be forfeited by awaiting the ruling in the dispute.

Firstly, it is a well-known fact that Yout.com is one of the world's biggest internet-based video recorders, which has been in existence for more than 5 years, cf. Appendix J, screenshot from the international business platform, Crunchbase.com. Therefore, it is submitted that RettighedsAlliancen has had ample opportunity to initiate an injunction case at a much earlier time.

This did not happen.

Globally, Yout.com was visited 131 million times in the period from January to September 2019, cf. Appendix G, which confirms that over the last 5 years there has been global awareness of Yout.com – particularly on the part of RettighedsAlliancen, which scrutinises the market on an ongoing basis.

As they have not contacted Yout.com for the past 5 years, RettighedsAlliancen, for that simple reason neither proved nor substantiated the claim that their right is being forfeited by awaiting the ruling from the courts in the dispute.

Secondly, The Recording Industry Association of America, on behalf of Sony, among others, sent a letter to Yout.com on 20 April 2018, cf. **Appendix K**, in which reference is made to the fact that
legal steps could be involved if Yout.com did not "fall into line with the law". Thereafter, no further steps were taken in the case before RettighedsAlliancen, on behalf of Sony, among others, submitted a request for an injunction on 6 June 2019 – i.e. more than a year after the initial contact with Yout.com.

In this regard, it is observed that Sony Danmark cannot circumvent the injunction conditions by attributing the status of applicant to another group company, namely Sony America.

For that simple reason, RettighedsAlliancen has neither proved nor substantiated the claim that their right would be forfeited by awaiting the ruling from the courts in the dispute.

Thirdly, the injunction case was filed on 6 June 2019. Since the filing of the injunction case, a further 8 months have passed without RettighedsAlliancen having sought to push the process forward. This alone can be construed as evidence that RettighedsAlliancen would not be forfeiting their right by awaiting the ruling from the courts in the dispute. If RettighedsAlliancen had an inkling that a real right would be forfeited then they would have expressed a need for expediting the process, something you always see in injunction cases. This did not happen.

Again, for that simple reason that RettighedsAlliancen has neither proved nor substantiated the claim that there was an urgent need that would justify the injunction case, or that their right would be forfeited by awaiting the ruling from the courts in the dispute.

On the basis of the course of events described, it is submitted that RettighedsAlliancen has neither proved nor substantiated the claim that they would not forfeit any right by awaiting the ruling from the courts in the dispute, cf. the third injunction condition in the Section 413, sub-section 3 of the Danish Administration of Justice Act. For this simple reason, the claim relating to an injunction and requirement cannot be expedited.

In further support of this, it is also submitted:

that      *temporary injunctions* can only be used to the extent they are *necessary* to ward off *certain losses*, but RettighedsAlliancen has neither proved  nor substantiated the claim that they would suffer any loss of rights by awaiting the normal legal steps,

that      RettighedsAlliancen has neither proved  nor substantiated the existence of any detrimental impact through Yout.com, neither financially nor in any other way,

that      there is therefore no basis for a temporary injunction.

In relation to the **question of lack of proportionality, cf  Section 414, sub-section 2 of the Danish Administration of Justice Act**, it is submitted that access to imposing an injunction is restricted by a statutory principle of proportionality, which in concrete cases means that no injunction is to be imposed due to the significant disparity between the interests of RettighedsAlliancen and the harm and inconvenience caused to Fibia A/S and Yout.com by the imposition of the injunction.

In further support of the fact that the proportionality consideration is a hindrance to the imposition of an injunction, it is submitted:

that      it is part of the proportionality consideration that the scope of the copyright infringement should be weighed up, but we have no information about whether there is any copyright infringement of RettighedsAlliancen's rights via Yout.com, let alone the number of infringements it would involve if that was the case,

that      the objective of Yout.com is to be used legally,

that      importance must be attributed to the uncertainty around whether the activities on Yout.com are illegal for the assessment of proportionality,

that      RettighedsAlliancen has neither proved  nor substantiated that Yout.com has been used by all of the 5469 Danish visiting users in 2019 (Appendix H) to infringe the rights administered by RettighedsAlliancen,

that      importance must be attributed to the modest number of Danes visiting Yout.com in 2019 when assessing proportionality, cf. Appendix G.

2.1      Case costs

It is submitted that RettighedsAlliancen must pay court costs to Yout.com, which amount to DKK 120,000 excluding VAT for the assistance of a lawyer, and DKK 30,000 to Yout.com, which comprises the cost of the futile flight ticket and hotel incurred by Jonathan Nader when he travelled from the USA to Denmark because RettighedsAlliancen notified an incorrect date for the main hearing.

Furthermore, when determining the amount for covering the cost of the assistance of a lawyer, it is submitted that account must be taken of the importance, scope and duration of the case. Importance must also be attributed to the fact that RettighedsAlliancen notified an incorrect date for the main hearing, which RettighedsAlliancen has acknowledged, cf. Page 7 of the pleading of 12 November 2019:

"It is correct that RettighedsAlliancen, in a regrettable error, notified the incorrect date for the main hearing of the case (Appendix 7)."

In relation to the case costs, it is submitted that RettighedsAlliancen should be obliged to pay the costs incurred by Yout.com in relation to the court case with reference to the specific circumstances surrounding preparation of the case, by notifying an incorrect date, and the circumstances in general, for this, cf. Sections 318 and 341 of the Danish Administration of Justice Act.

