# Exhibit C

**Certified Copy**

# Hamburg Regional Court

File No.: 308 0 230/17



## Judgement

## IN THE NAME OF THE PEOPLE

In the matter of

**Sony Music Entertainment Germany GmbH**, represented by _____, _____ street ___, city. Managing Director, Balanstraße 73 / Haus 31, 81541 München

- Claimant -

<u>Attorney of record:</u>
Attorneys-at law **Waldorf, Frommer**, Beethovenstraße 12, 80338 Munich, Ref.No.: 00744/2017

against

1) ███████████████████████████

- Defendant -

2) ███████████████████████████████████████

- Defendant -

Attorney of record <u>for 1 and 2</u>:

Attorneys-at-law ███████████████████████

the Hamburg Regional Court - Civil Chamber 8 - by the Presiding Judge at the Regional Court Dr. Tolkmitt, the Judge at the Regional Court Dr. Held and the Judge Brauer, on the basis of the oral hearing dated 18 July 2017, rules as follows:

1. By way of a preliminary injunction The Defendants, with the threat of a fine of up to two hundred and fifty thousand euro or arrest for contempt of court for up to six months - arrest for contempt of court also in the event that the fine cannot be collected - due to any infringement,

**are prohibited from,**

a) circumventing effective technical measures for protecting the sound recording "Kreise (Acoustic Solo Version)" by the artist Johannes Oerding without the consent of the defendants, as occurred regarding the "youtube.com/watch?v=wuc4vyoX44" video via the convert2mp3.net service.

b) producing a software and/or owning such software for commercial purposes and/or providing a service using the convert2mp3.net website, which makes it possible to duplicate audio files of the YouTube service, the URL of which are protected from direct access using ciphering or a similar measure, such as with respect to the "youtube.com/watch?v=wuc4vyoX044" video.

2. The Defendants are required to bear the costs of the legal dispute as joint and several debtors.
3. The execution of the preliminary injunction will be made dependent upon paying a security deposit in the amount of € 200,000.

## Decision

The value in dispute is set at € 300,000.00.

### Corpus delicti

By way of a plaintiff in arbitration, the Plaintiff requests the prohibition of circumventing an effective technical measure for the protection of copyright-protected work.

The Claimant is a manufacturer of sound recordings. Defendant 2.) runs a conversion service for online videos. It was entered in the commercial register on 7 March 2017 and has been referred to in the legal notice of the website, which can be opened at the URL www.convert2mp3.net since 16 June 2017, in any case. Defendant 1.) is the Managing Director of Defendant 2.) and is referred to as "REGISTRANT CONTACT" and as "ADMINISTRATIVE CONTACT" for the domain „convert2mp3.net with the responsible domain registration centre. Defendant 1.) already ran the website www.convert2mp3.net prior to the founding of Defendant 2.), in any case, since 22 January 2013, and programmed the conversion software behind the website.

The service offered on the website www.convert2mp3.net allows its users to download audio tracks of video, which are accessible at the website www.youtube.com. In any case, the audio track of the video was initially copied to the servers provided by Defendant 2.) and stored there for four hours. Ceteris paribus, the precise technical functional procedure for the conversion software is in dispute between the parties. In addition to the website provided by Defendant 2.), additional web services from other providers exist with similar functions.

The videos made available via the YouTube platform are stored separately in video and audio tracks (files) on servers, which are accessible at the URL googlevideo.com. The audio tracks are not stored in MP3 format, the precise storage location of the video is not displayed in the user's browser when he accesses the services of the YouTube platform and watches a video. In fact, only a URL is displayed with the following structure: "[..]youtube.com/watch?v=" followed by a character sequence comprised of lower-case and upper-case letters and numbers. When accessing a video URL, the so-called "YouTube Video Player" starts, which is a software provided by YouTube. In this, the viewers are initially shown an approx. 30-second advertisement, in some cases, before the actual video starts. The YouTube platform allows the user publishing the video, thus also the Claimant, to participate in the advertising revenues from the previously shown advertisements.

If a user accesses a concrete video on the YouTube platform, the "YouTube Video Player" first loads a "Video Info" file, which contains, inter alia, the target URLs of the video and audio tracks, which link to the storage location on the googlevideo.com servers, where the videos are filed in various quality levels and file formats.

