**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| **YOUT LLC,** | ) | |
| | ) | **CASE NO. 3:20-cv-01602-SRU** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE RECORDING INDUSTRY** | ) | |
| **ASSOCIATION OF AMERICA, INC. and** | ) | |
| **DOE RECORD COMPANIES 1-10,** | ) | |
| | ) | **JURY DEMANDED** |
| **Defendants.** | ) | |

<u>**RESPONSE IN OPPOSITION TO DEFENDANT RIAA'S MOTION TO DISMISS**</u>
<u>**PLAINTIFF YOUT LLC'S SECOND AMENDED COMPLAINT**</u>

NOW COMES THE PLAINTIFF YOUT LLC ("Yout" or "Plaintiff"), by and through its attorneys, Mudd Law, and files this Response in Opposition to Defendant the RIAA's Motion to Dismiss Plaintiff Yout LLC's Second Amended Complaint ("Motion") and in support hereof shows the Court the following:

As will be discussed more fully below, the RIAA's motion is based on erroneous assumptions and misguided interpretations of law and, therefore, must fail. First, the mere *use* of a technological measure in an ordinary course cannot be manufactured into a circumvention violation of 17 U.S.C. § 1201. Second, in this instance, no effective technological measure exists for Yout to circumvent. In fact, the purported "rolling-cipher" is not an effective technological measure, a fact highlighted by the RIAA's own abandonment of the argument that the "rolling-cipher" constitutes an effective technological measure. Indeed, the means of access to the works at issue is freely given mooting any need for circumvention. Third, contrary to the RIAA's assertions, circumvention, alone, does not establish a violation of the DMCA unless there is a nexus between the use of a particular circumvention technology and actual copyright infringement. Fourth, contrary to the RIAA's argument that it need not comply with the statute, the RIAA's notices impute allegations of copyright infringement, and therefore violate 17 USC § 512(f). Finally, although the RIAA argues that Plaintiff has failed to plead the knowledge and falsity necessary to its § 512(f), defamation *per se*, and business disparagement claims, the RIAA's assertions confirm the falsity of the statements made in the notices and the RIAA's knowledge of such falsity.

## I.   BACKGROUND AND PROCEDURAL HISTORY

This lawsuit stems from a series of notices sent by Defendant, The Recording Industry Association of America, Inc. (the "RIAA"), on behalf of its member companies to Google, LLC,

("Google") who owns and operates YouTube, a ubiquitous video sharing platform ("the Notices").[1] Pl.'s Second Am. Compl. ¶¶ 83-88, ECF No. 45.

### A.  RIAA's DMCA Notices Are Deceptive, False, and Overbroad.

Although the RIAA argues that the Notices were not sent pursuant to 17 U.S.C. § 512(c)(3), for reasons more specifically set forth below, Yout maintains that because of the allegations contained therein, the Notices are covered by 17 U.S.C. § 512(c)(3). Id. ¶¶ 84, 126, 141. Further, the RIAA sent the Notices with the purpose of having Google delist Yout's site, thereby becoming undiscoverable to Yout's users and for Yout's service to be rendered inoperable. Id. For example, the notice sent on October 25, 2019, reads:

> To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading.
>
> circumvention content: The services provided at the URLs indicated circumvent YouTube's technological protection measures.
>
> circumvention mechanism: To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's **rolling cipher**, a technical protection measure, **that protects our members' works on YouTube from unauthorized copying/downloading**.
>
> Id. ¶ 84 (emphasis added).

Each of the subsequent Notices reflect substantially the same language. Id. ¶¶ 84, 86, and 88.

The RIAA concedes that the Notices allege violations of § 1201. Def.'s Mem. in Supp. of Mot. to Dismiss 21, ECF No. 49-1 ("Def.'s Mem."). The RIAA likewise concedes that a violation of § 1201 requires that circumvention occur "*without the authority of the copyright owner*." Id. Thus, to prove a violation, the RIAA's members must show not only circumvention

---

[1] Contrary to the RIAA's assertion that Plaintiff's response to the Notices was to file the instant suit [Def.'s Mem. 6], Plaintiff likewise responded with counter-notices to Google refuting the allegations contained in the Notices.

but that said circumvention results in access to a copyrighted work. Id. However, the RIAA's notices do not identify specific works supposedly protected by the alleged technological protection measure. Pl.'s Second Am. Compl. ¶¶ 84, 86, and 88, ECF No. 45.

