**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| YOUT LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:20-cv-01602-SRU |
| | ) |
| vs. | ) |
| | ) |
| THE RECORDING INDUSTRY | ) |
| ASSOCIATION OF AMERICA, INC. and | ) January 5, 2022 |
| DOE RECORD COMPANIES 1-10, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF**
**DEFENDANT RIAA'S MOTION TO DISMISS PLAINTIFF YOUT LLC'S**
**SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**
**(Continued)**

<u>Page</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.      PLAINTIFF'S SECTION 1201 ARGUMENTS IGNORE THE CONTROLLING
LEGAL STANDARDS AND DEFY COMMON SENSE..................................................1

      A.      Plaintiff's Argument That There Are *No* TPMs Cannot Be Squared With
Its Own Allegations, The Statute, Or Decisions From Other Courts.......................1

      B.      Plaintiff's Argument That Yout Does Not Circumvent Is Contrary To Its
Own Allegations And The Law ...............................................................................4

      C.      Plaintiff's Other Arguments For Sustaining Its Declaratory Judgment
Claim Are Meritless.................................................................................................7

II.     PLAINTIFF FAILS TO STATE A SECTION 512(**f**) CLAIM BECAUSE IT HAS
NOT IDENTIFIED A REPRESENTATION REGARDING COPYRIGHT
INFRINGEMENT—LET ALONE PLED ACTUAL KNOWLEDGE OF
FALSITY .........................................................................................................................8

III.    PLAINTIFF'S STATE-LAW CLAIMS SHOULD BE DISMISSED FOR
FAILURE TO ALLEGE FALSITY AND OTHER ESSENTIAL ELEMENTS ................9

IV.    THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR LEAVE TO
AMEND A THIRD TIME AND SHOULD DISMISS THE SAC WITH
PREJUDICE .................................................................................................................10

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
   307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...............................................................................5

*Cabell v. Zimmerman*,
   No. 09 Civ. 10134 (CM), 2010 WL 996007 (S.D.N.Y. Mar. 12, 2010)...................................9

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
   No. 16-cv-7014 (VSB), 2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018)..................................10

*DISH Network L.L.C. v. World Cable Inc.*,
   893 F. Supp. 2d 452 (E.D.N.Y. 2012) ...................................................................................6

*Giaguara S.p.A. v. Amiglio*,
   257 F. Supp. 2d 529 (E.D.N.Y. 2003) ...................................................................................4

*Hall v. United Techs., Corp.*,
   872 F. Supp. 1094 (D. Conn. 1995).......................................................................................10

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)......................................................................................................2

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
   497 F. Supp. 2d 627 (E.D. Pa. 2007) .................................................................................6, 7

*ISE Ent. Corp. v. Longarzo*,
   No. CV 17-9132-MWF, 2018 WL 1569803 (C.D. Cal. Feb. 2, 2018)....................................9

*Jones v. Curry*,
   No. C-07-1013-RMW(PR), 2008 WL 3550866 (N.D. Cal. Aug. 13, 2008) ............................4

*RealNetworks, Inc. v. DVD Copy Control Ass'n*,
   641 F. Supp. 2d 913 (N.D. Cal. 2009) ...............................................................................3, 5

*Sony Comput. Ent. Am., Inc. v. Divineo, Inc.*,
   457 F. Supp. 2d 957 (N.D. Cal. 2006) ...................................................................................8

*Staton v. Holzbach*,
   No. 3:20-cv-631 (SRU), 2021 WL 293566 (D. Conn. Jan. 27, 2021)...................................10

Magistrate Report and Recommendations, *UMG Recordings, Inc. v. Kurbanov*,
   No. 1:18-cv-957 (CMH/TCB), ECF No. 139 (E.D. Va. Dec. 16, 2021) .................................3

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001)................................................................................................5, 6

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000)........................................................................1, 2, 5

**FOREIGN CASES**

*Young Turks Recordings Ltd. v. British Telecommunications PLC*
    [2021] EWHC (Ch) 410, [24]–[28] (Eng.) (accessible at
    https://www.bailii.org/ew/cases/EWHC/Ch/2021/410.html) ......................................................3

**FEDERAL STATUTES**

17 U.S.C. § 512...........................................................................................................8, 9

17 U.S.C. § 1201............................................................................................... 1, passim

28 U.S.C. § 1746........................................................................................................4

**INTRODUCTION**

Plaintiff's opposition to RIAA's motion to dismiss repeats many of the same failed

arguments that Plaintiff made in the prior round of briefing and again resorts to wordplay to

manufacture a disputed issue of fact.  Those arguments fare no better the second time around.