…"

**The Court's reasoning and result**

According to the information available, the claimants hold the copyrights to the works which Fibia P/S' customers can gain access to via Yout.com, cf. Section 1 of the Danish Copyright Act.

Following Luis Peter Wahl's testimony and statement and information pertaining to the case in general, the Court concludes that Yout.com's internet service functions in such a way that Yout.com retrieves files requested by the users from media servers such as YouTube, after which the complete files are stored on the users' computer.

Thus, it is a case of Yout.com providing a service that gives the users access to, at a place and time of their choosing, make permanent copies of copyright-protected works that have been made available for temporary usage (i.e. Streaming) but not for download. Thus, Yout.com is to be regarded as a "stream ripping service" as it, at the users' request, transmits a complete file to the users' computer facilitated by Yout.com's servers. This facilitation is not comparable to the recording functions found in e.g. Xbox Game Bar, whereby the users, in real-time, can record what is being played locally on the users' own computer.

The Court finds that Yout.com, by means of the method described, in breach of the exclusive rights held by the holder, is making protected works available to a new public by means of a new technical method whereby they are communicated to the public. The Court also finds that Yout.com, via its mode of operation, plays an essential role in the communication of protected works. It cannot lead to a different assessment that the retrieved files are stored on the user's computer alone and not on Yout.com's servers since importance is given to the fact that Yout.com facilitates a tool which gives access to protected works that goes beyond what the rights holders have originally permitted. Furthermore, it is not crucial to the assessment how widespread the awareness of Yout.com's service is. The crucial aspect is the fact that the service is made available via the internet and thus to an unspecified and significant number of people.

The protected works are made available for streaming on the internet via e.g. YouTube, and during the proceedings of the case, Yout.com has claimed that YouTube has not implemented effective technological measures which would prevent users from retrieving content.

It should be noted that after the statement of 21 January 2020 from Dr. Georg Nolte, it must be assumed that those works that have been made available on YouTube cannot be copied and stored on the user's computer directly from YouTube as a result of YouTube's implementation of cipher technology, and that such copying and storing is otherwise not permitted according to YouTube's Terms of Service. Thus, the copying of works from YouTube requires the use of a tool to circumvent the technological measures that prevent direct downloading.

By granting access to works without the consent of the rights holders, including by facilitating an illegal user behaviour, Yout.com is acting in breach of the claimant's rights, cf. Section 2, Sub-section 1, cf. Sub-section 4, number 1 of the Danish Copyright Act, and from an objective point of view Fibia P/S is infringing the claimant's copyright by providing its customers access to Yout.com.

Based on the above considerations, it has been proven that the claimants have the rights for which protection is sought by means of an injunction, and that Fibia P/S' provision of access to Yout.com necessitates an injunction. Given that it is a matter of an internet-based service and thus an ongoing infringement, it has also been proven that the claimant's right to attain their entitlement will be lost if they have to await a court's ruling on the merits of the case, cf. Section 413 of the Danish Administration of Justice Act. Furthermore, since none of the conditions outlined in Section 414 of the Danish Administration of Justice Act are present, the applicants' claims are subsequently determined as outlined below.

In the matter between RettighedsAlliancen and Fibia P/S, the legal costs are annulled.

In the matter between RettighedsAlliancen and Yout.com, Yout.com must be regarded as having lost the case and, pursuant to Section 252, Sub-section 2, cf. Section 420, Sub-section 2, Yout.com must therefore pay the legal costs to RettighedsAlliancen, which amount to DKK 30,000. The amount covers RettighedsAlliancen's cost for the assistance of a lawyer. RettighedsAlliancen is registered for VAT. The value of the case has not been disclosed, and when determining the court costs the Court has taken account of the process and scope of the case. It is observed that the Court has not taken account of the fact that the owner of Yout.com, Jonathan Nader, as a result of an error on the part of RettighedsAlliancen, turned up at the Court on the wrong date as there has been presented no specific information on any costs associated with this.

### IT IS HELD THAT

Fibia P/S, as an internet provider, is prohibited from granting its customers access to the internet service which the website yout.com currently grants access to.

Fibia P/S is required to implement a technical solution, for example, a DNS block, which is able to prevent Fibia P/S' customers from accessing those internet services which the website mentioned in the claim above currently grants access to, and to other websites which grant access to the same internet service and which RettighedsAlliancen, in accordance with the Code of Conduct (Appendix 1) brings to the explicit attention of Fibia P/S as, in this regard, RettighedsAlliancen undertakes to assume legal and  financial responsibility for other such websites granting access to those internet services to which the decision relates.

In the matter between RettighedsAlliancen and Fibia P/S, the legal costs are annulled.

Yout.com shall pay RettighedsAlliancen the legal costs of DKK 30,000 within 14 days.

The legal costs shall accrue interest in accordance with Section 8a of Danish Late Payment of Commercial Debts (Interest) Act.



# CONFIRMATION OF TRANSLATION STATEMENT

- Name of Translation Agency: Hurtigoversætter
- Name of Client: Rettighedsalliancen
- Name of translated document: Kendelse af ØL 01.07.2020 (Rojadirecta).docx

Signature of translation agency:

Fatima Vangen, Manager Nordics

Date (dd/mm/yy): 13/08/2020

**Note**:
This document is nevertheless offered for information purposes only and the Client hereby accepts that he or she has no claim to indemnity for any loss or injury arising from the same translation in whatever capacity and undertakes not to bring any legal action against Hurtigoversaetter or the translator in any jurisdiction, anywhere in the world with regard to the same translation.