The URLs of the videos are stored in a concealed form the "Video Info" file, with "percentage coding". At the end of each URL, a "S-Variable" is attached (also referred to as "rolling cipher"). This component of the URL is read out by the "YouTube Video Player" and converted into a signature using a key, which is filed in the source code of the player. By exchanging the "S-Variable" with the signature, the URL generated in this way is identified by the server as being valid and the stored video and audio track is released for accessing.

The deciphered video URL can be determined using the "developer tools" of the "Mozilla Firefox" and "Google Chrome" browser software. The video and audio files can then be accessed by the user and downloaded in a browser, after removing a "range" variable in the URL.

The Claimant already warned Defendant 1.) personally on 22 January 2013 (but not in his function as Managing Director of Defendant 2.) and in relation to another sound recording from its repertoire, complained about an infringement of the duplication right and the right to provision of public access (in accordance with Sections 85, 19a UrhG [German Copyright Act]) in relation to the operation of the conversion service in dispute. Defendant 1.) then issued a cease-and-desist declaration with a penalty clause.

On 6 June 2017, the music video for the sound recording, "Kreise (Acoustic Solo Version)" by the artist, Johannes Oerding, then appeared on the YouTube platform at URL https://www.youtube.com/watch7v-wuo4vyoX044 and the user name, "JohannesOerdingVEVO". In the "Video Info" file belonging to the video in dispute, at least 22 different files are filed by means of coded URLs.

On 16 June 2017, the Claimant's attorney of record accessed the video in dispute, the audio track of which contains the audio recording exploited by the Claimant, via a browser. The "YouTube Video Player" showed an advertisement beforehand. The Claimant's attorney of record then accessed Defendant 2.)'s website and performed a conversion procedure. After various status messages were returned, the website issued the message "The video .Johannes Oerding - Kreise (Acoustic Solo Version)' has been successfully converted into an mp3 file. The Claimant's attorney of record subsequently downloaded an MP3 file from the server accessible at the URL "cdi1.convert2jnp3.net". This is the sound recording commercialised by the Claimant. In this respect, reference is made to presentations on Page 9 et seqq.

With a legal letter dated 16 June 2017 (Exhibit ASt. 6) the Claimant issued a warning to the Defendants and requested *the* submission of a cease-and-desist declaration with a penalty clause.

On 27 June 2017, the Defendants issued a cease-and-desist declaration with a penalty clause, with the content of ceasing and desisting from making the sound recording, "Kreise (Acoustic Solo Version) by the artist, Johannes Oerding, accessible by operating the convert2mp3.net service.

With the application received by the court on 29 June 2017 to issue a preliminary injunction, the Claimant is further pursuing its prohibition request in respect of the asserted circumventing of an effective technical measure.

The Claimant asserts that it is exclusively evaluating the sound recording of the artist, Johannes Oerding, also including the title in dispute here, "Kreise". With the use of the "S-Variable" or "rolling cipher", it involves an encryption technology and simultaneously an effective technical measure for the protection of a work. The Claimant's attorney of record found out in June 2016, within the scope of researching and preparing the preliminary injunction proceedings, that Defendant 2.) is now listed in the legal notice.

The service of Defendant 2.) downloads the "Video-Info" file from the youtube.com server within the scope of a conversion, analyses it and selects one of the 22 coded URLs contained in it, which is subsequently deciphered. Then, an automated copying process of the video is started, with which duplication pieces of the respective files stored under the URL googlevideo.com are created on the servers of Defendant 2.). After this, the extraction of the audio track as an MP3 file and its provision on Defendant 2.)'s servers for its users takes place. The audio track remains stored on the server of Defendant 2.) for four hours.

The Claimant is of the opinion that the service operated by the Defendant constitutes a circumvention of an effective technical measure within the meaning of Section 95a Subsection 1 UrhG. The URL, concealed with the "S-Variable" or "rolling cipher", constitutes a technical measure. This is effective, as an average user is not able to reach the Video Info file at all, not to mention deciphering it. In the case of the video in dispute, the user would need to filter out the 22 coded URLs from a total of 72,338 characters, then find the "S-Variable" of each URL, decipher this -using the respective valid key, as it is variable - and then use the newly generated URL for accessing the video.