The plain language of the Notices impaired Yout users' ability to use the service with **all works**, not just those unidentified alleged works of RIAA's member companies. Many content creators use Yout's service to record their own original videos. Further, many content creators encourage their audience and fans to use Yout to record and play back their original content. Id. ¶¶ 80-81. Indeed, Yout's service is much broader than the RIAA's vague term "stream ripping" implies. In fact, sound downloads are just an incidental component to the larger picture, which is video content, from any video sharing website, not just YouTube. The RIAA's continued campaign against Yout would disable this capability which has nothing to do with the protection of the RIAA member copyrighted works.

In fact, Yout's service does not allow access to works protected by an effective technological protection measure. Yout already prevents users from recording and saving a protected work that has any digital mechanism(s) designed as anti-circumvention technology in place, thereby demonstrating Yout's compliance with any implemented anti-circumvention protections. Pl.'s Second Am. Compl. ¶ 94, ECF No. 45. The RIAA is aware of these safeguards that Yout implements in compliance with DMCA regulations – this is not wherein the issue before this Court lies. Id. ¶ 135.

### B. The RIAA Now Abandons the "Rolling Cipher" as the Purported Technology Protection Measure

Faced with the fact that YouTube's "Rolling Cipher" is not an Effective Technology Protection Measure such that Yout's service would circumvent it, the RIAA has all together

abandoned any argument regarding the rolling cipher, instead making vague reference to "YouTube's TPMs." See, generally, Def.'s Mem., ECF No. 49-1. Conveniently, the RIAA does not identify what those TPMs are exactly. Id. It is Yout's position, however, that there simply aren't any and that the RIAA's increasing lack of specificity across its submissions to this Court speak to that fact.

In fact, as demonstrated in great detail, YouTube and popular web browsers allow a user to access and make downloads of a work from YouTube without the circumvention of any measures. Rather, the user need only go through a few steps via, for instance, the Developer Tools menu in the Chrome browser. Pl.'s Second Am. Compl. ¶¶ 55-78. In fact, YouTube provides a download button when viewing the audio file during these steps. Id. ¶ 71. There is no interaction with or necessity to circumvent any purported "rolling cipher" or any other purported protection measure Id. ¶¶ 55-78.

Yout's software platform operates using a configured version of youtube-dl with ffmpeg to ensure that no content will be stored on its servers.  It specifically states this in the Yout terms of service and FAQ. Pl.'s Second Am. Compl. at 23 n.5, ECF No. 45. As specifically stated in the Second Amended Complaint, Yout's service automates a process already allowed by YouTube and popular web browsers so that users may access and make downloads of a work from YouTube without requiring the circumvention of any measures. Id. ¶ 102.

Consequently, Yout cannot "circumvent" the rolling cipher, "TPM," or any other protection measure, per that term's definition in 17 U.S.C. § 1201, because YouTube already offers the means of accessing these video streams to anyone who requests them. In other words, one cannot "circumvent" an access control by using publicly available means that are freely given by YouTube in the ordinary course of users streaming videos via a web browser. Id. ¶ 102.

4

Essentially, there is nothing to circumvent. As set forth below, it is the law of this Circuit that such use of a technological measure cannot be manufactured into a violation of 17 U.S.C. § 1201.

### C.  RIAA's Actions Have Caused Yout Significant Monetary and Reputational Damage

Yout provides its service through both subscription and non-subscription formats. The RIAA has caused Yout's subscription customers to cancel subscriptions after receiving a notification from Google when searching for "yout.com" that "[i]n response to multiple complaints we received under the US Digital Millennium Copyright Act, we have removed 2 results from this page. If you wish, you may read the DMCA complaints that caused the removals at LumenDatabase.org: [links to the Notices]." Pl.'s Second Am. Compl. ¶ 110, ECF No. 45. By issuing its notices and causing said delisting, the RIAA has caused third parties to believe that Yout engages and continues to engage in illegal and unlawful conduct, even though Yout's actions are neither illegal nor unlawful. Id. ¶¶ 108-109. Indeed, PayPal has shut down Yout's account—likely due to the RIAA's notices—causing Yout further significant monetary and reputational damage. Id. ¶ 111.