The central issues presented by RIAA's motion to dismiss are whether the technological

protection measures ("TPMs") employed by YouTube are effective TPMs under § 1201, and

whether Yout circumvents them.  The facts alleged in the Second Amended Complaint ("SAC")

and the law make clear that the answer to both questions is "yes."  YouTube *does* employ TPMs

(whether labeled "rolling cipher," "Request URL," or "sequence of numbers"),[1] and the Yout

service avoids or bypasses them when it makes "modif[ications]" to them.  (SAC ¶¶ 68–69.)

Plaintiff's arguments to the contrary cannot be squared with Plaintiff's own allegations, the

controlling statutes, or the case law.  Plaintiff has tried and failed three times to plead a plausible

claim for relief.  The Court should dismiss the SAC with prejudice.

**ARGUMENT**

I.     **PLAINTIFF'S SECTION 1201 ARGUMENTS IGNORE THE CONTROLLING LEGAL STANDARDS AND DEFY COMMON SENSE**

A.     **Plaintiff's Argument That There Are *No* TPMs Cannot Be Squared With Its Own Allegations, The Statute, Or Decisions From Other Courts**

Plaintiff confirms it is *not* claiming "YouTube's TPMs are ineffective," but rather "that

there are no TPMs."  (Opp. at 10; *id.* at 4–5.)  But Plaintiff's own allegations contradict this

claim, as do the opinions of every court to have considered the matter.

---

[1] Plaintiff is wrong that RIAA has "abandon[ed]" the "'Rolling Cipher' as the purported [TPM]." (Opp. at 3–5.)  The terminology does not matter.  Regardless of whether it is called a "rolling cipher" (what the SAC calls a "misnomer," ¶ 97), or a signature value that must be "modified" to access the underlying file (*id.* ¶¶ 69–70, 98), it is technology.  And, because the technology functions to control access to the work, it is a TPM for purposes of § 1201(a).  *See* 17 U.S.C. § 1201(a)(3)(B); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000).

Under § 1201(a), a technology qualifies as a TPM if it "requires the application of information, or a *process* or a treatment" to gain access to a copyrighted sound or video recording "in the ordinary course of [the technological measure's] operation." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). Plaintiff argues it has pleaded the absence of such a TPM because any user allegedly can follow a multi-step process, which the SAC describes in detail, to acquire a signature-value, or "sequence of numbers" in the "Request URL," and then ultimately reach a "download button." (Opp. at 8–10; SAC ¶¶ 68–74.) But those allegations actually prove that there *is* a TPM (rolling cipher or by any other name).

In the ordinary course, a YouTube user *does not* obtain or interact with a signature value or Request URL, or reach a download button—*ever*. In the ordinary course, the user *only* sees the *stream* of a music video. (*See* SAC ¶ 64 (showing typical webpage for YouTube's video player).) Although Yout resists the label of "rolling cipher," and prefers "signature value," "Request URL," and "sequence of numbers," the particular terminology is immaterial; regardless of what it is called, the technology that operates in YouTube's background allows the user to view a stream, not obtain a download, in the ordinary course. As a matter of the ordinary operation of the YouTube site and basic common sense, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the only possible conclusion is that YouTube employs technology that puts a barrier between the ordinary user and access to the downloadable files—a TPM subject to § 1201(a). *See Reimerdes*, 111 F. Supp. 2d at 318 ("[A] technological measure 'effectively controls access' to a copyrighted work if its *function* is to control access.").

Contrary to Plaintiff's claim (Opp. at 10), YouTube's technology does not cease to be a TPM because Plaintiff can *describe* a different, "complicated," multi-step process (*id.* ¶ 75) for, *inter alia*, opening "Developer Tools," engaging with source code, isolating particular files,

modifying a numerical sequence in a "Request URL," and arriving at a download page (*id.*

¶¶ 62–74).  That is not how YouTube's technology operates in the normal course.

*RealNetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 932 (N.D. Cal. 2009)

(finding TPM where "average consumer" would not gain access to DVD content).[2]

If there were any doubt (which there is not), an English court recently held unequivocally

that YouTube employs TPMs to effectively control access to copyrighted sound recordings:

> [YouTube's] cipher and key routine amounts to a "technological measure" . . .
> because it is a technology, device or component designed in the normal course of
> its operation to protect a copyright work other than a computer program: here, the
> sound recordings made available on YouTube. . . . [T]he cipher and key routine is
> an "effective" technological measure . . . (called a "TPM" in this judgment).

*Young Turks Recordings Ltd. v. British Telecommunications PLC* [2021] EWHC (Ch) 410, [24]–

[28] (Eng.) (accessible at https://www.bailii.org/ew/cases/EWHC/Ch/2021/410.html).  As that

court explained, "[t]he whole purpose of the technology offered by [stream-ripping sites] is to

*circumvent the TPMs on streaming sites like YouTube.*"  *Id.* ¶ 39 (emphasis added).[3]  Other

courts, including in the United States, have also recognized that YouTube employs TPMs to

protected copyrighted works.[4]  Magistrate Report and Recommendations, *UMG Recordings, Inc.*

*v. Kurbanov*, No. 1:18-cv-957 (CMH/TCB), ECF No. 139 at 7–8, 15 (E.D. Va. Dec. 16, 2021)

(YouTube users may "not circumvent or interfere with YouTube's features that prevent

---

[2] Yout challenges RIAA's reliance on the "ordinary consumer" standard.  (Opp. at 9.)  But the standard is well-settled legal precedent.  (*See* Def. Mot. at 3, 11.)

[3] *See also id.* ¶ 57 ("YouTube deliberately prevents downloading of content; the conversion technology provided by the [stream-ripping sites] provides a means of getting around these safeguards.").

[4] In addition, courts have found that the Yout service is a circumvention tool that violates their countries' laws.  *See* Def. Mot. at 2 n.1.  Since RIAA filed its motion, Yout has been charged criminally in Brazil.  Chris Cooke, *Yout Blocked in Brazil Again Following Criminal Copyright Complaint*, Complete Music Update (Nov. 25, 2021), https://completemusicupdate.com/article/yout-blocked-in-brazil-again-following-criminal-copyright-complaint/.

unauthorized uses of content"; YouTube "users are faced with technological obstacles in accessing the media-file URLs in the media page source codes"; "YouTube has adopted additional 'rolling cipher' protections for the media-file URLs of videos containing copyrighted content"); *see also* Def. Mot. at 2 n.1; Ex. B (Danish Decision) at 21; Ex. C (German Decision) at 3.[5]  Plaintiff's claim that YouTube employs no TPMs simply is not plausible.

**B.      Plaintiff's Argument That Yout Does Not Circumvent Is Contrary To Its Own Allegations And The Law**

Plaintiff contends that its service does not violate § 1201(a) because it "automates the [multi-step] process" described in the SAC without any "interaction with or necessity to circumvent any purported 'rolling cipher' or [TPM]."  (Opp. at 8.)  Plaintiff says this process merely *uses* the TPMs, rather than circumventing them.  (*Id.* at 1.)  This argument is nothing more than wordplay, as application of the statutory text and case law to the facts makes clear.

"To circumvent" a TPM means, among other things, "to . . . *avoid* [or] *bypass* . . . a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).  The SAC establishes that Yout avoids or bypasses Youtube's TPMs. According to the SAC, YouTube's TPMs include, at a minimum, the alleged "Request URL" and a "sequence of numbers."  (SAC ¶ 69.)  In the ordinary course, these TPMs permit streaming, but are barriers to the ordinary consumer's ability to access the underlying files.  (*Id.* ¶ 64.)  Plaintiff explains in several different ways how Yout avoids or bypasses this protection: the Yout service "interprets the JavaScript program sent by YouTube" and "derives a signature

---

[5] Plaintiff's argument that this Court cannot consider the translated foreign decisions because they do not comply with 28 U.S.C. § 1746 (Opp. at 19–20) is wrong.  That statute applies to declarations.  RIAA's Exhibits B and C are translations of foreign court decisions, not declarations.  The Court may consider other courts' decisions on a motion to dismiss, *see Jones v. Curry*, No. C-07-1013-RMW(PR), 2008 WL 3550866, at *2 (N.D. Cal. Aug. 13, 2008), or, although unnecessary, could take judicial notice, *Giaguara S.p.A. v. Amiglio*, 257 F. Supp. 2d 529, 532 (E.D.N.Y. 2003).

value" (otherwise known at the rolling cipher) to access the protected file and so the user can

copy the audio stream as an MP3 file.  (*Id.* ¶¶ 43, 98.)  Plaintiff pleads that it interacts with these

TPMs by "*modif[ying]*" the "range=" numerical sequence.  (*Id.* ¶ 69.)  That the Yout service

provides its users with an "automated" way to avoid or bypass the TPMs to gain access to the

file—including modifying a sequence of numbers in YouTube's source code (*id.* ¶¶ 63–75,

102)—is textbook circumvention.