Furthermore, the Defendants should be prohibited from preparatory activities within the meaning of Section 95a Subsection 3 UrhG. The circumvention of an effective technical measure is the main purpose of the website.

Finally, the Applicant applies for;

    as already stated.

The Defendants apply for;

rejecting the motion for issuing a preliminary injunction.

They object to the responsibility of the court seised and furthermore assert that the server executing the conversion is not situated in the Federal Republic of Germany. For this reason, Section 95a UrhG is already not applicable. The Claimant did not arrange for the upload of the video, but rather, VEVO Germany GmbH.
The website does not decipher the coded URLs from the "Video Info" file, but picks the URLs that are resolvable from the browser by the first name of the decoding by the YouTube Player. The coding using the "S-Variable" or "rolling cipher" also does not constitute encryption. It is possible for the average user to access the resolvable URLs from the browser using the "developer tools" of the conventional browser.

Ceteris paribus, the Defendants believe that the motion lacks grounds for an injunction. It asserts that the Claimant had knowledge of the legal infringement in question here since 2013, but in any case, since October 2018. This is based on the following undisputed circumstances: The Claimant is a subsidiary of the US company Sony Music Entertainment Inc., and is furthermore a member of the Bundesverband der Musikindustrie (BVMI) The Claimant is a member of the Board of Directors of the BVMI. Not the Claimant, but rather, the BVMI initiated the disputed proceedings. In the sworn affidavit presented as Exhibit ASt. 3, the declaring party, Graeme Alistair William Grant, states that he has been mandated by the BVMI and not by the Claimant. The BVMI acts under the umbrella of the International Federation of the Phonographic Industry (IFPI), the worldwide association of the phonographic industry. Mr. Grant belongs to the IFPI. In September 2016, the IFPI published a market study, in which the www.convert2mp3.net service was classified as being an infringement of copyright. The BVMI reported on this. In addition to the parent group of the Claimant, representatives of the Recording Industry Association of America (RIAA) also sit on the "Main Board" of the IFPI. The parent group of the Claimant itself is also a member of the RIAA and is represented in its Advisory Board. In a submission dated 7 October 2016, the RIAA described the Defendants' website as an "illegal website", which circumvents "technical safeguards", due to the "structural and thematic cross-links", it is ruled out that the IFPI and the BVMI had no knowledge of the submission by the RIAA. It is obvious that the Claimant or its parent company had knowledge of the market analysis. Therefore, the urgency ceases to apply.

Regarding the further argument, reference is made to the written submissions exchanged between the parties, to the exhibits submitted to the files and the transcript of the oral hearing dated 18 July 2017.

## Grounds for the decision

The application for issuing a preliminary injunction is admissible (see I.) and substantiated (see II.). The Claimant is entitled to the asserted right to claim an injunction (Sections 936, 916 Subsection 1, 940 ZPO [German Code of Civil Procedure]). Grounds for an injunction (Sections 936, 917 Subsection 1 ZPO) also exist.

   I.     The appeal is admissible. The court seised is called upon to decide on both of the motions filed by the Claimant in preliminary injunction proceedings. The local competence specifically exists.

1. The international responsibility of the German courts exists in the case at hand, as all of the parties have their registered office domestically. Therefore, a foreign reference is lacking for the scope of the EuGVVO [European Convention on Jurisdiction and the Enforcement of Judgements]. It does not depend on the location of the server, through which the Defendants' services are offers and contents are stored.
It is, in fact, decisive that the service is operated from a domestic location.