### D.  Procedural Posture

As a result of its damages and the RIAA's conduct, Yout had no choice but to file the instant lawsuit on October 25, 2020. See generally Pl.'s Compl., ECF No. 1. As addressed below, the RIAA moves to dismiss Yout's Second Amended Complaint based on several erroneous assumptions and misguided interpretations of law which do not reflect the law of the Second Circuit, nor the other district courts in this Circuit, and the Court should deny the RIAA's Motion on all counts.

## II.     STANDARD

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). When reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

## III.     ARGUMENT

Each of the RIAA's erroneous assumptions and misguided interpretations of law fail to defeat the claims in the Second Amended Complaint in accordance with Rule 12(b)(6). First, this Court has the authority to make a declaratory judgment based on the RIAA's 17 USC § 1201 allegations. Specifically, the dispute between the parties is ongoing and will not be resolved unless the court exercises jurisdiction over Yout's declaratory judgment claim which is sufficiently pled. Moreover, Yout sufficiently pled its claim under 17 U.S.C. § 512(f) because the Notices clearly accuse Yout of secondary copyright infringement. Finally, Yout's Second Amended Complaint sufficiently pled state law claims for business disparagement and defamation *per se*. Therefore, the RIAA's motion should be denied in its entirety.

### A.  <u>YOUT SUFFICIENTLY PLEADS A CLAIM FOR DECLARATORY JUDGMENT AS TO DEFENDANTS' 17 USC § 1201 ALLEGATIONS</u>

The Second Amended Complaint sufficiently demonstrates that Yout's service does not violate 17 USC § 1201(a)(1) or (2). The DMCA contains two provisions targeted at the circumvention of technological protections which are at issue in this case - 1) 17 USC § 1201(a)(1), which targets *the act of circumvention*; and 2) 17 USC §1201(a)(2), which targets those who *traffic in technology that can circumvent*. Specifically, § 1201(a)(1) states "no person shall *circumvent* a technological measure that effectively controls access to a work protected under this title." 17 USC § 1201(a)(1) (emphasis added). Likewise, 17 USC §1201(a)(2) provides:

> No person *shall manufacture, import, offer to the public, provide, or otherwise traffic* in any technology, product, service, device, component, or part thereof, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; . . . has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or . . . is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. § 1201 (a)(2) (emphasis added).

In both its Motion to Dismiss and the Notices, the RIAA incorrectly alleges that Yout has violated both provisions. Yet, 17 U.S.C. § 1201(a)(3) clarifies both 17 U.S.C. § 1201(a)(1) and (2) by defining "circumvent a technological measure" to mean "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. §1201(a)(3). The same section further defines "effectively controls access to a work" to mean that the measure, "in the ordinary course of its operation, requires the application of information, or a

process or a treatment, with the authority of the copyright owner, to gain access to the work." <u>Id.</u>
Therefore, in applying those definitions to the nature of Yout's service, it is clear that Yout does
not violate 17 USC § 1201(a)(1) or (2).

### 1. __Yout's Automation of the Steps a User Can Take Via a Common Browser and YouTube's Own Service Does Not Violate 17 USC §1201.__

As fully set forth in Yout's Second Amended Complaint, Yout does not decrypt, bypass,
or avoid anything to gain access to Web Content. Indeed, Yout's software platform operates
using a configured version of youtube-dl with ffmpeg which ensures that no content will be
stored on its servers. This is clearly stated in the Yout terms of service and FAQ. Pl.'s Second
Am. Compl. at 23 n.5, ECF No. 45. Yout simply automates the process, already allowed by
YouTube and popular web browsers, that permits a user to access and make downloads of a
work from YouTube without the circumvention of any measures. <u>Id.</u> ¶ 102. During that process,
the user need only go through a few steps via, for instance, the Developer Tools menu in the
Chrome browser. Pl.'s Second Am. Compl. ¶¶ 55-78. In fact, YouTube provides a download
button when viewing the audio file during these steps. <u>Id.</u> ¶ 71. There is no interaction with or
necessity to circumvent any purported "rolling cipher" or any other purported protection measure
<u>Id.</u> ¶¶ 55-78.

The RIAA erroneously argues that Plaintiff has failed to plead its allegations with
sufficient facts, specifically stating that it has not provided a description of how the Yout service
works. Def.'s Mem. 5, ECF No. 49-1. However, Plaintiff very meticulously goes through each
step that any user can take to accomplish the same result as utilizing Yout. Pl.'s Second Am.
Compl. ¶¶ 55-78. Plaintiff then states that Yout automates these steps that are already allowed by
YouTube and popular web browsers such as the Chrome web browser offered by Google who

also owns YouTube. Id. ¶ 102. This is an exhaustive set of facts describing how the service works. Id.