Plaintiff claims that it does not circumvent YouTube's TPMs because it is simply using

the YouTube source code and not "disab[ling]" or "void[ing]" the TPMs.  (Opp. at 9.)  But this

argument fails.  Courts have routinely found circumvention of § 1201 where the offending party

similarly claimed it "used" an authorized key, *i.e.*, the TPM, to gain unauthorized access to

copyrighted works.  For example, RealNetworks was liable for distributing a device that enabled

customers to gain *unauthorized* access to a movie file on the DVD, even though the device used

the same keys that *authorized* DVD players used to play DVDs.  *RealNetworks*, 641 F. Supp. 2d

at 935.  Likewise, the defendants in *Corley*/*Reimerdes* were liable for trafficking in the DeCSS

technology, which again used the authorized DVD keys to gain *un*authorized access to the movie

files on DVDs, thereby bypassing the CSS scramble on DVDs so that the user could make a copy

of the copyrighted content from the disk.  *Universal City Studios, Inc. v. Corley*, 273 F.3d 429,

460 (2d Cir. 2001), *aff'g Reimerdes*, 111 F. Supp. 2d at 346; *see also 321 Studios v. Metro*

*Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1098 (N.D. Cal. 2004) (unauthorized

actor's trafficking in technology that "uses the authorized key to unlock the encryption" is

"avoid[ing] and bypass[ing]" the TPMs).  In all these cases, when the keys were used in the

authorized manner, the DVD player only played back the movie.  The circumvention consisted

of the offending party's use of the same keys to obtain unauthorized access to a digital copy of

the copyrighted work that the user could then copy.  The Yout service does the same thing: when used in the authorized manner, YouTube permits the user only to stream the audio file; Yout's circumvention consists of encountering and modifying YouTube's source code to facilitate unauthorized access to a downloadable digital copy.  (*See* SAC ¶¶ 34–47.)

The cases Plaintiff cites, (Opp. at 9–11), do not change this result.  In *DISH Network L.L.C. v. World Cable Inc.*, defendant's agents used DISH's authorized cable boxes to descramble encrypted signals of DISH's satellite programming; defendant then rebroadcast the programming without authorization.  893 F. Supp. 2d 452, 456 (E.D.N.Y. 2012).  The court held the use of the boxes was not circumvention because the cable boxes continued to work according to their "normal process" and defendant did not interfere (or even interact) with the receipt and decryption of the copyrighted content. *Id.* at 465.  Much of the *DISH* court's reasoning is inconsistent with *Corley* and should not be adopted here.  But this Court does not have to reach that issue because the *DISH* court's emphasis on defendant's use of the "normal process" makes the case inapposite.  YouTube's streaming service is like the DISH authorized cable box:  in the "normal process," the consumer receives a *stream* from YouTube.  Here, however, the Yout service does not use the normal process that permits only streaming; rather, it uses an unauthorized "automated" process to "modif[y]" the signature value of a URL in YouTube's source code to permit its users to access and download a local copy.  (SAC ¶¶ 34–45, 69, 102.)

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey* is likewise inapposite because it involved a temporary system malfunction resulting in the TPM on a database service's servers failing to provide any restriction on accessing copyrighted content on those servers.  497 F. Supp. 2d 627 (E.D. Pa. 2007).  The court held that the defendant did not circumvent the TPM because the defendant did not need to do anything to get around the TPM. *Id.* at 644.  That case

does not change the result here, where it is undisputed that the Yout service gets around

YouTube's TPMs when they are working.  (*See* SAC ¶ 98.)

In short, Plaintiff cannot state a declaratory judgment claim under § 1201 through

creative wording.  The cases that interpret and apply § 1201 make clear that the Yout service

circumvents YouTube's TPMs.