2. The local competence follows from Section 32 ZPO. The tortious legal jurisdiction is opened, if and insofar as an unlawful intervention in a foreign legal sphere is in question. In particular, sanctioned illicit acts are also covered by Section 823 Subsection 2 in conjunction with a protection act (cf. Heinrich, in: Musielak/Voit, ZPO, 14th Edition 2017, Section 32 Recital 2 with additional evidence). The prohibitions of Section 95a Subsection 1 and 3 UrhG are protection acts within the meaning of Section 823 Subsection 2 BGB (cf. BGH [Federal Court of Justice], GRUR 2015, 872 Rn.68 - Video game consoles II; OLG [Higher Regional Court] Hamburg, NJW-RR. 2014, 737, 738). The place where the tortious act was committed is the place of action and the place of performance (BGHZ 132,

105, 110 f.; Hamburg Regional Court, Interim Judgement dated 19 June 2015, File No. 308 O 181/13 - juris). Based on this, the place where both tortious acts were committed is within the district of the court seised.

- a) With the motion for an injunction 1. a), based on Section 95a Subsection 1 UrhG, the Claimant is requesting injunctive relief for the circumvention of an effective technical measure. Section 95a established conduct obligations, which directly have the purpose of protecting technical measures and indirectly protecting the copyright-protected works and services, which are safeguarded by these technical measures (cf. BGH GRUR 2015, 872 Recital 68 - Video game consoles II). The conduct attacked by the Claimant - the circumvention of the effective technical measure - is not performed at the location of the server executing the program code. The server is only a technical aid for executing the actions sanctioned by Section 95a Subsection 1 UrhG.; On the case at hand, the circumvention of a technical measure is not only based on the commercial-organisational provision of the service of Defendant 2., but also on the initiation of the circumvention procedure by the user of the web service, who controls the infringement of duty by the service provider, thus initiating the causal process. A circumvention of an effective technical measure can therefore also be committed from the district of the court seised.

- b) With regard to the asserted motion for an injunction 1. b), by way of motion accumulation, the same applies. The production and commercial possession of a software, as well as the provision of a service, which enables effective technical measures within the meaning of Section 95a Subsection 1 UrhG to be circumvented, also has an effect in the district of the court seised, as the service is at least also provided to users in the district of the court seised.

- II. The motion is substantiated. In relation to both of the Defendants, the Claimant is entitled to a claim for injunction (see 1. and 2.) and an adjudicatory basis (see 3.).

- 1. The claim to injunctive relief for the circumvention of an effective technical measure arises analogously from Sections 1004 Sentence 1, 823 Subsection 2 BGB in conjunction with Section 95a Subsection 1 UrhG. According to this regulation, effective technical measures for protecting work, which is safeguarded under the UrhG or another protection item under this law, may not be circumvented without the consent of the rights holder, insofar as the party concerned knows or must know, according to the circumstances, that the circumvention is taking place, in order to facilitate access *to* such work or protection item or to enable its use.

a) The regulation of Section 95a Subsection 1 UrhG applies to the legal dispute at hand. This follows according to Art. 8 Subsection 1 Rome II Ordinance, from the country of protection principle. Although Section 95a UrhG may not be an absolute law, the requirement for consent to the prohibited actions of Section 95a UrhG follow from the ownership of the domestic copyright. The service of the Defendant is also aimed at domestic use and enables users domiciled domestically to circumvent protective measures. The circumstance that the technical procedures, as asserted by the Defendants, are processed on servers abroad, changes nothing about the fact that they mainly control the services administratively from Germany, the registered office of Defendant 2.

a) The Claimant has a capacity to sue. By presenting an appropriate sworn affidavit (Exhibit ASt. 8), it has substantiated being the owner of exclusive rights of use to the "Kreise" sound recording by Johannes Oerding. Insofar as the Defendants deny the Claimant's authorisation with reference to the publication of the title in dispute having taken place on YouTube through VEVO, this objection does not apply. In this respect, the Claimant has substantiated the fact that it arranged for this publication itself. As the beneficiary reserves the right of consent to prohibited actions in accordance with Section 95a UrhG, it may also assert circumventions of technical measures, if it did not set up the circumvented protective measure itself, but rather, a third party, who is deriving contractual rights of use from the rights holder and it therefore indirectly benefits from the protective measure.

b) The Defendants have circumvented an effective technical measure within the meaning of Section 95a Subsection 2 UrhG and has consequently infringed a protection act (Section 823 Subsection 2 BGB).