Yout does not avoid, decrypt, or bypass any technological measure. As explained by the Eastern District of Pennsylvania, the use of the words "avoid" and "bypass" in the statute, "as well as the remainder of the words describing circumvent, imply that a person circumvents a technological measure only when he affirmatively performs an action that disables or voids the measure that was installed to prevent them from accessing the copyrighted material." Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627, 644 (E.D. Pa. 2007); see also Egilman v. Keller & Heckman, LLP, 401 F. Supp. 2d 105, 113 (D.D.C. 2005) ("Circumvention, as defined in the DMCA, is limited to actions that 'descramble,' 'decrypt,' 'avoid, bypass, remove, deactivate or impair a technological measure.' 17 U.S.C. § 1201 (a)(3). What is missing from this statutory definition is any reference to 'use' of a technological measure without the authority of the copyright owner, and the court declines to manufacture such language now.").

Indeed, the RIAA relies on a set of unsupported claims that assume conditions for which they have provided no proof. First, the RIAA assumes that the steps taken by the Yout service, or by any user with the aid of a simple browser, are purportedly so complicated or convoluted such that an "ordinary consumer" could not perform them. The RIAA does not provide any standards for what is and is not convoluted besides its own elongated description of the steps presented in Plaintiff's Second Amended Complaint. Def's Mem. 7, ECF No. 49-1.[2] Despite this vague assertion, the RIAA then claims that this supposed complexity somehow creates the existence of

---

[2] Indeed, their garbled step 1 somehow mistakes the fact that in order to access YouTube via the Chrome browser one must access the YouTube website. Somehow the RIAA has created a false and meaningless distinction as step one of their convoluted list which only stands to obfuscate the fact that the process of accessing and downloading these files is already readily available to users of web browsers by YouTube itself.

a technology protection measure that is being avoided. Def.'s Mem. 13-16, ECF No. 49-1. The RIAA further erroneously states that "[t]he entire premise of Plaintiff's allegations about users devising ways to bypass YouTube's TPMs is that for TPMs to be effective, they must successfully prevent people from devising ways to circumvent them." Id. 12. However, it is not Yout's position that YouTube's TPMs are ineffective. It is Yout's position that there are no TPMs. The ordinary user can access the works and accomplish exactly what Yout accomplishes in the same way that Yout accomplishes them by viewing the source code, for instance with Chrome's Developer Tools, and accessing certain URLs. In doing so, no TPMs are encountered or circumvented. Pl.'s Second Am. Compl. ¶¶ 55-78. The RIAA fails to identify what it is referring to as a TPM or TPMs. This is because there are none.

The instant facts parallel those in the Eastern District of New York case, DISH Network L.L.C. v. World Cable Inc., wherein the defendant was accused by the plaintiff, DISH Network, of violations of 17 U.S.C. § 1201(a)(1) for using legally obtained cable boxes to descramble satellite signals, then using its own technology to rebroadcast the signals after decryption. DISH Network L.L.C. v. World Cable Inc., 893 F. Supp. 2d 452, 466 (E.D.N.Y. 2012). There, the court granted the defendant's motion to dismiss the plaintiff's DMCA claims holding:

> [E]ven assuming that the Defendants gained access to the DISH Network signals
> through "fraud and deceit", the Defendants use of the normal process to decrypt
> the satellite signal did not avoid or bypass the conditional access system because
> they used the intended mechanism—the EchoStar receiver and NagraStar smart
> card—in precisely the manner in which they were designed to function. The fact
> that the Defendants may have used the EchoStar receivers and NagraStar
> smartcards at an unauthorized location for an unauthorized purpose is irrelevant
> because "circumvention" is explicitly limited to the actions listed in §
> 1201(a)(3)(A). Therefore, although stealing an EchoStar receiver or a password
> may enable unauthorized re-broadcasting of the copyrighted material, it does not
> "circumvent" the "technological measure" controlling access the works.

> Id. at 466.

Here, the methodology employed by Yout is analogous. Yout need not decrypt, bypass, or avoid anything as the information is not hidden or distributed in a cryptic way, but provided just as it is by any video-sharing website to anyone that requests it. Pl.'s Second Am. Compl. ¶¶ 55-78. Anyone can access and make a copy of any free streaming content using only a browser, without other software, youtube-dl, the Yout service, or any similar tool. Id.