### C.  Plaintiff's Other Arguments For Sustaining Its Declaratory Judgment Claim Are Meritless

First, Plaintiff's argument that RIAA has not identified ownership of any copyrighted

works makes no sense and is not a basis for denying the motion.  (Opp. at 11.)  RIAA is not the

plaintiff in this case and thus does not need to prove the elements of a claim.  RIAA sent notices

of circumvention (not DMCA infringement notices) through a process established by Google,

which does not require the identification of particular copyrighted works.  Regardless, the

notices (which Plaintiff attached as exhibits to its complaint) state that RIAA was submitting

them to Google in relation to "[m]ultiple recordings owned by the RIAA member companies,"

who are identified by name.  (*See* ECF No. 1, Complaint ("Compl.") Exs. A–C.)

Second, the opposition includes a digression about an alleged "circuit split" over whether

there must be "a nexus between the purported circumvention and actual copyright infringement."

(Opp. at 12.)  As Plaintiff admits, however, "we need not address the split" because there is a

nexus:  at issue are copyrighted sound recordings, which Yout users can copy and thereby

infringe.  (*Id.* at 12–13.)  RIAA agrees that there is no need to address this argument.

Third, in response to RIAA's reference to YouTube's terms of service ("TOS"), Plaintiff

contends that TPMs "cannot by invoked by contract."  (*Id.* at 13.)  It is not entirely clear what

Plaintiff is trying to argue here, but the TOS absolutely support RIAA's position.  As explained

in RIAA's motion, the TOS reinforce the conclusion that YouTube employs TPMs: the TOS

expressly prohibit "circumvent[ing]" "any part of" the YouTube service that "prevent[s] or restrict[s] the copying or other use of Content." Def. Mot. at 5. If YouTube did not employ TPMs, it would make no sense for YouTube to prohibit circumvention. The TOS also establish that neither Yout nor its users have authority from copyright owners to access the works.[6]

## II.   PLAINTIFF FAILS TO STATE A SECTION 512(f) CLAIM BECAUSE IT HAS NOT IDENTIFIED A REPRESENTATION REGARDING COPYRIGHT INFRINGEMENT—LET ALONE PLED ACTUAL KNOWLEDGE OF FALSITY

Plaintiff argues § 512(f) "is not explicitly limited to misrepresentations of copyright infringement." (Opp. at 14.) That claim is demonstrably false. The provision is expressly limited to misrepresentations "that material or activity is infringing." 17 U.S.C. § 512(f). The case law is abundantly clear that this provision applies only to misrepresentations regarding *copyright infringement*. (Def. Mot. at 16–17.) Plaintiff's claim fails because it is based on RIAA's *circumvention* notices to Google. (*Id.* ¶¶ 83–88; Compl. Exs. A–C.)

Plaintiff attempts to sidestep this fatal legal flaw by claiming that RIAA's notices to Google "*impute* allegations" of secondary copyright infringement.[7] (Opp. at 1, 15 (emphasis added).) Plaintiff cites no legal support for this theory and, indeed, there is none. Plaintiff identifies language in RIAA's notices stating that YouTube's rolling cipher "protects our members' works on YouTube from unauthorized copying/downloading." (*Id.* at 15 (quoting

---

[6] Plaintiff's vague claim that some "content creators encourage their audience and fans to use Yout to record and play back their original content" is irrelevant. (Opp. at 3.) Even if some copyright owners did not object to the use of the Yout service to bypass the rolling cipher to gain access to their works on YouTube, Plaintiff would still be liable under § 1201 when its service is used to access the content of RIAA's members, who have given no such authority. *See Sony Comput. Ent. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965 (N.D. Cal. 2006) (rejecting similar argument).

[7] Plaintiff also asserts that "discovery will show" that its "customers interpreted the Notices as alleged copyright infringement." (Opp. at 15.) But that unsupported speculation is irrelevant. The issue is whether RIAA—not third parties—had actual knowledge of misrepresentations.

FAC ¶ 84).)  This is not a veiled charge of secondary copyright infringement; it references

§ 1201(b), which prohibits trafficking in circumvention technology that "protect a right of a

copyright owner."  17 U.S.C. § 1201(b)(1)(A)–(C).  In other words, the language Plaintiff

highlights is also a notification of *circumvention*—just under a different sub-section of § 1201.