aa) Technical measures within the meaning of Section 95a Subsection 2 Sentence 1 UrhG are technologies, devices or integral parts, which are intended to prevent or restrict unapproved actions in normal operation, which related to protected works or protection items in accordance with the German Copyright Act. These include all technical measures, which are intended to restrict the opportunities for use in normal operation (Dreier/Specht, in: Dreier/Schulze, UrhG, 5th Edition 2015, Section 95a Recital 14). For this, it is sufficient that the rights holder of the technical measure enlists the services of a third party - in this case, the YouTube platform; it does not need to implement it on the platform itself or even have developed it (cf. Munich Regional Court I ZUM-RD 2013, 76, 79).

bb) If the concealment of the storage location of the video file accessed via YouTube involves a percent code and encryption with the so-called "S-Variable" or "rolling cipher", it constitutes a technical measure within the meaning of Section 95 Subsection 2 UrhG.

The system used by the YouTube platform has the consequence that the viewer of the video stream never sees the storage location of a video file, in any case, in normal operation on the standard user interface of the browser, including the URL line. The character sequence behind the URL component "https://www.youtube.com.watch?v=" does not describe the exact storage location of the video file. In fact, it only gives the command to the browser to access the platform website of the YouTube provider and load the YouTube Player, which is integrated there. Only this software accesses the video and audio stream from the "Googlevideo Servers", after deciphering the "S-Variable", without the exact storage page being directly displayed for the user. In this way, the direct access to the duplication piece, which is filed and safeguarded with the YouTube platform operator, is prevented and it is ensured that the contents stored on servers are only accessible as a stream, but not as a download. This corresponds to the fact that YouTube only grants its customers the right to access the contents as a stream. However, a download is only offered to users for specific fee-paying services, but these are not available within the territory of the Federal Republic of Germany.

b) This measure is also effective. Technical measures are effective within the meaning of Section 95a Subsection 2 Sentence 2 UrhG, insofar as they can be used to maintain control over the use of a protected work or protection item under the German Copyright Act by means of access control, a protective mechanism, such *as* encryption, distortion or other conversion or a mechanism for checking duplication, which ensure the achievement of the protection target. The criterion for effectiveness is legally and not technically determinable, as technical effectiveness would make legal protection obsolete (cf. Official grounds BT-Drs. 15/36, P. 38). The protective measure does not need to offer absolute protection, but constitutes an obstacle, which cannot be readily overcome. This would not be the case, if the protection could be easily circumvented with the generally available program tools (cf. Hamburg Higher Regional Court NJW-RR 2014, 737, 738; Hamburg Higher Regional Court CR 2010, 125, 128; Dreier/Specht, in: Dreier/Schulze, l.c., Section 95a Recital 15). The average user is used as a benchmark for this (cf. Götting, in: Schricker/Loewenheim, UrhG, 5th Edition 2017, Section 95a Recital 22 with additional evidence). For the assessment of the question of effectiveness of a technical measure, it is assumed that Regulation 2001/29/EC on the harmonisation of specific aspects of the copyright law and the related protection rights in information society, particularly with respect to the recitals 4, 9 and 47 et seqq., aim for a high protection level in the area of intellectual property.

In any case, according to this benchmark, it cannot depend on whether the technical measure can merely be circumvented with the "on-board tool" [1] of the browser - in the case at hand, with the standard network analysis instruments implemented in Mozilla Firefox and Google Chrome browser versions, in any case. In this context, it is irrelevant whether the network analysis, which is found in the "Developer tools" menu items of both browser versions, are exclusively or predominantly aimed at professional web designers or (script) programmers. It is also not dependent upon whether the network analysis can be opened as standard using shortcuts (i.e. a key combination). It is also irrelevant whether such a program tool is generally available. In fact, it is relevant, whether it can be anticipated that an average user is able to use it for circumventing the technical measure without major obstacles.