Certainly, using legally obtained cable boxes to descramble satellite signals, then using one's own technology to rebroadcast the signals after decryption (as in Echostar) would be considered "an apparently 'complicated' process" and outside the usual course of operation. However, the Echostar court did not equate that to circumvention as Defendants would have the Court conclude. Just because a process is complicated does not indicate that there is a technological protection measure that was "installed to prevent them from accessing the copyrighted material." Healthcare Advocates, Inc., 497 F. Supp. 2d at 644.

## 2. RIAA has not Identified any Copyrighted Works at Issue.

Because Yout does not circumvent any effective technological protection measure, it need not reach the portion of the statute which requires that circumvention be "without the authorization of the copyright owner." Egilman, 401 F. Supp. 2d at 113 (holding that the DMCA does not prohibit mere "'use' of a technological measure without the authority of the copyright owner, and the court declines to manufacture such language now."). However, that too is in question as Defendant has not identified any copyrighted works at issue.

To prove a violation of § 1201, Defendant's members must show not only circumvention but that the circumvention results in access to a copyrighted work. See Jagex Ltd. v. Impulse Software, 750 F. Supp. 2d 228, 237 (D. Mass. 2010) (noting that DMCA claim "is dependent on proof of a valid copyright"); see also Chamberlain Group, Inc. v. Skylink Tech., Inc., 381 F.3d

1178, 1193 (Fed. Cir. 2004)(stating in the context of a § 1201(a)(2) claim that a DMCA plaintiff

must prove, inter alia, "ownership of a valid copyright on a work"). However, nothing in the

RIAA's notices references ownership of any specific copyrighted work purportedly protected by

the rolling cipher. Pl.'s Second Am. Compl. ¶¶ 84, 86, and 88, ECF No. 45.

      Some courts have concluded that a violation of any provision of § 1201 likewise requires

a nexus between the purported circumvention and actual copyright infringement. See Lexmark

Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 549 (6th Cir. 1004) (holding that a

modification chip designed to make third party ink cartridges compatible with Lexmark printers

was not primarily designed to circumvent copyright and thus did not violate the DMCA);

Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F.3d at 1203-1204 (stating that

circumvention alone does not establish a violation of the DMCA unless it can also be

demonstrated that there is a nexus between the use of a particular circumvention technology and

actual copyright infringement); see also Storage Tech. Corp. v. Custom Hardware Eng'g &

Consulting, Inc., 421 F.3d 1307, 1318 (Fed. Cir. 2005) ("[C]ourts generally have found a

violation of the DMCA only when the alleged access was intertwined with a right protected by

the Copyright Act.") (citing Universal City Studios v. Corley, 273 F.3d 429, 435 (2d Cir.2001)).

      In fact, the Ninth and Federal Circuits have split regarding whether a § 1201(a) plaintiff

must demonstrate that the circumvention infringes or facilitates infringement of a copyrighted

work. See MDY Indus, LLC v. Blizzard Entm't, Inc., 629 F.3d 928, 944-52 (9th Cir. 2010);

Chamberlain Group, Inc. v. Skylink Techs, Inc., 381 F.3d at 1203. Here, we need not address the

split because, though no specific copyrighted work is named, it is clear from the Defendants'

motion and from the contents of the Notices that the RIAA and its member companies accuse

Yout of facilitating copyright infringement and, as a result, allege contributory copyright

infringement. Def.'s Mem. 9, ECF 49-1; Pl.'s Second Am. Compl. ¶¶ 84, 86, and 88, ECF No. 45.

Yout cannot "circumvent" the rolling cipher as that term is defined in 17 U.S.C. § 1201 because YouTube provides the means of accessing these video streams to anyone who requests them, and one cannot "circumvent" an access control through the use of means that are available – to all – without the authority of the copyright owner. Pl.'s Second Am. Compl. ¶ 100. Contrary to Defendants' argument, Yout is not claiming any implied authorization. Rather, it is Yout's position that a user is able to download works via an ordinary browser without circumventing anything and without getting permission. So, by definition, one cannot "circumvent" an access control when, to access the work, one is using means available to the public without any involvement of the copyright holder.