Plaintiff's § 512(f) claim separately fails because Plaintiff has not plausibly alleged that

RIAA had actual knowledge of misrepresentations in its notices to Google.[8]  (Def. Mot. at 17–

18.)  Plaintiff seems argue that RIAA must have known the circumvention notices were false

because "there is no technological measure to 'circumvent'" on YouTube (Opp. at 16).  That

contention is wrong for the reasons explained in Part I, *supra*.  Moreover, it does not establish

that *RIAA* had "actual knowledge that it [was] making a misrepresentation of fact."  *Cabell v.*

*Zimmerman*, No. 09 Civ. 10134 (CM), 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010)

(emphasis omitted).  Indeed, the reasonableness of RIAA's belief is reinforced by the fact that

numerous courts have found that YouTube employs TPMs and that Yout circumvents them.

III.   **PLAINTIFF'S STATE-LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE**
       **TO ALLEGE FALSITY AND OTHER ESSENTIAL ELEMENTS**

Plaintiff's state-law claims for defamation per se and business disparagement should be

dismissed because Plaintiff has failed to plausibly allege that RIAA's notices to Google were

false—a required element for both claims.  (Def. Mot. at 19–20; *supra* Part I.)  The most

plausible reading of facts alleged in the SAC is that YouTube employs TPMs that the Yout

service circumvents, *i.e.*, that RIAA's notices were *true*.

---

[8] Plaintiff cites *ISE Entertainment Corp. v. Longarzo*, No. CV 17-9132-MWF (JCx), 2018 WL
1569803 (C.D. Cal. Feb. 2, 2018).  That case is inapposite.  The allegations of knowing falsity
were based on actual notice to the Plaintiff that its claim was false.  *Id.* at *7.  No such
allegations exist here.

Plaintiff's business disparagement claim fails for two additional reasons: (1) the alleged false statements do not implicate the "quality or value" of the Yout service, and (2) Plaintiff has failed to allege the required element of special damages.  Although RIAA raised these issues in its motion (*see* Def. Mot. at 19 n.10), Plaintiff failed to respond to, and thereby conceded and/or waived, these issues.  *See Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-cv-7014 (VSB), 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument").  This claim is therefore deficiently pled and must be dismissed.

In the event that only Plaintiff's defamation claim remains, the Court should decline to exercise supplemental jurisdiction.  *See Staton v. Holzbach*, No. 3:20-cv-631 (SRU), 2021 WL 293566, at *6 (D. Conn. Jan. 27, 2021) (dismissing state-law defamation claims after dismissal of federal law claims).

## IV.   THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR LEAVE TO AMEND A THIRD TIME AND SHOULD DISMISS THE SAC WITH PREJUDICE

Because Plaintiff has amended its complaint twice, and the SAC's deficiencies cannot be cured with additional pleading, the SAC should be dismissed with prejudice.  (*See* Def. Mot. at 21.)  It would prejudice RIAA to allow Plaintiff to evade dismissal by amending their fatally flawed claims a third time.  *See Hall v. United Techs., Corp.*, 872 F. Supp. 1094, 1102–03 (D. Conn. 1995) (dismissing second amended complaint with prejudice where "plaintiffs repeatedly . . . failed to cure the substantive defects" and concluding that defendant would "be prejudiced" by further amendments after two motions to dismiss).

## CONCLUSION

RIAA respectfully requests that the Court dismiss Plaintiff's SAC with prejudice.

DATED:  January 5, 2022                          Respectfully submitted,


                                        _____*/s/ Rose Leda Ehler*_____
                                        GLENN D. POMERANTZ (*appearing pro hac vice*)
                                        ROSE LEDA EHLER (*appearing pro hac vice*)
                                        SHANNON AMINIRAD (*appearing pro hac vice*)
                                        MUNGER, TOLLES & OLSON LLP
                                        350 South Grand Avenue
                                        Fiftieth Floor
                                        Los Angeles, CA 90071-3426
                                        T:  (213) 683-9100
                                        F:  (213) 687-3702
                                        glenn.pomerantz@mto.com
                                        rose.ehler@mto.com
                                        shannon.aminirad@mto.com

                                        JAMES O. CRAVEN (ct18790)
                                        DAVID NORMAN-SCHIFF (ct30082)
                                        WIGGIN AND DANA LLP
                                        One Century Tower
                                        265 Church Street
                                        P.O. Box 1832
                                        New Haven, CT 06508-1832
                                        T:  (203) 498-4400
                                        F:  (203) 782-2889
                                        jcraven@wiggin.com
                                        dnorman-schiff@wiggin.com

                                        Attorneys for Defendant Recording Industry
                                        Association of America, Inc.