However, according to the opinion of the Chamber, the program tools introduced by the Defendants are not aimed at the average user. This can be assessed by the Chamber as a Copyright Chamber and as a ruling body,

which deals with Internet issues on a regular basis, from its own perspective. The purpose of a browser for the average user is primarily to access websites that are of interest, use multimedia services, such as the video streaming at hand, participating in the communication process himself using social media services or acquiring goods and services. For these purposes, no special technical skills or specific knowledge is required regarding the process of data interchange using the Internet protocol. The average user will also neither view the source code of a website on a regular basis, nor use developer tools - particularly not the network analysis instruments. For conventional Internet use by the average users, the functionalities are not required, because the services offered by the providers can typically be used without using developer tools. In the case in dispute of the YouTube website, the information offered is aimed at streaming the videos with the browser, but not downloading them. For this reason, as a rule, no reason exists for an average user to resort to developer tools. Even so-called "Add-ons" (additional programs, such as ad blockers), with which the scope of use of a browser can be expanded, can be installed by the average user, without needing to switch to the settings area via the Options menu.

Even if the average user had knowledge about the use of network analysis instruments, the technical measure in dispute here would nevertheless be regarded as effective. The mere opening of the network analysis alone does not yet show the user the exact storage location of the video. In fact, several address paths exist - in the case in dispute, a minimum of 22 links - some of which link to videos and some to audio tracks. Therefore, the user must first identify a link, which refers to the audio track, copy this path, insert it into a new window/a new tab and then shorten the path with a so-called "Range Variable", which is at the end of the URL. Only then, is it possible to access the audio track from the Googlevideo Server. After this, the user still needs to download audio data, by right-clicking on a dropdown menu in the window and starting the download. With this, it must also be considered that the right-click must take place in the area of the player, which then opens, in order to display the download options at all. Ultimately, the file, which is then downloaded, is indisputably not an MP3 audio file, so that the user would need to convert the file into this format, in order to play it on external audio devices, which exclusively support the MP3 format.

Even in consideration of the screen capture presented by the Defendants (cf. Exhibit AG 15), in which the steps referred to above were shown, it cannot be assumed that this involves a routine, which can be readily mastered by an average user. The screen capture also shows that the user cannot select the first of the displayed 22 links, but must identify the relevant link with the stored audio track in the first place. If need be, the average user could find out, behind which link the correct audio file is, using the exclusion procedure. The numerous websites and offline applications that are indisputably available on the market for converting video streams into audio files, which then simultaneously carry out the conversion into the widely prevalent MP3 format, confirms that for the average user, it is typically not possible to download an audio track that is available as a stream and convert it into an MP3 file with the on-board instruments of the browser.

c)      The Defendants also circumvented the effective technical measure. The term, circumvention, itself is not defined in law. It is comprised of any action, which enables the access to or use of the work in such a manner that was not envisaged in view of the technical measure used by the rights holder. This term is very broad and covers all actions, which lead to exploitation within the meaning of copyright law (Wandtke/Ohst in Wandtke/Bullinger, UrhR, Section 95a Recital 53). A circumvention does not first arise when the required keys for deciphering encryption systems are determined using technical instrument (particularly by decompiling). In fact, circumvention already occurs, if the result of encryption, which is prescribed for a program - the encrypted URLs in this case - is read out in network traffic by analysing the data traffic ("sniffing") and access is obtained in this way, but not envisaged by the provider, to content, which is not already obvious to the average user and without the aid of additional analysis techniques.

The YouTube service provider restricts access to its contents to the direct playback of the received data flow on the user's end device, without permanent storage ("streaming"), by means of the encryption of the links, which it uses. Playback is consequently only possible by maintaining the network connection. With the readout of the KLAR-URL to determine the storage location of a video, which is generally prevented for the user (legally safeguarded using the General Terms and Conditions), and the subsequent downloading of the work, by creating a complete and readily executable duplication piece, unrestricted and constant availability is facilitated, even on playback devices (e.g. MP3 players), which are not connected to the Internet. The Defendants' service makes it possible for users to create permanent duplication pieces from streamed data. In respect of the question of whether the Defendants' software in dispute performs the deciphering itself, as asserted by the Claimant, in any case, or whether it only captures the Klar-URL, which is already deciphered, as the Defendants have pointed out as an option for "circumvention", is irrelevant for the legal assessment. No consent existed from the right holder or the service operator. The question whether the technical measures also cover contents that are not copyright-protected is also irrelevant. It is undoubted that the download was intended to be prevented, particularly in respect of copyright-protected contents.