The RIAA invokes the YouTube Terms of Service ("TOS") to illustrate that users do not have authorization of the copyright holders to download physical copies of a work. Def.'s Mem. 9, ECF Doc. 49-1. However, a technological protection measure cannot be invoked by contract; rather, "the anticircumvention provision of the DMCA specifically requires the plaintiff to have applied some technological measure to prevent access from occurring in the first place." In re Maxim Integrated Prods., No. 12-244, 2013 U.S. Dist. LEXIS 196320, at *108 (W.D. Pa. Mar. 19, 2013). Again, it is Yout's position that no such technological measure exists.

At a minimum, based on the above, Yout has shown that a justiciable controversy exists and that despite the Defendants' allegations, Yout plausibly pleads that it does not violate the provisions of 17 U.S.C. § 1201. As the Court must draw all reasonable inferences in Yout's favor, Yout respectfully requests that the Court deny Defendant's motion as to its claim for declaratory judgment as to whether it violates the DMCA anti-circumvention provisions.

Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

### B.  YOUT SUFFICIENTLY PLEADS A CLAIM UNDER 17 U.S.C. § 512(f).

The DMCA requires that copyright owners believing there is infringement of their

copyrights follow the notice provisions provided in 17 U.S.C. 512(c)(1) --a DMCA "Take Down

Notice"--in order to hold internet service providers liable for copyright infringement. See Io

Group, Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132, 1141-54 (N.D. Cal. 2008) (explaining

the structure and safe harbors created by the DMCA). Section 512(f) of the DMCA provides that

a person who "**knowingly materially misrepresents** under [Section 512]-(1) that material or

**activity is infringing** . . . shall be liable for any damages . . . incurred by the alleged infringer . . .

who is injured by such misrepresentation, as a result of the service provider relying on such

misrepresentation in removing or **disabling access** to the material or **activity** claimed to be

infringing." 17 U.S.C. § 512(f) (emphasis added).

While Section 512(f) is not explicitly limited to misrepresentation of copyright

infringement, it requires that the misrepresentation be "under [Section 512]," which deals

exclusively with copyright infringement, and sets forth, in great detail, when and how an Internet

service provider can be liable for copyright infringement. See, generally, 17 U.S.C. § 512.

Further, common law supports causes of action for not only direct infringement under 17 U.S.C.

§ 501, but also for contributory copyright infringement and/or vicarious copyright infringement:

> One infringes contributorily by intentionally inducing or encouraging direct
> infringement… and infringes vicariously by profiting from direct infringement
> while declining to exercise a right to stop or limit it. Although the Copyright Act
> does not expressly render anyone liable for infringement committed by these
> doctrines of secondary liability emerged from common law principles and are
> well established in the law.
>
> MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) (quotations and citations

omitted).

Here, by the Notices and by statements made in prior briefing, the Defendants very clearly accuse Yout of secondary copyright infringement. ECF No. 28-1, pp. 6 ("Plaintiff reaps ill-gotten profits by facilitating the unlawful reproduction of the record companies' copyrighted sound recordings without obtaining licenses or paying the record companies for the exploitation of the works that fuel Plaintiff's business."); see, also, ECF No. 45 at ¶ 84 ("To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading."). The RIAA concedes that the Notices allege violations of § 1201. Def.'s Mem. 21, ECF No. 49-1. The RIAA likewise concedes that a violation of § 1201 requires "without the authority of the copyright owner." Id. at 14. Thus, to prove a violation, the RIAA's members must show not only circumvention but that the circumvention results in access to a copyrighted work. Id. However, the Notices do not identify specific works purportedly protected by the alleged technological protection measure. Pl.'s Second Am. Compl. ¶¶ 84, 86, 88, ECF No. 45. Furthermore, discovery will show that Yout's customers interpreted the Notices as alleged copyright infringement.

The RIAA's Notices have blocked Yout users' ability to use the service with all works, not just those unidentified alleged works of RIAA's member companies. Id. ¶ 83. Many content creators use Yout's service to record their own original videos from YouTube, or any other content sharing websites. Further, many content creators encourage their audience and fans to use Yout to record and play back their original content as a means to market their original works. Id. ¶¶ 80-81. The RIAA's continued campaign against Yout would disable that ability which has nothing to do with the protection of the RIAA member copyrighted works.

In fact, as clearly plead in the Second Amended Complaint, Yout's service will not allow access to works protected by an effective technological protection measure. Any digital mechanism in place designed as anti-circumvention technology stops Yout users from recording and saving that protected work, thereby demonstrating Yout's compliance with any anti-circumvention protections in place and the falsity of the RIAA's allegations in the Notices. Pl.'s Second Am. Compl. ¶¶ 92-94, ECF No. 45.