d)     The Defendants are also capable of being sued. They are liable for the circumvention of the effective technical measure, both on a joint and several basis (Section 840 Subsection 1 BGB), as accomplice, alongside the respective user of the service.

aa) The direct perpetrator of the circumvention action is the user of the Defendants' service. He sets the technical process of circumvention in motion by initiating the conversion by entering the Video-URL and subsequently clicking on the "Convert" button. The prohibited circumvention in accordance with Section 95a Subsection 1 does not require any commercial action, so that, notwithstanding the limiting provisions of Sections 44a et seqq. UrhG, it may be performed by natural persons, who are not acting in a commercial capacity, with the intention of creating a "private" copy of the audio track of a work published on YouTube.

bb) The delinquent liability of Defendant 1.) arises from Sections 823 Subsection. 2, 830 Subsection 1 Sentence 2 BGB in conjunction with Section 95a Subsection 1 UrhG, and that of which Defendant 2.), from Sections 31, 523 Subsection 2. 830 Subsection 1 Sentence 2 BGB in conjunction with Section 85a Subsection 1 UrhG. Between the parties, it is undisputed that Defendant 1.}. is the sole shareholder and Managing Director of Defendant 2.).:, programs the software that is behind the website himself and executes the conversion and has transferred it to Defendant 2.). Defendant 2.) is shown in the legal notice of the website www.convert2mp3.net as the operator, Defendant 1.) is shown as the owner of the domain "convert2mp3.net" with the registry office. With the provision of the service, the Defendants are creating the technical conditions for the circumventing actions that they intend the users to perform. The Defendants have their own intent and also undoubtedly have the authority.

f) The required recurrence risk exists for injunctive relief. The infringement of the conduct obligation of Section 95a UrhG substantiates the de facto assumption of its recurrence. The Defendants have not submitted the required cease-and-desist declaration with a penalty clause. The declaration dated 26 July 2017 is limited to the public access to the sound recording in dispute, which was also objected to by the Claimant. The circumstance alone that the Defendants have blocked the corresponding YouTube link in their service, is not sufficient for dispelling the risk of recurrence.

2. The Claimant also has a claim for injunction in respect of prohibition of production, the commercial use of products and the provision of services, which aim at the preparation of the prohibited circumventing actions within the meaning of Section 95a Subsection 3 UrhG. Apart from the circumvention of effective technical measures, the software produced by, i.e. programmed by, the Defendants, their commercial ownership embodied on storage media and the service provided via the convert2mp3.net website only has a limited commercial purpose (Section 95a Subsection 3 No. 2 UrhG) and the software has mainly been designed to facilitate the circumvention of effective technical measures (Section 95a Subsection 3 No. 3 UrhG).

The assessment of whether devices, products or components have "mainly" been designed or produced for the purpose of circumventing technical measures (Section 95a Subsection 3 No. 3 UrhG), is essentially based on the actual territory (cf. BGH GRUR 2015, *672* Recital 51 - Video game consoles II). For this, it essentially depends on the objective intended purpose of the devices, which is shown in their actual use. The intended use by the manufacturer is not decisive (cf. BGH l.c. Recital 52). For the assessment of the question of whether, apart from the circumvention of effective technical measures, only a limited commercial purpose or benefit exists (Section 95a Subsection 3 No. 2 UrhG), the same applies.

According to this benchmark, in consideration of the facts submitted by the parties, it is established with sufficient likelihood in the preliminary injunction proceedings, that the software used has only a limited commercial purpose or benefit, apart from the circumvention of effective technical measures. The same applies to the service provided by the offer in dispute. The offer is advertised with "ONLINE + EASY + FAST + LEGAL" (Ast. 4). Above the input screen, it states: "With convert2mp3.net, you can convert and download videos from YouTube, Dailymotion and Clipfish online in MP3, MP4 and additional formats free of charge. The service is fast, legal, free of charge and without registration." According to this, the service is aimed at converting content available on streaming portals into MP3 files free of charge, in order to then store them permanently on music playing devices and make them available offline. This primarily relates to audio contents, particularly copyright-protected music.