The RIAA would know this had it endeavored to determine whether Yout's software platform would, in fact, circumvent any digital mechanism by testing the platform with any of its member's works protected by such digital mechanisms, which it did not. Id. ¶ 135.

As clearly plead in the Second Amended Complaint, the RIAA affirmatively represents in the Notices that it ***had knowledge*** that Yout's System enabled copyright infringement: "To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading." Pl.'s Second Am. Compl. ¶ 84, ECF No. 45.

Further, as clearly plead in the Second Amended Complaint, the RIAA did not, in fact, have such knowledge, and its allegations stated in the Notices were false. Id. ¶ 135.

The RIAA makes the specious argument that Yout's allegation that RIAA knowingly made such representations is *conclusory*. Def.'s Mem. 22, ECF No. 49-1. However, Yout's contention is based on the factual allegation that there is no technological measure to "circumvent" per that term's definitionin the statute. Indeed, those facts are found throughout the Second Amended Complaint. See, e.g., Pl.'s Second Am. Compl. ¶¶ 93, 95, 101, 116, and 117, ECF No. 45.

The RIAA specifically argues that Yout fails to plausibly plead the elements of

knowledge and falsity sufficient to state a claim under § 512(f). At least one court has

determined that pleading a similar level of detail regarding the falsity and subjective belief of the

author of a notice plausibly pleads this element with respect to § 512(f) stating:

> Defendants argue that ISE has failed to adequately allege that Defendants acted
> with the requisite mental state to be liable under section 512(f). Again, pursuant to
> section 512(f), "[a]ny person who knowingly materially misrepresents ... that
> material or activity is infringing ... shall be liable for any damages, including costs
> and attorneys' fees, incurred by the alleged infringer..." 17 U.S.C. § 512(f)
> (emphasis added). Ultimately, in order to prevail on its section 512(f) claim, ISE
> will need to establish that Defendants had actual (i.e., subjective) knowledge that
> their representations to Amazon Video regarding the parties' respective rights in
> the Program were false.
>
> While ISE may struggle to produce evidence of subjective bad faith as the case
> progresses, the Complaint contains sufficient allegations of Defendants' actual
> knowledge of misrepresentation to survive the present Motion.
>
> ISE Entertainment Corp. v. Longarzo, No. CV 17-9132-MWF(JCx), 2018 U.S. Dist.

LEXIS 40755, at *18-19 (C.D. Cal. Feb. 2, 2018) (denying Rule 12(b)(6) motion to dismiss §

512(f) claim).

It must further be noted that the RIAA is no longer arguing that the rolling cipher, the

purported technological measure identified in the Notices, is a technological measure. In fact,

RIAA avoids the subject of the rolling cipher almost entirely in its briefing. See, generally,

Def.'s Mem., ECF No. 49-1. This change in argument heavily suggests that the RIAA knows that

the rolling cipher is not a technical protection measure being circumvented by Yout. Moreover,

because the Notices spearheaded this entire litigation, the RIAA's omission of any rolling cipher

argument at this juncture is an admission that the Notices – which were based upon the supposed

circumvention of this supposed rolling cipher – were false. As alleged in the Second Amended

Complaint, "[t]he term 'rolling cipher' is a misnomer and a term likely coined and relied upon by

Defendants to argue that services like Yout are somehow breaching a protection that doesn't

exist." Pl.'s Second Am. Compl. ¶97, ECF No. 45. Given these inconsistencies and omissions, Plaintiffs request the opportunity to proceed with litigation so that discovery may be taken as to the RIAA's knowledge.

At a minimum, based on the above, Yout has shown that despite the RIAA's allegations, Yout plausibly pleads a claim for false notice under § 512(f). As the Court must draw all reasonable inferences in Yout's favor, Yout respectfully requests that the Court deny Defendants' motion as to this claim. Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

### C. <u>YOUT SUFFICIENTLY PLEADS CLAIMS FOR DEFAMATION PER SE AND BUSINESS DISPARAGEMENT</u>

The RIAA's baseless Notices to Google give rise to state law claims for defamation *per se* and business disparagement. In a common law action for defamation, "the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Egbarin v. Hoffmann & Associates, No. 3:18-cv-917 (VAB), 2019 U.S. Dist. LEXIS 38985, at *12 (D. Conn. Mar. 12, 2019) (citing Simms v. Seaman, 308 Conn. 523, 547-48 (2013)). Business disparagement requires identical treatment regarding a "statement that disparages a person's goods or services." Qsp, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 360 (2001).