3. Grounds for an injunction also exist. This exists in relation to both motions pursued by it vis-à-vis both Defendants. If an infringement of Section 95a UrhG is at issue, it crucially depends on the first-time knowledge of the circumventing action/the corresponding actions in accordance with Section 95a Subsection 3 UrhG. If such knowledge exists, the circumvention of a protective measure in relation to a single, arbitrarily picked-out proprietary right cannot substantiate renewed urgency. In any case, this applies, if it is assumed that the rights holder was already aware or should have been aware, that the services objected to have an impact on other rights to which he is entitled.

The Claimant nevertheless enforced the pursuit of its rights with the necessary emphasis, in the case at hand. The Defendants argued that within several associations, which also regard themselves as a collective representation of interests in the music industry vis-à-vis infringements of industrial property rights and their members are the Claimant or its US group parent company, various Internet services, i.e. also the service in dispute, were known by no later than since October 2016 and were explicitly referred to as services, which circumvent technical measures. The question of whether the Claimant must be concretely attributed with such knowledge on the basis of the principles concerning attribution of knowledge in accordance with Recital 166 Subsection 1 BGB, can, however be irrelevant in the case at hand. In any case, the Claimant's representative substantiated the fact that the concrete knowledge that Defendant 2.\), only founded in March 2017, appears as the operator of the service in the legal notice and Defendant 1.) appears as the Managing Director, was only obtained during the course of preparation of a warning in June 2017. The responsibility for the injunction duties does not transfer to the new legal entity by way of legal succession, with a change to the legal entity, but rather, a new entity is created and initially also requires - as occurred in the case at hand - a new warning, in order to avert the legal consequence of Section 93 ZPO (BGH GRUR 2006, 879 Recital 17 – Liquid gas tank). The responsibility of Defendant 1.) is also newly created at the time of the service being taking over by Defendant 2.), as a legal entity, as he is henceforth liable in his function as Managing Director and thus as an executive body. This constitutes a change to the behaviour of legal and commercial quality, which justifies a new urgency period being started personally by him.

III. The procedural ancillary decisions are based on Section 890 ZPO regarding the threat of regulatory instruments, on Sections 92 Subsection 2 No. 1, 100 Subsection 4 Sentence 1 ZPO, regarding the costs. Insofar as the restriction of motion I.2. to audio files suggests a withdrawal of the motion with the cost consequences of Section 289 Subsection 3 ZPO, this is not significant in terms of value. The stipulation of the security deposit is based on Sections 936, 921 Sentence 2 ZPO.

## Instructions on the right to appeal:

The decision, with which the value in dispute has been set, may be appealed against, if the value in dispute exceeds EUR 200 or the court has allowed the appeal.

The appeal must be filed within **six months** with the

> Hamburg Regional Court
> Sievekingplatz 1
> 20355 Hamburg

The time limit begins with the occurrence of legal force of the decision in the main matter or other completion of the proceedings. If the value in dispute has set later than one month prior to the expiry of the six-month period, the appeal may still be filed within one month after delivery or informal notification of the assessment decision, in the case of informal notification, the decision is deemed as having been notified three days after posting.

The appeal shall be filed in written form or declared for transcription by the office of the court referred to. It may also be declared at the office of any Local Court for transcription; however, the time limit is only preserved, if the transcript is received on time by the court referred to above. The involvement of lawyers is not prescribed.

| | | |
|---|---|---|
| Dr. Tolkmitt | Dr. Held | Brauer |
| Presiding Judge | Judge | Judge |
| at the Regional Court | at the Regional Court | |

For the correctness of the transcript
Hamburg, 18 December 2017

Nahlinger, JFAnge
Paralegal in Judicial Services Court Registrar

## CERTIFICATION OF TRANSLATOR'S COMPETENCE

I, Daniela Wolff, hereby certify that I am fully fluent in both English and German, and capable of translating from German to English. I further declare that I translated the foregoing document from German to English, and that the translation is true and correct to the best of my ability.

_____  
Signature

_11.1.2021_  
Date

Name: Daniela Wolff, B.Comm. Dip.Trans., MCIL  
Address: 139 Bengeo Street, Hertford, Herts SG14 3EY United Kingdom  
Telephone: +44-1992-419753  
Email: wolfftranslation@gmail.com