The only element that the RIAA alleges Yout has failed to plausibly plead is that the defamatory assertions made in the Notices were, in fact, false. Def.'s Mem. 23-25, ECF No. 49-1. As discussed in detail above, and as clearly plead in the Second Amended Complaint, Yout's service will not allow access to works protected by an effective technological protection

measure. Any digital mechanism in place designed as anti-circumvention technology stops Yout

users from recording and saving that protected work, thereby demonstrating Yout's compliance

with any anti-circumvention protections in place and the falsity of the RIAA's allegations in the

Notices. Pl.'s Second Am. Compl. ¶ 94, ECF No. 45.

The RIAA would know this had it endeavored to determine whether Yout's software

platform would, in fact, circumvent any digital mechanism by testing the platform with any of its

member's works protected by such digital mechanisms, which it did not. Id. ¶ 135. Further, as

discussed above and plausibly plead in the Second Amended Complaint, Yout does not

circumvent any technological protection measure as defined by the DMCA. Specifically, Yout

does not circumvent the "rolling-cipher" purported technical measure, which is now

conveniently avoided by Defendants in their briefing. Again, this shows knowledge of falsity and

Plaintiff should be given the opportunity to take discovery on this cause of action.

As a result, the element of falsity is plausibly plead. As the Court must draw all

reasonable inferences in Yout's favor, Yout respectfully requests that the Court deny

Defendant's motion to dismiss its defamation *per se* and business disparagement claims.

Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

### D.  **TRANSLATIONS OF FOREIGN LEGAL OPINIONS SHOULD NOT BE CONSIDERED**

The RIAA submits purported translations of opinions from Denmark and Germany to

support their argument that the Yout service is illegal. However, the translations are unsworn,

nor are they signed under penalty of perjury and the laws of the United States, and therefore do

not comply with 28 U.S.C. § 1746. ECF Doc. Nos. 49-3 and 49-4.

"An unsworn affirmation is valid if it is a writing of the individual making the affirmation which is subscribed by that person as true under penalty of perjury." <u>Procaccino-Hague v. Boll Filter Corp.</u>, No. 3:03 CV 1560 (GLG), 2004 U.S. Dist. LEXIS 431, at *4-5 (D. Conn. Jan. 13, 2004). Thus, Plaintiff respectfully requests that the Court strike ECF Doc. Nos. 49-3 and 49-4 as they are not competent evidence to be considered in a motion to dismiss. <u>Id.</u> (holding unsworn statements that failed to comply with 28 U.S.C. § 1746 incompetent evidence on a motion to dismiss).

### E.  <u>IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND</u>

Alternatively, if the Court finds in the RIAA's favor on any of the above issues, that the Second Amended Complaint fails to plausibly plead facts to support one or more elements of its claims necessitating dismissal pursuant to Rule 12(b)(6), Yout respectfully requests that the Court grant it the opportunity to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a).

### IV.  <u>CONCLUSION</u>

Based upon the foregoing as well as the arguments raised in the Plaintiff's Second Amended Complaint, the Defendant RIAA's Motion to Dismiss must be denied in its entirety, with prejudice, and award any such relief as the Court deems just and proper.

Dated: Chicago, Illinois
       December 1, 2021

Respectfully Submitted,
PLAINTIFF, YOUT LLC

/s/ Charles Lee Mudd, Jr.
By: One of Its Attorneys
Charles Lee Mudd Jr.
MUDD LAW
411 S. Sangamon Street
Suite 1B
Chicago, Illinois 60607
312.964.5051 Telephone

312.803.1667 Facsimile
clm@muddlaw.com

## <u>CERTIFICATE OF SERVICE</u>

 I, Charles Lee Mudd Jr., do hereby certify that service of this **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** shall be served upon (a) all parties and/or their counsel having filed appearances in this action through the automated electronic case filing by electronic filing; (b) all parties listed in the attached Service List by sending said document by electronic mail on this 1st day of December 2021; and, (c) where an electronic mail address is not available for a party, to the known physical address(es) identified below on December 1, 2021.

<u>/s/ Charles Lee Mudd Jr.</u>
Charles Lee Mudd Jr.

## <u>SERVICE LIST</u>

To: All parties and/or their counsel have filed appearances in this matter.