<pre>
 1                UNITED STATES DISTRICT COURT              15:50
                    DISTRICT OF CONNECTICUT
 2

 3   _____
                                   )
 4   YOUT LLC,                      )
                                    ) No. 3:20-cv-01602-SRU
 5               Plaintiff,         )
     v.                             ) August 25, 2022
 6                                  )
     RECORDING INDUSTRY             ) 3:58 p.m.
 7   ASSOCIATION OF AMERICA,        )
     INC. ET AL.,                   ) 915 Lafayette Boulevard
 8                                  ) Bridgeport, Connecticut
                 Defendants.        )
 9   _____)

10

11

12                   MOTION HEARING
                 via Zoom Videoconference

13

14   B E F O R E:

15        THE HONORABLE STEFAN R. UNDERHILL, U.S.D.J.

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFF:

18
          MUDD LAW
19            3114 West Irving Park Road, Suite 1
              Chicago, IL 60618
20            (773) 588-5410
              E-mail:  clm@muddlaw.com
21        BY:  CHARLES LEE MUDD, JR., ESQ.

22   (Continued)

23

24
                   Official Court Reporter:
25                 Melissa J. Cianciullo, RDR, CRR, CRC
                   Melissa_Cianciullo@ctd.uscourts.gov
</pre>

```
1    A P P E A R A N C E S    C O N T ' D:

2

3    FOR THE DEFENDANTS:

4         MUNGER, TOLLES & OLSON LLP
              350 South Grand Avenue, 50th Floor
              Los Angeles, CA 90071
5             (213) 683-9240
              E-mail:  rose.ehler@mto.com
6         BY:  ROSE LEDA EHLER, ESQ.

7         WIGGIN AND DANA
              One Century Tower
8             265 Church Street P.O. Box 1832
              New Haven, CT 06510
9             (203) 498-4361
              E-mail:  jcraven@wiggin.com
10        BY:  JAMES O. CRAVEN, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

15:01
15:01

```
 1              (Hearing begins, 3:01 p.m.)                15:01
 2         THE COURT:  Good afternoon.  Do we have         15:01
 3    everyone and can everyone hear me?                   15:01
 4         MR. MUDD:  From the plaintiff's side, we do.    15:01
 5    And hopefully you can hear me.                       15:01
 6         THE COURT:  I can.  Actually, you're muted.     15:01
 7    I think that's --                                    15:01
 8         MS. EHLER:  I changed microphone.  Can you      15:01
 9    hear me now?                                         15:01
10         THE COURT:  Yes.                                15:01
11         MS. EHLER:  Rose Ehler for the defendant.       15:01
12    You have myself on behalf of defendant RIAA, my      15:01
13    co-counsel Mr. Craven and Mr. Freidman who is also   15:01
14    here from the RIAA.                                  15:01
15         THE COURT:  Okay.  Very good.  Our court        15:01
16    reporter is on as well, so let's get started.        15:01
17         We're here in the matter of Yout -- I take      15:01
18    it, is it Yout?  Is that how you pronounce it?       15:01
19         MR. MUDD:  Yes.                                 15:02
20         THE COURT:  Yeah.  *Yout v. RIAA* and others.   15:02
21         I think I just got appearances, so why don't    15:02
22    we just move right to the motion to dismiss the      15:02
23    second amended complaint.                            15:02
24         MS. EHLER:  All right if I speak, your Honor?   15:02
25         THE COURT:  Yes, please.  Take it away.         15:02
```

1        MS. EHLER:  Thank you.  Okay.                    15:02

2        Your Honor, this is RIAA's motion to dismiss.    15:02

3   We were here a little over a year ago on a prior      15:02

4   motion to dismiss the first amended complaint.        15:02

5        We have now had the opportunity, after your      15:02

6   Honor's instruction, for Yout to amend -- was given   15:02

7   the opportunity to explain how its technology         15:02

8   operated in the second amended complaint, and notably 15:02

9   that complaint is still quite vague and glosses over  15:02

10  the details of the actual technology in how the Yout  15:02

11  service operates.  On that basis alone, your Honor    15:02

12  could grant the motion to dismiss.                    15:03

13       But even from what Yout does allege in the       15:03

14  process that it describes regarding how someone who   15:03

15  is not using the Yout service but rather using the    15:03

16  Chrome developer tools could access and copy,         15:03

17  download a digital file from the YouTube service,     15:03

18  there are enough facts alleged to dismiss the         15:03

19  complaint with prejudice.                             15:03

20       So two elements to the circumvention claim,      15:03

21  to the DNCA claim:  The first is whether there is an  15:03

22  effective technological protective measure.  The      15:03

23  second is whether Yout's service circumvents it.      15:03

24       On the first issue, we look at the YouTube       15:03

25  service, how the technology operates in the ordinary  15:03

1  course.  And it's clear from the allegations that          15:03

2  there is in fact technology that protects access to        15:03

3  the digital files in the ordinary operation of             15:03

4  YouTube, and part of that is the rolling cipher, but        15:03

5  it's actually a little bit more than that.                 15:04

6          And so this is in the second amended              15:04

7  complaint at paragraphs 65 through 74, the sort of          15:04

8  description of the process that Yout says someone can       15:04

9  go through using Chrome's developer tools to access         15:04

10  the underlying source code.  That source code             15:04

11  provides the instructions for how YouTube presents a       15:04

12  music video to an end consumer, and that consumer can      15:04

13  then stream the music video.                               15:04

14          And so we know that the first step is             15:04

15  somebody searches for or clicks on a music video that      15:04

16  they want to watch.  We're using Taylor Swift as the       15:04

17  example.                                                   15:04

18          Interacting with the YouTube web page or an       15:04

19  application, the user sees a YouTube authorized video      15:04

20  player, and that's what they're seeing.  That's what       15:04

21  they're presented with.  There is no download feature      15:04

22  on that authorized YouTube video player, rather just       15:04

23  a stream of the music video, stream of the video file      15:05

24  and the audio file.                                        15:05

25          And then in the ordinary course, of course,       15:05

```
1    the source code is operating in the background to          15:05
2    ensure that the file is delivered to that user that        15:05
3    they actually get to see the music video.                  15:05
4         But there is more to it that's going on, and          15:05
5    this is described again in the second amended              15:05
6    complaint.                                                 15:05
7         The rolling cipher does not just include a            15:05
8    pure media file URL link but rather has an actual          15:05
9    scramble.  So you can't just copy a media file URL         15:05
10   and paste it into your browser and gain access to the      15:05
11   underlying digital file.                                   15:05
12        The authorized YouTube player has its own             15:05
13   program.  It interacts with that source code,              15:05
14   descrambles that file and then has access to the           15:05
15   correct file that -- from which it can stream.             15:06
16   That's how it operates in the ordinary course.             15:06
17        And from the average user's perspective,              15:06
18   there is no opportunity anywhere in that process to        15:06
19   right click and download, no download button, nothing      15:06
20   that the ordinary user sees or could engage with that      15:06
21   would give that ordinary user access to the                15:06
22   underlying digital file.  Rather they just get the         15:06
23   stream offered through the YouTube authorized player.      15:06
24   That's the first element.                                  15:06
25             THE COURT:  Some of those details are not set    15:06
```

1    forth in the second amended complaint.  Does that                    15:06

2    help you or hurt you?                                                15:06

3          MS. EHLER:  Well, in my sort of first                          15:06

4    argument of whether or not we've actually been                       15:06

5    presented with the Yout software, their own source                   15:06

6    code and what exactly the Yout service is doing, it                  15:06

7    helps.                                                               15:06

8          I actually think on the second point, there                    15:06

9    is enough in paragraph 56 through 74.  It actually                   15:06

10   shows that -- the images that your Honor has before                  15:07

11   the Court show the source code and show that the way                 15:07

12   that Yout has described an individual interacting                    15:07

13   with the source code reflects that there are multiple                15:07

14   files there, that someone would have to go into those                15:07

15   files, select one of many and then make changes,                     15:07

16   alterations to those files, none of which is                         15:07

17   happening in the authorized YouTube player.  This is                 15:07

18   all happening through a separate process that Yout is                15:07

19   describing.  And that's all in the second amended                    15:07

20   complaint.                                                           15:07

21         And that's enough to know that there is                        15:07

22   indeed technology, there is indeed source code that                  15:07

23   would normally operate the YouTube player that                       15:07

24   involves underlying, sort of behind-the-scenes,                      15:07

25   technological processes that have to apply to get                    15:07

access to those files and that what Yout has

described is a method by which someone can go to the

source code, interact with it in a different way,

which just highlights that it's there, that it exists

in the first place, that that technology is otherwise

protecting the file and that Yout then describes it a

different way of interacting it that gets to the

second point of avoiding and bypassing the

technological protection measure.

So, actually, in both respects, the fact that

Yout hasn't described how its service operates helps

us. But there are enough facts alleged in the second

amended complaint to make it implausible, which is

the standard that we're dealing with here, that Yout

service is not circumventing.

So moving to the second -- sorry, your Honor.

THE COURT: Well, I just -- I wonder if you

can offer up a definition of technological measure

or --

MS. EHLER: Sure.

THE COURT: An effective technological

measure. I know there are some discussions that deal

with techniques that are set forth explicitly in the

statute, and those obviously are easy cases. This is

not one of those, as I understand it. Although you

1    mention scrambling.

2            MS. EHLER:  Yeah.

3            THE COURT:  Yeah.  So I -- anyway, I'll let

4    you take a shot at that one.

5            MS. EHLER:  Absolutely, your Honor.

6            So the definition in the statute for a

7    technological protection measure, so first

8    technology, that piece is easy.  We have that where

9    we're sort of talking about the source code and the

10   interaction to the source code and the video player.

11           And then all it says is that it requires the

12   application of information or a process or treatment

13   that's required to gain access to the files in the

14   ordinary course of the operation.

15           And this is actually really important because

16   when Congress passed the DNCA, it recognized that it

17   needed to sort of you know, future-proof it in a bit,

18   right?  We didn't know exactly what sorts of

19   technology would be in operation in 2022.  And so

20   the, you know, encryption, scramble, all of those

21   were meant to be inclusive but not exhaustive.

22           And the cases -- and it's *Reimerdes* that I

23   think says this most expressly.  The cases talk about

24   what the technology functions to accomplish.

25           And so the Court should look at the way in

1   which the technology is functioning in the ordinary

2   course, is it functioning as an obstacle to accessing

3   that underlying digital file and if so, and if that's

4   how it's operating in the ordinary course, then

5   that's sufficient for it to meet the standard for a

6   technological protection measure.  There certainly

7   could be closer cases, but I actually think this is

8   not one.

9          THE COURT:  Right.  And how would you define

10  "effective"?

11         MS. EHLER:  Right.  So effective is gauged

12  from the ordinary consumer standard, the average

13  consumer.  This -- the legal standard for that is

14  clear in the cases, and it's the ordinary consumer

15  who is interacting with the technology in its

16  ordinary course of operation.  And so here that's the

17  ordinary consumer who is using the YouTube video

18  player, the authorized player, the app, the website.

19         I realize that Mr. Mudd had described a

20  process by which you or I or somebody else can access

21  the source code and manipulate it, do something

22  different with the source code through his

23  instructions to bypass or avoid the normal

24  functioning of the technology.  But just because we

25  can be instructed as to how to bypass or avoid it

15:10
15:10
15:10
15:10
15:10
15:10
15:10
15:10
15:10
15:10
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11
15:11

1    does not mean that the technology in the ordinary                15:11

2    course isn't an obstacle.                                        15:11

3          Rather in the ordinary course functioning of              15:11

4    YouTube, it's streaming a music video to you or me.              15:12

5    There is no download button.  You can't right click             15:12

6    and "Save As."  There -- it's not even -- it's not              15:12

7    even a cache download necessarily to your computer              15:12

8    unless you have the premium service.                            15:12

9          So in the ordinary function, this rolling                 15:12

10   cipher and the other technology too that's in                   15:12

11   operation is an obstacle for the person who is using            15:12

12   it as intended to gain access to that file and                  15:12

13   download it.  We don't see that media URL.  That all            15:12

14   happens in the background.                                      15:12

15         THE COURT:  Right.  So there are at least two             15:12

16   definitions of effective that I think might apply in            15:12

17   this context.  One is successful, and I think it's --           15:12

18   I think it's clear that effective cannot mean                   15:12

19   successful.                                                     15:13

20         MS. EHLER:  The statute would be a nullity.               15:13

21         THE COURT:  Right.  So I'm wondering whether              15:13

22   "effective" means "in effect"; in other words, that            15:13

23   you have a technological method that is actually                15:13

24   turned on to -- and there are cases where, you know,            15:13

25   there was a break in the protection, and there was no           15:13

```
 1    technological measure and that was deemed not to be a            15:13
 2    violation.  Do you want to comment on that thought?             15:13
 3           MS. EHLER:  Yeah.  Your Honor is brilliant,              15:13
 4    much smarter than I am.  That was not how I had been            15:13
 5    thinking about it.  But I do think you can get there            15:13
 6    -- I think that's exactly right.  And I think you can           15:13
 7    get to that interpretation of effective as in effect           15:13
 8    through the cases and the focus on sort of function.           15:13
 9    Right?  If it's functioning, it's in effect.  This is          15:13
10    different than if it's disabled for an intentional            15:13
11    reason or even a blip in the security functioning.            15:14
12           And so I think you get there through                   15:14
13    distinguishing those cases where it's not turned on            15:14
14    and the cases that sort of already address this issue          15:14
15    of is it functioning as intended -- right? -- is this         15:14
16    the purpose of what the technology is being used for?         15:14
17    And, you know, there is no other reason for there to          15:14
18    exist a rolling cipher and the description of how --          15:14
19    you know, how you described one would have to go              15:14
20    around it.                                                    15:14
21           There is no other reason for that sort of              15:14
22    scramble to be there but for to present a technical          15:14
23    obstacle and present access to those files.                   15:14
24           And, of course, we also can get there through          15:14
25    the YouTube terms of service which supports that,            15:14
```

1   that there is this technology that's in place, that          15:14

2   the YouTube terms of service tell us there is               15:14

3   anti-circumvention technology because, of course, it       15:14

4   wouldn't make sense to include that were it not            15:14

5   there.                                                     15:14

6        There are, of course, you know, agreements           15:14

7   with the copyright owners that this rolling cipher is      15:15

8   in place for copyrighted music, some content.  But        15:15

9   not every piece of content on YouTube has it.             15:15

10       THE COURT:  All right.  I think I'm maybe            15:15

11  kind of foreshadowing questions I'm going to ask           15:15

12  Mr. Mudd, but let me throw one out.                        15:15

13       I understand that the alternative method             15:15

14  described by Yout to -- where the ordinary user can        15:15

15  end up with a downloaded file actually sounds like it      15:15

16  ends up with two distinct downloaded files, one a          15:15

17  silent video, one with audio but no video.  Is that       15:15

18  your understanding?                                        15:15

19       MS. EHLER:  That's my understanding of the           15:16

20  process that Mr. Mudd describes.                           15:16

21       And it goes to sort of the second point of           15:16

22  how we know there is circumvention here, whether           15:16

23  it's, you know, descramble, decipher, or if you just      15:16

24  want to rely on a voids and bypasses, because the          15:16

25  process that's described does not engage with the          15:16

1    authorized YouTube video player but rather is                15:16
2    accessing the underlying source code, identifying            15:16
3    certain portions of that source code and then                15:16
4    specific portions even within the URLs, modifying            15:16
5    them and then, as you noted, one of the descriptions         15:16
6    gets you to a video file.                                    15:16
7           And then I don't think Mr. Mudd goes through          15:16
8    sort of the same process again with the audio file           15:16
9    but you have to find a different piece of the source         15:16
10   code, change a different portion of it and then there        15:16
11   is an audio file.                                            15:16
12          Just to complicate it further, that process           15:16
13   does not even necessarily get you to the sort of MP3         15:17
14   or specific output that Yout describes.  Rather, Yout        15:17
15   has additional processes that sort of happen on the          15:17
16   back end where it's continuing to alter the files            15:17
17   that it actually delivers to the consumer.                   15:17
18          THE COURT:  Okay.                                     15:17
19          MS. EHLER:  If your Honor will indulge me in          15:17
20   one more point, I've hit two of my three on                  15:17
21   circumvention.                                               15:17
22          THE COURT:  Sure.                                     15:17
23          MS. EHLER:  The last point is at the motion           15:17
24   to dismiss stage, we are required to address this            15:17
25   from the standard of plausibility, and we do not             15:17

1    check our common sense at the door.                      15:17

2         You know, there are numerous other judicially       15:17

3    noticeable facts, whether it's the YouTube terms of      15:17

4    service or cases, where other courts have looked at      15:17

5    this technology and found that YouTube does employ a     15:17

6    rolling cipher, that the rolling cipher is effective     15:18

7    and that similar stream-ripping services, and in one     15:18

8    instance Yout itself, circumvents it.                    15:18

9         So we have the YouTube terms of service which       15:18

10   tells us there is circumvention technology at play.      15:18

11        We have the UK decision *Young Turks* which is      15:18

12   cited in our reply brief.                                15:18

13        We have the German decision which is attached       15:18

14   to our motion finding that the rolling cipher is an      15:18

15   effective TPM under German law.                          15:18

16        The Eastern District of Virginia looked at          15:18

17   these -- looked at the converse allegations but          15:18

18   allegations against a different stream-ripping           15:18

19   service, FLVTO, and determined based on those            15:18

20   allegations and an expert report that was in that        15:18

21   case that the complaint had met the -- at least the      15:18

22   court's standard -- under default, obviously, so         15:19

23   different standard -- for an effective TPM in the        15:19

24   rolling cipher and that the stream-ripping service       15:19

25   circumvented it.                                         15:19

| | | |
|---|---|---|
| 1 | And then most notably here, just saving the | 15:19 |
| 2 | best for last, we have a Danish decision where Yout | 15:19 |
| 3 | appeared.  There was expert testimony on both sides, | 15:19 |
| 4 | and the court in that instance made findings under | 15:19 |
| 5 | Danish law that what Yout was doing was illegal under | 15:19 |
| 6 | Danish law.  And in those findings, there is a | 15:19 |
| 7 | finding that Yout was circumventing the technological | 15:19 |
| 8 | measures on the YouTube stream. | 15:19 |
| 9 | So it's just all of those things added | 15:19 |
| 10 | together, when we're looking at the plausibility of | 15:19 |
| 11 | the complaint, that additionally go to the point of | 15:19 |
| 12 | why it can be dismissed with prejudice at this stage. | 15:19 |
| 13 | THE COURT:  All right.  Do you want to weigh | 15:19 |
| 14 | in on any of the other claims? | 15:20 |
| 15 | MS. EHLER:  Briefly, your Honor. | 15:20 |
| 16 | The 512(f) claim is really a different legal | 15:20 |
| 17 | analysis so it's worth touching on.  The standard | 15:20 |
| 18 | there and the law that applies there looks to whether | 15:20 |
| 19 | these notices are notifying -- under the DMCA, | 15:20 |
| 20 | notifying the ISP of infringement or circumvention. | 15:20 |
| 21 | It's clear from reading the notices that they | 15:20 |
| 22 | are in fact circumvention notices.  Yout's argument | 15:20 |
| 23 | about whether it's protecting a copyrighted work, | 15:20 |
| 24 | that's just a different section of the DMCA. | 15:20 |
| 25 | So that claim, I think, is incredibly easy. | 15:20 |

1    I think it fails as a matter of law on its face.    15:20

2         The disparagement and defamation claims do    15:20

3    rise and fall with whether or not there is    15:20

4    circumvention here, but I think the additional fact    15:20

5    of if there was known falsity when we have foreign    15:20

6    decisions that have found the Yout service to    15:20

7    circumvent, you can't -- it can't be a false    15:21

8    statement when you have a decision that says this    15:21

9    stream-ripper is illegal under Danish law.  And, in    15:21

10   fact, you have the CEO of Yout, Mr. Nader, out there    15:21

11   making statements about this.  So those claims too    15:21

12   are also implausible on their face.    15:21

13        THE COURT:  All right.  Thank you.    15:21

14        Mr. Mudd, do you want to weigh in?    15:21

15        MR. MUDD:  Yes.  Thank you, your Honor and,    15:21

16   Counsel, good afternoon.  I want to also first say    15:21

17   thank you for the flexibility in rescheduling.  I    15:21

18   very much appreciate it.    15:21

19        I think that there are two concepts that I'd    15:21

20   like to address:  obfuscation and inclarity.    15:21

21        And before I get into that, I want to mention    15:21

22   that, you know, your Honor asked Ms. Ehler if there    15:21

23   were -- you know, it seems to be some things that she    15:21

24   was talking about, allegations and so forth, that    15:21

25   weren't in the complaint.  And she, on one hand, was    15:21

1    talking about perhaps what Yout might be doing behind          15:22
2    its source code and so forth, but I think also -- I          15:22
3    am not only thinking.  I know that she brought in a          15:22
4    lot of allegations and a lot of discussion that were          15:22
5    alleged facts that she is trying to present that are          15:22
6    not in the complaint and really are not appropriate          15:22
7    on the motion to dismiss.  And I think that was one          15:22
8    of the issues.                                                15:22
9         And in my concept of obfuscation, she makes            15:22
10   it out to be that the Court dismissed the first            15:22
11   amended complaint because we didn't -- you know, we          15:22
12   failed to allege Yout's specific technology.  And          15:22
13   that's not accurate.  When I looked back, I thought I          15:22
14   remembered that we had a discussion at that time that          15:22
15   both sides had introduced facts and information that          15:22
16   was not in the pleadings and the Court asked whether          15:22
17   or not we thought it was better to do a limited          15:23
18   discovery and lead to a motion for summary judgment          15:23
19   or replead and file the motion to dismiss, and we          15:23
20   choose the latter.                                            15:23
21        So it was not that the Court found that Yout          15:23
22   had not sufficiently described its technology.  It          15:23
23   was that both sides had introduced things that were          15:23
24   not there.  So to the extent that she does that          15:23
25   again, I just point out that.                                 15:23

1    And as I get into my argument, I do    15:23

2    appreciate though that she does refer to *Reimerdes*    15:23

3    and Congress's intent and the congressional record    15:23

4    because I think that it's very informative in this    15:23

5    context.    15:23

6    But to her point that there is a scramble,    15:23

7    there is no scramble in the example that I use.    15:23

8    There is no scramble.  The only thing in my example    15:23

9    that was changed was the beginning and the end, the    15:23

10    length, two numbers of the video.    15:23

11    And alluding to the Danish court's decision    15:23

12    that she introduces which, again, was looking at    15:24

13    Danish law and not U.S. law, as she points out,    15:24

14    Yout's technology does not change those numbers, and    15:24

15    YouTube in fact has that process more for bandwidth    15:24

16    than anything else.    15:24

17    But let me go on further with some of the    15:24

18    obfuscation.  The defendants would also believe that    15:24

19    the complaint alleges some use of a magic formula    15:24

20    other than just a simple Chrome browser to obtain    15:24

21    access to the recorded files and a download button,    15:24

22    and this isn't the case.  To begin with, in the    15:24

23    complaint, we point out that it is Google Chrome that    15:24

24    you access YouTube with and search for a file and    15:24

25    that it is Google Chrome's developer tools that's    15:24

1    provided within the Chrome application, so we're not    15:24

2    doing anything special there.  And it's not so much    15:24

3    getting into the source code per se as a specific URL    15:24

4    for a file.    15:25

5        But let me stop here and explain something.    15:25

6    The -- perhaps I made a mistake.  The detailed    15:25

7    description that was included in the complaint sought    15:25

8    to show that YouTube itself provides the information    15:25

9    that we're talking about.  It provides the content,    15:25

10   the content is on the Internet accessible.  Because    15:25

11   as we point out in the complaint, nobody is talking    15:25

12   about any files on YouTube that are behind a firewall    15:25

13   or that require authentication or to which any of the    15:25

14   plaintiff defendant's -- I mean, sorry, that's kind    15:25

15   of contradictory, the defendant record companies,    15:25

16   although not named, the members of the Recording    15:25

17   Industry Association, they could choose to put DRM    15:25

18   into their files when they're uploaded to prevent    15:25

19   Yout or anybody else, I would imagine, from doing    15:25

20   anything else with it.    15:25

21       No, that's not what we're talking about.    15:25

22   We're talking about content that's on YouTube and    15:25

23   publicly accessible at the get-go, at the very    15:25

24   beginning.    15:26

25       THE COURT:  To stream.  Just to be clear,    15:26

```
1   it's to stream.  It's available to stream, not to        15:26
2   download.                                                 15:26
3          MR. MUDD:  Well, I would disagree with that.       15:26
4   The file itself is on YouTube's platform.  So by --       15:26
5   like even in my example, changing the numbers, the        15:26
6   file itself is on YouTube's platform.  YouTube            15:26
7   provides -- on its face, YouTube provides streaming,      15:26
8   but it also does provide in its own source code -- we     15:26
9   didn't create anything or do anything to add the          15:26
10  download button.  That's in YouTube's source code.        15:26
11         But I think your Honor --                          15:26
12         THE COURT:  But what you did was you modified       15:26
13  -- in your example of how a consumer could do this,       15:26
14  you modified the signature value.                         15:26
15         MR. MUDD:  I modified the length of a file,         15:26
16  yes, two numbers.                                         15:26
17         THE COURT:  Right.                                 15:26
18         MR. MUDD:  But if I could clarify, your            15:26
19  Honor, the reason that I'm getting to this now is         15:26
20  because I complicated the matter unnecessarily.          15:27
21         If I watch something on YouTube, I can open        15:27
22  QuickTime player and do a screen recording and           15:27
23  capture the entire video and audio of that YouTube       15:27
24  file.  So the YouTube file is publicly accessible on     15:27
25  the Internet with me doing nothing other than            15:27
```

1    capturing what's on my computer screen.                    15:27

2        THE COURT:  Is that permitted by the YouTube          15:27

3    terms of service?                                          15:27

4        MR. MUDD:  Well, it depends on how you                15:27

5    construe the YouTube terms of service.  But there is       15:27

6    law out there that specifically states that a              15:27

7    contract does not make a technical measure.  And so        15:27

8    referring to the terms of service --                       15:27

9        THE COURT:  Okay.  But a user who does what           15:27

10   you just suggested will be violating the copyright         15:27

11   laws of the United States because they're making an        15:27

12   unauthorized copy of what they see on YouTube.  So         15:27

13   although it may be technologically possible, one           15:27

14   hopes that the laws of the United States might be a        15:28

15   deterrent from doing that.                                 15:28

16       What you're doing through Yout is you're             15:28

17   providing an easy vehicle for people to do the same        15:28

18   thing.                                                     15:28

19       MR. MUDD:  But I would disagree, your Honor.         15:28

20   And, again -- and I'll get to that point.                  15:28

21       But the -- where I started here is to explain       15:28

22   that the process that I described in the complaint         15:28

23   was a process where showing that the information is        15:28

24   publicly accessible, that content is accessible on         15:28

25   YouTube's server.  Whether it's a download or a            15:28

1    stream, that copyrighted content is -- and that's --                    15:28

2    if I could just, your Honor --                                          15:28

3            THE COURT:  Let me just say, let me -- are                      15:28

4    you saying anything other than the content is                          15:28

5    hackable?                                                               15:28

6            MR. MUDD:  I'm not even saying that, no.  I'm                   15:28

7    saying -- you know, one of the things that I also                      15:28

8    would want to -- so let me dive into 1201 because I                    15:28

9    think there is -- going to this, going to the 1201                     15:29

10   statute, there are two sections, right?  There is                      15:29

11   1201(a).  The law out there is quite clear that, one,                  15:29

12   if you look at the law, you cannot violate 1201(a) if                  15:29

13   the content, the copyrighted work, is accessible.  If                  15:29

14   you do something after that access, if you do                          15:29

15   something different to the access and so forth, there                  15:29

16   is no violation of 1201(a).  You can look to 1201(b).                  15:29

17           But 1201(a) requires a technical measure that                  15:29

18   is preventing any access to the file, any access to                    15:29

19   the copyrighted work without something more.  And                      15:29

20   that something more, that information, process,                        15:29

21   treatment, that something more, the secret sauce, the                  15:29

22   secret key, comes from the copyright owner.                            15:29

23           So the technical measure and the extra, that                   15:29

24   information process or treatment, the key to the                       15:29

25   technical measure, have to go together to get access                   15:29

1  to the file.  If you already have access to the work,  15:30

2  the copyrighted work -- that's the public.  That's  15:30

3  the public.  If there is already access to that, you  15:30

4  cannot violate 1201(a).  15:30

5       And while I'm on that point, you know, it's  15:30

6  interesting that Ms. Ehler references the  15:30

7  congressional record because the congressional record  15:30

8  actually cited by *Reimerdes* makes very clear that  15:30

9  under 1201(a) and (b), the technical measure is from  15:30

10  the copyright owner.  That's not YouTube.  The RIAA  15:30

11  or the record companies would have to be providing  15:30

12  the technical measure, like in the DVD kind of cases.  15:30

13  They provide the technical measure, they provide the  15:30

14  lock and they provide the key to open the lock on  15:30

15  authenticated, authorized versions of that.  15:30

16       But going back to 1201 and the access --  15:30

17       THE COURT:  What you're saying is any  15:30

18  streaming service has no protection from this  15:30

19  statute.  15:31

20       MR. MUDD:  Any streaming service that  15:31

21  publicly makes a copyright or makes a copyrighted  15:31

22  work publicly available.  15:31

23       THE COURT:  Let's talk about "publicly  15:31

24  available."  15:31

25       MR. MUDD:  Right.  15:31

| | |
|---|---|
| 1 | THE COURT:  Do you mean that a user can watch | 15:31 |
| 2 | a video on YouTube and that's publicly available? | 15:31 |
| 3 | MR. MUDD:  Yes. | 15:31 |
| 4 | THE COURT:  Or do you mean that there is a | 15:31 |
| 5 | back doorway to -- | 15:31 |
| 6 | MR. MUDD:  No.  The former.  That if you go | 15:31 |
| 7 | to YouTube -- because there are different files on | 15:31 |
| 8 | YouTube.  There are some that are behind a firewall. | 15:31 |
| 9 | There are some that you have to -- that you could | 15:31 |
| 10 | restrict access to who sees.  But there are others, | 15:31 |
| 11 | the majority of others, a small percentage, that have | 15:31 |
| 12 | the sound recordings that the Recording Industry is | 15:31 |
| 13 | complaining about. | 15:31 |
| 14 | But most of the YouTube videos, I would | 15:31 |
| 15 | imagine, on YouTube are accessible to anybody in the | 15:31 |
| 16 | public to view at any time without any barrier to | 15:31 |
| 17 | obtaining access to that copyrighted content.  And if | 15:32 |
| 18 | that access is there, I believe the law is very clear | 15:32 |
| 19 | that there cannot be a 1201(a) violation. | 15:32 |
| 20 | Now, we can go and talk about 1201(b) which I | 15:32 |
| 21 | think arguably might be more applicable to this | 15:32 |
| 22 | particular situation. | 15:32 |
| 23 | But the congressional -- the legislative | 15:32 |
| 24 | history, the congressional reports from the Judiciary | 15:32 |
| 25 | Committee makes it very clear that the technical | 15:32 |

1    measure under 1201(a) and (b) must be or is from the          15:32
2    copyright owner.  It's not from the a third party             15:32
3    like YouTube in this instance.                                15:32
4         So the references to YouTube's technical                 15:32
5    measure, which, you know, I -- so on that point alone         15:32
6    I would contend that YouTube's software in the back           15:32
7    end is not a technical measure under 1201(a) from the         15:32
8    RIA's involvement because it's not their technical            15:33
9    measure.  And, again, it's throughout that                    15:33
10   congressional report that it's got to be the                  15:33
11   copyright owner.                                              15:33
12        THE COURT:  But if the copyright owner                   15:33
13   contracts with another entity that is handling the            15:33
14   technological protection, why wouldn't that satisfy           15:33
15   subpart (a)?                                                  15:33
16        MR. MUDD:  Because that doesn't -- that's not            15:33
17   what the law states.  That's not what the                     15:33
18   congressional testimony states.  And at least on a            15:33
19   12(b)(6) right now, we don't have that contract where         15:33
20   a record company has contracted with the party, the          15:33
21   YouTube, to specifically restrict the access to the           15:33
22   streaming methodology using that particular                   15:33
23   technology.                                                   15:33
24        Now, to your point, if a record company did              15:33
25   put DRM, digital rights management, in the file or            15:34

1    actually used features that -- other features that                15:34
2    YouTube has to restrict access to the file, I                      15:34
3    completely agree with you that that would be using a               15:34
4    mechanism or exhibiting a mechanism that could                     15:34
5    perhaps show.  But there is no contract here that                  15:34
6    we've seen in the record.                                          15:34
7            THE COURT:  Okay.  But your basic point is                 15:34
8    unless there is encryption or scrambling, there is no              15:34
9    protection under the statute?                                      15:34
10           MR. MUDD:  No, that's not my point.                        15:34
11           THE COURT:  That's what I hear you saying.                 15:34
12   In other words, these other methods, these other                  15:34
13   measures are not effective unless they are -- unless              15:34
14   they're --                                                         15:34
15           MR. MUDD:  Well, what I'm saying is when you               15:34
16   refer to statute, I think we need to be specific                   15:34
17   between 1201(a) and 1201(b).  1201(a) talks solely                 15:34
18   about access to the copyrighted work.                              15:34
19           And if you look at the case -- cases that --              15:35
20   and I believe even *Reimerdes* does.  But if you look             15:35
21   at the cases that cite the congressional or the                    15:35
22   legislative history and the congressional -- the                   15:35
23   committee report, it talks essentially about, you                  15:35
24   know, a room with a book inside and a locked door in              15:35
25   the front.                                                         15:35

1          If you -- for 1201(a), you cannot -- there

2   cannot be access to that file and have a -- you know,

3   there cannot be access to that file to have a

4   violation of 1201(a).  So the technical measure has

5   to prevent access to the copyrighted work, and then

6   there has to be something that circumvents that

7   technical measure to give access to the work under

8   1201(a).

9          1201(b), if we look at that --

10         THE COURT:  No.  No.  Don't go to the (b) yet

11   because I think you are misreading (a).  Okay.

12   You're saying "prohibits access."  That's not what

13   the statute says.  1201(a) says, "No person shall

14   circumvent a technological measure that effectively

15   controls access to a work protected under this

16   title."

17         MR. MUDD:  Your Honor, I believe --

18         THE COURT:  So controls access is the

19   standard, not prohibits access, and the --

20         MR. MUDD:  I think that under the

21   interpretation of that, for example, *TLS Group, S.A.*

22   *v. NuCloud Global, Inc.*, and this is out of Utah, but

23   it quotes, Congress explained that -- essentially, my

24   point is persons who have been authorized to gain

25   initial access to the work, so the users, if there is

15:35
15:35
15:35
15:35
15:35
15:35
15:35
15:35
15:35
15:35
15:35
15:35
15:35
15:36
15:36
15:36
15:36
15:36
15:36
15:36
15:36
15:36
15:36
15:36
15:36

1    initial access to the work.  Because we can't forget                15:36

2    here we're talking not only about what Yout has but                  15:36

3    it's what it's allowing users to do.  And so in that                 15:36

4    case it quotes or it explains, "Paragraph (a)(1) does                15:36

5    not apply to the subsequent actions of a person once                15:37

6    he or she has obtained authorized access to a copy of               15:37

7    a work protected under Title 17, even if such actions               15:37

8    involve circumvention of additional forms of                        15:37

9    technological protection measures."                                 15:37

10        So I believe that under -- interpreting                        15:37

11   1201(a), if there is access to a copyrighted work                   15:37

12   that you can obtain without doing anything, the user,               15:37

13   public, if you have access to a copyrighted work                    15:37

14   without a key, without that information or process or               15:37

15   treatment, the 1201(a) requires -- 1201(a)(3)(B)                    15:37

16   requires that information, process or treatment that                15:37

17   comes from the copyright owner to obtain access to                  15:37

18   the work, if you don't need that, you can't violate                 15:37

19   1201(a).                                                            15:37

20        And going to YouTube and looking at a video                    15:37

21   that's there without any restrictions whatsoever and               15:37

22   I can just click play through YouTube's -- the                      15:38

23   browser in YouTube, if that plays for me, I have                    15:38

24   access to the copyrighted work.  Now, I will grant                  15:38

25   you, getting to 1201(b), the circumstances shift a                  15:38

1    little bit.

2         But I believe that my position and I believe

3    the law and the congressional record supports that

4    under 1201(a), if there is access to a copyrighted

5    work, that's not applicable to what happens after the

6    access.

7         And so even in my example in the complaint,

8    even in my example in the complaint, I do have access

9    to the copyrighted work.  One does have access to the

10   copyrighted work going to YouTube's website, watching

11   a video and seeing the entire thing comes across to

12   me without any restrictions whatsoever.

13        THE COURT:  So here we have limited access in

14   the ordinary course by somebody who is watching

15   YouTube.

16        MR. MUDD:  You don't have limited access.

17        THE COURT:  Sure you do.  You're allowed to

18   stream it; but in the ordinary course of its

19   operations, you do not have access to download it.

20        MR. MUDD:  But that's going to 1201(b).

21   That's not going to 1201(a).

22        THE COURT:  No.  No.

23        MR. MUDD:  I disagree respectfully.

24        THE COURT:  I'm reading the definition

25   section of (e)(3).

| | | |
|---|---|---|
| 1 | MR. MUDD:  (e)(3)? | 15:39 |
| 2 | THE COURT:  "A technological measure" -- | 15:39 |
| 3 | (e)(3).  "A technological measure effectively | 15:39 |
| 4 | controls access to a work if the measure, in the | 15:39 |
| 5 | ordinary course of its operation, requires the | 15:39 |
| 6 | application of information, or a process or a | 15:39 |
| 7 | treatment, with the authority of the copyright owner | 15:39 |
| 8 | to gain access to the work." | 15:39 |
| 9 | MR. MUDD:  "To the work." | 15:39 |
| 10 | THE COURT:  Right. | 15:39 |
| 11 | MR. MUDD:  The copyrighted work.  Not a | 15:39 |
| 12 | portion of it, not a certain aspect of it.  And it's | 15:40 |
| 13 | actually 1201(a)(3)(B). | 15:40 |
| 14 | And if you look at -- but if you do look at | 15:40 |
| 15 | (b), the difference there is if you look at | 15:40 |
| 16 | (b)(2)(B), "A technological measure effectively | 15:40 |
| 17 | protects the right of the copyright owner . . . if | 15:40 |
| 18 | the measure, in the ordinary course of its operation, | 15:40 |
| 19 | prevents, restricts, or otherwise limits the exercise | 15:40 |
| 20 | of a right of a copyright owner under this title." | 15:40 |
| 21 | THE COURT:  Right. | 15:40 |
| 22 | MR. MUDD:  So my argument is, and I believe | 15:40 |
| 23 | the law supports it, that 1201(a) is access to the | 15:40 |
| 24 | work.  It doesn't have any qualifications that it | 15:40 |
| 25 | says access to a part of the work, a downloaded file, | 15:40 |

1    a streaming.  It's if you have access to the work,                    15:40
2    which I do without nothing more, I can watch the                      15:40
3    entire work on a YouTube video.  If I have access to                  15:40
4    the work, we're not talking about 1201(a).                            15:40
5          One, the technical measure that Ms. Ehler is                    15:41
6    referencing is from YouTube and not the copyright                     15:41
7    owner, and I believe the legislative history makes                    15:41
8    clear -- and that's the reasoning why, actually, and                  15:41
9    I think it's in -- I mean, arguably, it's not                         15:41
10   explicit but it's implicit and leads from the fact                    15:41
11   that the additional information, that information,                    15:41
12   treatment, or process comes from the copyright owner.                 15:41
13   And the --                                                            15:41
14         THE COURT:  Okay.  Okay.  Let's shift to (b)                    15:41
15   now, okay, because I don't see how you possibly can                   15:41
16   prevail there.  One of the rights of a copyright                      15:41
17   owner is the right to prevent copying.  So if "a                      15:41
18   technological measure effectively protects the right                  15:41
19   of a copyright owner under this title if the measure,                 15:41
20   in the ordinary course of its operation, prevents,                    15:41
21   restricts, or otherwise limits the exercise of a                      15:41
22   right of a copyright owner under the title."                          15:41
23         MR. MUDD:  So --                                                15:41
24         THE COURT:  So the copyright owner can limit                    15:42
25   the right to copy through the YouTube technological                   15:42

1    measures.    15:42

2        MR. MUDD:  Well, what are the technological    15:42

3    measures that it's doing that?  The copyright    15:42

4    owner --    15:42

5        THE COURT:  Well, that's my question to you.    15:42

6    That's why I wanted to get a second amended    15:42

7    complaint, because I didn't have in the complaint how    15:42

8    YouTube was protecting, what process was being used.    15:42

9    That's what we --    15:42

10        MR. MUDD:  That YouTube was protecting?    15:42

11        THE COURT:  Right.  In other words, you don't    15:42

12    describe the measure that YouTube uses in the second    15:42

13    amended complaint in any detail.    15:42

14        MR. MUDD:  Well, I don't believe there is a    15:42

15    technical measure that YouTube uses.  That's their    15:42

16    argument.  One, I would contend that it has to be the    15:42

17    copyright owner's technical measure, but I would    15:42

18    argue that YouTube doesn't have a technical measure    15:42

19    that's preventing anything here under the statute.    15:42

20    So I can't describe what doesn't exist.  Our position    15:43

21    is that there is no technical measure.    15:43

22        THE COURT:  Okay.  Good.  That's clarifying.    15:43

23        So if there is a process required in order to    15:43

24    create a copy, why is that not a technological    15:43

25    measure?    15:43

```
 1              MR. MUDD:  Well, you're looking at the        15:43
 2    process different from the -- the technical measure     15:43
 3    is not the process.  The technical measure is the       15:43
 4    means to restrict, and the process under the statute    15:43
 5    is the way to -- that with authority, like if there     15:43
 6    is a technical measure that effectively controls        15:43
 7    those rights, right, then with the process or limit     15:43
 8    and so forth.  So looking at --                         15:43
 9              THE COURT:  A process is necessary, is it      15:43
10    not, in order to download a YouTube video?  A process   15:43
11    is necessary.  If a process is necessary -- if a        15:43
12    process is necessary, isn't there by definition some    15:44
13    technological measure that is restricting or            15:44
14    protecting or limiting ordinary users' access?          15:44
15              MR. MUDD:  So I would argue that, one, I'll    15:44
16    make a point before I forget it, that we're talking a   15:44
17    lot about YouTube's source code and YouTube's           15:44
18    processes and so forth.  And this is a 12(b)(6)          15:44
19    motion, and YouTube has not briefed anything.  I        15:44
20    don't know YouTube's -- all I know is what YouTube      15:44
21    makes publicly available to everybody, and that was     15:44
22    what I was trying to demonstrate or show in the         15:44
23    complaint.                                              15:44
24              But as to what the purpose was and what was   15:44
25    behind whatever YouTube is doing bandwidth-wise,        15:44
```

1    because all that we're adjusting in my example,                    15:44

2    YouTube has contended, I believe, and Ms. Ehler                   15:44

3    referenced the Danish court, that that's for                      15:44

4    bandwidth purposes and not a measure to restrict the              15:44

5    ability to download.  The download feature is from                15:44

6    their software.  That's not added.  I mean, where                 15:45

7    that's shown in Yout's second amended complaint,                  15:45

8    that's not anything that I added.  That's in their                15:45

9    code.  That's their feature.  Nothing has been added              15:45

10   to that.                                                          15:45

11         But in terms of (b), 1201(b), I would again                 15:45

12   argue that the technical measure has to be that of                15:45

13   the copyright owner and not a third party.                        15:45

14         But let's assume that it doesn't or that                    15:45

15   YouTube is somehow an assignee or, sorry, an agent                15:45

16   and the ability to -- that their technical measure is             15:45

17   at issue, I would argue again that the technical                  15:45

18   measure here, the question of whether -- well, let me             15:45

19   back up.                                                          15:45

20         Let's look at 12(b)(1), because I think that                15:45

21   we're throwing around -- and not you, your Honor.                 15:45

22   But I think that the parties are throwing a lot                   15:46

23   around with the statute and the different segments of             15:46

24   the statute.  So even if there is a technical measure             15:46

25   that effectively protects a right -- and I would                  15:46

1    agree with you, I would concede that even -- whether    15:46

2    or not it was for bandwidth purposes or the purpose    15:46

3    to restrict an access to the download, as Ms. Ehler    15:46

4    alleges without any evidentiary support -- and I    15:46

5    think that YouTube is really the party to talk about    15:46

6    that.    15:46

7        But let's assume that that is the technical    15:46

8    measure.  The violation of 1201(b) has to be by a    15:46

9    technology product, device or component that is    15:46

10   primarily designed or purpose of the circumventing    15:46

11   protection afforded by that technical measure.  So    15:46

12   even if there is a technical measure and it doesn't    15:46

13   need to be from the copyright owner, we get into a    15:46

14   factual determination.    15:46

15       And all of the cases cited by Ms. Ehler    15:46

16   dealing with circumvention, all but I think one, the    15:46

17   one that she mentioned from the Eastern District of    15:47

18   Virginia which was on a default judgment and relied    15:47

19   on undisputed affidavits, all of the cases that she    15:47

20   cited relating to circumvention are after evidentiary    15:47

21   hearings or on a motion for summary judgment or on a    15:47

22   TRO, not at a 12(b)(6) motion to dismiss stage,    15:47

23   because the determination of whether there is a    15:47

24   primary aspect, primary component, or there is    15:47

25   limited commercial significant purpose, or it's    15:47

1  marketed by a particular party to circumvent, is a                    15:47

2  factual determination.  And it should --                             15:47

3        THE COURT:  Well, let me press you on that.                     15:47

4  What function, if any, other than permitting the                     15:47

5  stream-ripping, does Yout provide?                                   15:47

6        MR. MUDD:  Well, stream-ripping in itself is                    15:47

7  not necessarily illegal, right?                                      15:47

8        THE COURT:  That's not my question.  That's                     15:47

9  not my question.  My question is:  What other                        15:47

10 function does the Yout software provide other than                   15:48

11 allowing someone to strip a video from YouTube and                   15:48

12 save it onto their computer?                                         15:48

13       MR. MUDD:  It allows an individual to take a                    15:48

14 location on the Internet and provide a copy of that                  15:48

15 file, that video, onto their computer.  I would                      15:48

16 disagree --                                                          15:48

17       THE COURT:  That's what I said.                                 15:48

18       MR. MUDD:  No.  I would disagree with the                      15:48

19 characterization of that.  If I'm a copyright owner                  15:48

20 and I post something on a site and I give permission                 15:48

21 -- and, in fact, the Brazilian government, on                        15:48

22 Brazil's own government website, they direct people                  15:48

23 to a video on how to use Yout for downloading certain               15:48

24 content.  So saving content from the Internet is not                 15:48

25 itself illegal.  Right?                                              15:48

```
 1          THE COURT:  That's not my point.  That's not
 2    my question.
 3          MR. MUDD:  Then I apologize if I
 4    misunderstood.
 5          THE COURT:  All right.  You just quoted from
 6    1201(b)(1)(A), "primarily designed or produced for
 7    the purpose of circumventing protection afforded by a
 8    technological measure," et cetera.
 9          My question to you is:  Yout allows people to
10    download and save copies of YouTube videos onto their
11    computer.
12          MR. MUDD:  Not just YouTube videos but any
13    video -- videos that are otherwise restricted on the
14    Internet, right.
15          THE COURT:  Any video.  That's fine.  Okay.
16    So what -- when you are talking about what it does
17    with respect to YouTube which is this case, what
18    other purpose can it possibly have?  In other words,
19    that's why the software was written was to allow
20    people to stream rip.
21          MR. MUDD:  The software -- again, I think
22    that we're imputing factual aspects here on a
23    12(b)(6).  But the software was written to allow
24    content to be saved on an individual's computer, just
25    like a VHS was designed to allow individuals to
```

15:48
15:48
15:48
15:48
15:48
15:48
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:49
15:50

1   record something that came across broadcast and save                15:50

2   it for later use, right?  So there is a purpose, and                15:50

3   I agree.                                                            15:50

4           But I think that we're conflating, with all                15:50

5   due respect, that, one, we've got to determine that                 15:50

6   that is a technical measure, that YouTube's code is a               15:50

7   technical measure.  And it's not.  There is no                      15:50

8   scrambling involved in that.  There is no -- like on                15:50

9   the example in the complaint that I use which is not                15:50

10  what Yout does.                                                     15:50

11          Let's go to what I believe that Yout does.                  15:50

12  And basically that's essentially the streaming comes                15:50

13  through, and typically on your computer the content                 15:50

14  goes to an individual's computer, right?  It's not                  15:50

15  staying up on the YouTube server.  It comes to our                  15:50

16  individual computer when we're looking at a                         15:50

17  particular video.  But let's say that we're talking                 15:50

18  about that in the context of a barrel.  There is a                  15:50

19  hole at the bottom of the barrel.  So that -- for                   15:50

20  bandwidth purposes, so that it doesn't fill up and                  15:51

21  you get clogged, it allows for content to flow                      15:51

22  through.  And so it's an ongoing flow.  That's the                  15:51

23  streaming.  What Yout does is essentially close the                 15:51

24  hole so that the content that is being sent to an                   15:51

25  individual's computer can be stored into a particular               15:51

```
 1   file.                                                    15:51
 2          Putting aside the terms of service, because a     15:51
 3   terms of service violation is not a technical            15:51
 4   measure.  It's not a 1201 issue.  And there's law        15:51
 5   that even supports that, that a licensing agreement      15:51
 6   or violation of a license agreement, so forth, does      15:51
 7   not a 1201 violation make.  You've got to have a         15:51
 8   technical measure.                                       15:51
 9          And so whether or not the terms of service        15:51
10   may say don't download or don't copy or don't, you       15:51
11   know, whatever the specific terms are in the terms of    15:51
12   service, that's really irrelevant to determining         15:51
13   whether or not there is a technical measure or not.      15:51
14   And whether there is a technical measure or not here,    15:52
15   I believe, is a factual issue and one that needs         15:52
16   information from the -- perhaps, at the very least,      15:52
17   the party that has that code, and so forth and that's    15:52
18   YouTube.  But that's assuming that we get past the       15:52
19   issue that the statute requires that the technical       15:52
20   measure be of the copyright owner.                       15:52
21          THE COURT:  Okay.  Well, I don't read the         15:52
22   statute that way, but I'll take that into account.       15:52
23          MR. MUDD:  I'll be happy to further brief         15:52
24   those issues too.                                        15:52
25          THE COURT:  No.  That's okay.  I think we         15:52
```

| | |
|---|---|
| 1 | have enough. | 15:52 |
| 2 | I did want to ask you, you say several times | 15:52 |
| 3 | in the second amended complaint that Yout essentially | 15:52 |
| 4 | -- how do you say it.  You're talking about the | 15:52 |
| 5 | process that anybody can go on, if they get into the | 15:52 |
| 6 | developer tool and they do this, that and the other | 15:53 |
| 7 | thing, they can come up with a downloaded file.  And | 15:53 |
| 8 | then you say -- well, the impact of it -- I can't | 15:53 |
| 9 | find it right now.  But the substance was Yout just | 15:53 |
| 10 | does that automatically, does all these steps | 15:53 |
| 11 | automatically and allows the user to do what they | 15:53 |
| 12 | could otherwise do. | 15:53 |
| 13 | The problem I have with that is your | 15:53 |
| 14 | description hinted in my earlier questioning, the | 15:53 |
| 15 | description that you gave would allow an ordinary | 15:53 |
| 16 | user to download a video file and download a separate | 15:53 |
| 17 | audio file, but there is no description of how an | 15:53 |
| 18 | ordinary user can combine those into what is seen on | 15:53 |
| 19 | YouTube.  So it's not apparent to me that you have | 15:53 |
| 20 | alleged that the ordinary consumer can in fact | 15:54 |
| 21 | recreate and save a copy of what appears on a YouTube | 15:54 |
| 22 | video. | 15:54 |
| 23 | MR. MUDD:  Yeah.  It's another piece of | 15:54 |
| 24 | software that somebody could use, FFmpeg. | 15:54 |
| 25 | And, again, I go back to my perhaps mistaken | 15:54 |

1   effort to show that that information for the 1201                15:54

2   analysis, 1201(a), the access, that all of that is             15:54

3   accessible without any restriction and so forth or             15:54

4   technical measure preventing access to the work.               15:54

5         But again I go back to the example that I've             15:54

6   used here today, and the better example is the                 15:54

7   playing YouTube video and using QuickTime player,              15:54

8   recording that video and audio in one aspect and               15:54

9   saving the file, is a better demonstration of what an          15:54

10  ordinary user, what an individual user can do to               15:54

11  obtain the copy.  And, granted, you were right when            15:54

12  you mentioned earlier that there might be a violation          15:54

13  for that.  There is not a violation if somebody does           15:55

14  that with the authorization of the copyright owner.            15:55

15  If there is a violation of the terms of service, that          15:55

16  might be a breach of contract issue.  But that's not           15:55

17  what we're talking about here, right?                          15:55

18        We're talking about whether or not there is a           15:55

19  violation of 1201.  Even if there was a violation of           15:55

20  copyright infringement, then that's not under the              15:55

21  1201; and that kind of goes to the 512(f) where you            15:55

22  can't really separate infringement from circumvention         15:55

23  here.                                                          15:55

24        But the point that I'm trying to make in                15:55

25  response to your question, one is that the -- there            15:55

1   is software that could put that back together, an          15:55
2   FFmpeg.  My exhibition in that was not to demonstrate        15:55
3   what Yout did, as Ms. Ehler points out.  It was to          15:55
4   demonstrate that all of that information is available        15:55
5   and YouTube provides it.  The download button, that's       15:55
6   YouTube's code.  That's not anything that's added.          15:55
7          But a better demonstration, after thinking           15:56
8   about it, of how somebody could quite easily obtain a       15:56
9   full recording of any YouTube video is using               15:56
10  QuickTime player, recording the audio and video on          15:56
11  the screen and you're done.                                15:56
12         But, again, I want to point out too that just        15:56
13  because something is streaming or just because              15:56
14  something is on YouTube does not mean that recording        15:56
15  it is copyright infringement.  You have to do so in         15:56
16  an unauthorized manner, and there might be                 15:56
17  something --                                               15:56
18         THE COURT:  We're talking about                      15:56
19  circumvention.  Let's stick with the circumvention.        15:56
20         MR. MUDD:  Okay.                                     15:56
21         THE COURT:  I mean, how is it that Yout              15:56
22  software operates in a way that does not circumvent         15:56
23  whatever method YouTube is trying to set up to              15:56
24  prevent exactly what Yout does?                            15:56
25         MR. MUDD:  You're suggesting that that is            15:56

1    YouTube's intent with, for example, their code as                  15:56
2    opposed to bandwidth.                                              15:57
3           And, in fact, the language, I believe, that                 15:57
4    Ms. Ehler and the Recording Industry included in                   15:57
5    their briefing from the Danish court actually -- and               15:57
6    if I'm mistaken, then I apologize.  But it explains                15:57
7    that Yout doesn't modify anything on that and it just              15:57
8    collects the information, the content that's going                 15:57
9    through.                                                           15:57
10           And so, again, if we're talking about what                 15:57
11   YouTube did, whether what its purpose was in that                  15:57
12   particular code, I think that we need the evidence                 15:57
13   from YouTube.  Rather than Ms. Ehler saying what                   15:57
14   YouTube intended or I say what YouTube intended, we                15:57
15   need YouTube to explain what the purpose for that is               15:57
16   here.  And, notably, they are not present.  They're                15:57
17   not the ones alleging any violation of the terms of               15:57
18   service or Computer Fraud and Abuse Act claim or                   15:57
19   anything of the kind.                                              15:57
20           THE COURT:  Isn't it incumbent on you as the               15:57
21   plaintiff to plead, in effect, that YouTube does not              15:57
22   protect its videos?                                                15:58
23           MR. MUDD:  They're not YouTube videos.                     15:58
24   They're not YouTube's videos.  They're the videos of              15:58
25   the copyright owners.                                              15:58

```
 1          THE COURT:  I understand that.                    15:58
 2          MR. MUDD:  And we allege that there --            15:58
 3          THE COURT:  I understand that.  My question       15:58
 4   is:  Isn't it incumbent on you as the plaintiff to       15:58
 5   plead facts necessary to give rise to a plausible        15:58
 6   cause of action?                                         15:58
 7          MR. MUDD:  Yes.  And I believe that we've         15:58
 8   done that because all that we have to plead here is      15:58
 9   that -- all that we have to plead in seeking is that     15:58
10   there is not a violation of 1201, in meaning that        15:58
11   there is not a technical measure at issue, which         15:58
12   we've pled.                                              15:58
13          We have also pled that -- you know, that the      15:58
14   Recording Industry is making these aspersions.  And     15:58
15   to the extent that they are saying that YouTube's        15:58
16   technology is for a particular purpose, we have said     15:58
17   that it's not there.  For them to say that it is,        15:58
18   we're both talking about what YouTube happens to         15:58
19   have.                                                    15:59
20          What I'm suggesting and arguing is that           15:59
21   YouTube's software and code is not there for purposes    15:59
22   of restricting the ability to download anything.         15:59
23   That's their code.  They have the download button.      15:59
24   They have it in there.                                   15:59
25          And all that we did was take a URL, their         15:59
```

1    URL -- there is no descrambling.  There is no                    15:59

2    changing the scramble or anything like that.  It's --           15:59

3    in my example, not Yout's, it's changing the length             15:59

4    of the video.  The file is online.  So I believe                15:59

5    that --                                                          15:59

6         THE COURT:  How does Yout do it?  How does                  15:59

7    Yout do it?  This is magic.  How do they do it?  You            15:59

8    don't allege anywhere in the second amended complaint           15:59

9    how they do it.  And that you do know.  And that, if            15:59

10   you had alleged it, would imply either there is or is           15:59

11   not a technological measure.                                    15:59

12        MR. MUDD:  Well, with all due respect, it                   15:59

13   seems that you're picking up on the defendant's                 15:59

14   argument that the last motion to dismiss was                    15:59

15   dismissed because we didn't sufficiently allege                 16:00

16   Yout's technology.  And that's not what the record --           16:00

17        THE COURT:  Mr. Mudd.  Mr. Mudd, how does                   16:00

18   Yout do it?                                                      16:00

19        MR. MUDD:  As was presented in their briefing              16:00

20   which refers --                                                 16:00

21        THE COURT:  No.  No.  Where in the complaint               16:00

22   do you set forth what -- how Yout operates?  If you             16:00

23   have an explanation for how the Yout software works             16:00

24   that makes clear that there is no YouTube technical             16:00

25   measure, that's within your control, your knowledge             16:00

| | |
|---|---|
| 1 | and your ability to plead.  But you haven't done | 16:00 |
| 2 | that. | 16:00 |
| 3 | MR. MUDD:  I disagree, your Honor.  And I | 16:00 |
| 4 | disagree with the obligation -- | 16:00 |
| 5 | THE COURT:  Point me to the complaint.  Point | 16:00 |
| 6 | me to the complaint where you explain how Yout works. | 16:00 |
| 7 | MR. MUDD:  We go through a process in the | 16:00 |
| 8 | complaint, and then I say that Yout operates in a | 16:00 |
| 9 | similar process. | 16:00 |
| 10 | But we don't have to -- there is nothing in | 16:00 |
| 11 | here where we have to show in 1201 what the software, | 16:00 |
| 12 | the code or anything happens to be that they are | 16:00 |
| 13 | alleging or that Yout is.  What we have to allege is | 16:01 |
| 14 | that there is not a claim under 1201.  And the | 16:01 |
| 15 | technical measure, there is no -- | 16:01 |
| 16 | THE COURT:  You're asking for a declaratory | 16:01 |
| 17 | judgment without explaining how the software works. | 16:01 |
| 18 | MR. MUDD:  But isn't this a 12(b)(6) -- | 16:01 |
| 19 | THE COURT:  How can I issue a declaratory | 16:01 |
| 20 | judgment that the Yout software does not violate the | 16:01 |
| 21 | statute if I'm not told by Yout how the software | 16:01 |
| 22 | works? | 16:01 |
| 23 | MR. MUDD:  You allow discovery to proceed | 16:01 |
| 24 | forward given that the federal courts notice pleading | 16:01 |
| 25 | and we have sufficiently alleged the elements of a | 16:01 |

1    particular claim.  We're not asking for an                    16:01
2    evidentiary hearing here.                                      16:01
3        THE COURT:  You can't just say please give us             16:01
4    a declaration that we're not violating the statute.            16:01
5    We're not going to tell you what we do or how we do            16:02
6    it or whatever.  Just, you know, we --                         16:02
7        MR. MUDD:  But I don't think we even get to               16:02
8    that point.  There is no technical measure.  I mean,           16:02
9    1201(a) requires that it prevents access.  There is            16:02
10   access on the YouTube site.  1201(b), arguably.  But           16:02
11   you still have to get around the fact that the                 16:02
12   technical measure needs to be of the copyright owner,          16:02
13   and the technical measure --                                   16:02
14       THE COURT:  We're going around in circles.                16:02
15   We're going around in circles.  I've heard this                16:02
16   argument three or four times now, so let's move on.            16:02
17       MR. MUDD:  And my point, just to summarize,               16:02
18   is I believe that we have alleged that there cannot            16:02
19   be a violation because they can't demonstrate a                16:02
20   violation.  They are the ones that allege that there           16:02
21   is a violation of 1201, right?  They're sending out            16:02
22   the notices alleging that there is a violation of              16:02
23   1201.  We have argued that you can't even get to the           16:02
24   1201 violation because they can't meet the burden of           16:02
25   showing that they have a technical measure that                16:02

1    effectively prevents access or a technical measure        16:02

2    that prevents, restricts or otherwise limits the          16:02

3    exercise of their right and the fact that you've got      16:03

4    to have -- in addition to that, for 1201(b), you've       16:03

5    got to have a product that was primarily designed for     16:03

6    the purpose of circumventing protection which we've       16:03

7    alleged is not the case.                                  16:03

8         We have alleged that there is commercially           16:03

9    purposeful value beyond what -- the complaint that        16:03

10   the Recording Industry has.  And we've alleged, and I     16:03

11   don't think anybody is arguing, that Yout is              16:03

12   marketing the product.                                    16:03

13        So under the statute which we have alleged in        16:03

14   the complaint, they can't meet those violations.  In      16:03

15   the notices that they've sent out to third parties        16:03

16   alleging that we have violated that, before you even      16:03

17   get to what Yout does behind the scenes, you have to      16:03

18   show that they have those mechanisms.  Then you show      16:03

19   that there is a product that circumvents that.            16:03

20        Now, granted, your Honor, if you were to             16:03

21   decide that there is a technical measure, it doesn't      16:03

22   need to be from the copyright owner, and you also         16:03

23   decide without factual basis on a motion to dismiss       16:04

24   where nobody else has, I believe, that there is a         16:04

25   product that falls within the prohibitions of (b)(1)      16:04

1   that doesn't -- that's primarily designed for                16:04

2   circumventing protection, has only limited                    16:04

3   commercially significant purposes or has been                 16:04

4   marketed as such, then you can come to the question           16:04

5   of, okay, in that instance, does the product                  16:04

6   circumvent the technical measure.  But you don't need         16:04

7   to get to that point until you decide that there is a         16:04

8   technical measure and that the product fits those             16:04

9   parameters, one of the three parameters under (b)(1).         16:04

10  And that requires an evidentiary hearing.                     16:04

11         So I believe it would be premature to dismiss          16:04

12  a complaint because we say or because you contend             16:04

13  that we haven't sufficiently gone into the source             16:04

14  code.  And maybe that's all proprietary too, right?           16:04

15  I mean, I've tried to allege that.                            16:05

16         But if you were to decide on a motion to               16:05

17  dismiss that we haven't alleged sufficiently elements         16:05

18  that you only get to if they can show that there is a         16:05

19  technical measure and our product, my client's               16:05

20  product, doesn't meet 12 -- or meets 12(b)(1), then I         16:05

21  think that that would be an erroneous decision.               16:05

22         And if I could just go to the fact -- going            16:05

23  to the terms of use and so forth, I'd like to read            16:05

24  briefly from *In Re Maxim Integrated Products* where it       16:05

25  states that the court notes that -- I was talking             16:05

1    about a license agreement or a contract -- the                16:05

2    contracts are insufficient to grant a claim for               16:05

3    relief under the DMCA.  The anti-circumvention                 16:05

4    provision of the DMCA specifically requires a                  16:05

5    plaintiff, and this would be the defendant in this             16:05

6    instance, for example, to have applied some                    16:05

7    technological measure to prevent access from                   16:05

8    occurring in the first place.  And then it cites               16:05

9    1201(a)(3)(B).  And so that's just a support that a            16:06

10   reference to the terms of service or what might be in          16:06

11   there is irrelevant to a 1201 analysis.                        16:06

12          And if I could, before we finish, I want to             16:06

13   address the other claims, but I want to address                16:06

14   anything else that the Court might have.                       16:06

15          THE COURT:  Go ahead.                                   16:06

16          MR. MUDD:  With respect to the 512(f), I                16:06

17   would agree that if the Court were to determine on a           16:06

18   factual basis or as a matter of law -- and I don't             16:06

19   think here that can be determined as a matter of               16:06

20   law -- that there is a 1201 violation, then to a               16:06

21   certain -- then the 512(f) becomes moot because then           16:06

22   there is not a false misrepresentation.  I will grant          16:06

23   that.  So it all does hinge on the 1201.                       16:06

24          That being said, I don't think that anybody             16:06

25   can really plausibly argue that, under 512, where it           16:06

1    says that claiming infringing activity or    16:07

2    misrepresentations in terms of infringement or    16:07

3    activity would not necessarily encompass allegations    16:07

4    under 1201.  512 is the DMCA reporting mechanism.    16:07

5    That is where individuals such as the Recording    16:07

6    Industry and its member companies would send notices    16:07

7    out claiming that there is a violation of 1201.    16:07

8         What does 1201 facilitate, perhaps, or    16:07

9    prevent?  It's the circumvention of rights or    16:07

10    measures, sorry, circumvention of a technical    16:07

11    measure, that protects certain rights and so forth of    16:07

12    a copyright owner.  And even in their pleadings and    16:07

13    their notices, they talk about the fact that Yout    16:07

14    allegedly circumvents technological measures that    16:07

15    allow unauthorized copying or downloading of content    16:07

16    which is copyright infringement.    16:07

17         So I think that for the Recording Industry to    16:07

18    argue that 512(f) does not encompass anything with    16:07

19    respect to 1201, I think misses the point, because    16:08

20    1201 is trying to prevent copyright infringement.    16:08

21    And the DMCA notice -- I mean, 501 is the copyright    16:08

22    infringement, but the 512 is arguing the DMCA notice.    16:08

23    That's where you get the notices that are tied to    16:08

24    1201.  So it's disingenuous, I think, to argue that    16:08

25    there is no connection between 1201 and copyright    16:08

1    infringement.  And there is, at least, the imputation          16:08

2    that our client is engaging in either secondary or             16:08

3    contributory or vicarious infringement.                        16:08

4         With respect to the business disparagement                16:08

5    and the defamation claims, again, I will acknowledge           16:08

6    that if the Court were to determine, or a factfinder           16:08

7    were to determine, that there was a violation of               16:08

8    1201, then those claims would be, you know, resolved           16:08

9    because, again, the statements would necessarily be            16:09

10   false.                                                         16:09

11        I think the reference that the plaintiff --               16:09

12   the defendant's counsel makes to foreign judgments             16:09

13   interpreting foreign law are really not only less              16:09

14   than persuasive authority but really irrelevant                16:09

15   because they're interpreting law other than 1201.              16:09

16        In her brief, particularly in the reply brief             16:09

17   with respect to business disparagement, Ms. Ehler and          16:09

18   the Recording Industry makes the argument that we've           16:09

19   waived certain arguments that were in footnote 10              16:09

20   with respect to special damages and impugning the              16:09

21   quality of the goods and services.                             16:09

22        With respect to special damages, I think that             16:09

23   we all know that there are courts out there, not               16:09

24   necessarily in a notice pleading jurisdiction, but             16:09

25   there are courts and various jurisdictions that would          16:09

1    hold that merely using the magical word "special                    16:09

2    damages" in a complaint would not suffice to allege                  16:09

3    special damages.  Rather what you need to do is be                    16:10

4    specific as to what those special damages are.  And                  16:10

5    that we have done within the complaint.  We talked                   16:10

6    about -- we talked about -- I'm trying to get to my                  16:10

7    notes, if you'll bear with me just a moment here.  We                16:10

8    did talk about the damages of lost profits; lost                     16:10

9    revenue in paragraph 165; the cancellation of                        16:10

10   subscriptions in paragraph 110; the fact that PayPal                 16:10

11   shut down the account in paragraph 111.  Those are                   16:10

12   special damages.  Those constitute the type of                       16:10

13   damages that are encompassed within special damages,                 16:10

14   real economic damages as opposed to amorphous claims,                16:10

15   I agree with Ms. Ehler, that have reputational harm.                 16:10

16   But we're not limiting the damages to reputational                   16:10

17   harm.                                                                16:10

18            Additionally, there is argument that -- there               16:10

19   is case law out there that arguments in a footnote                   16:11

20   themselves, that are limited to a footnote, are                      16:11

21   waived because they're not fully developed.                          16:11

22            But I would refer more also to local Rule                   16:11

23   7(a)(2) that arguments that are not waived so long as                16:11

24   the allegations in the pleadings are sufficient to                   16:11

25   respond.  And, again, I would point to those                         16:11

1    pleadings where we do have the allegations of the                    16:11

2    specific damages that constitute the type of damages                 16:11

3    special damages happens to be.                                       16:11

4         With respect to impugning the quality of the                    16:11

5    goods -- or I guess goods here is -- maybe services.                 16:11

6    But, I mean, it's somewhat incredulous to me that the                16:11

7    argument that we haven't alleged that the statements                 16:11

8    made by the Recording Industry impugn the quality of                 16:11

9    the goods because they're stating quite explicitly                   16:11

10   that they're illegal, that the software facilitates                  16:11

11   engaging in illegal conduct.  And so I don't know                    16:12

12   very -- how more you can impugn a product by then                    16:12

13   saying that it's unlawful and shouldn't be sold and                  16:12

14   people should stop associating with it.  So I would                  16:12

15   argue that we have done that.                                        16:12

16        As to their arguments with respect to                           16:12

17   knowledge, I think that's a factual question that                    16:12

18   can't be decided on a motion to dismiss.                             16:12

19        And so in conclusion, your Honor, though                        16:12

20   there are points that I would have loved to have gone                16:12

21   into more on the 1201(a) and (b), I don't want to                    16:12

22   push the Court's patience.                                           16:12

23        I would like to summarize again that the                       16:12

24   legislative history under 1201, both for 1201(a) and                 16:12

25   1201(b), makes clear, particularly in the Judiciary                  16:12

1    Committee's report that's in the language cited by                16:12

2    Ms. Ehler in her cite to *Reimerdes*, *Reimerdes* cites          16:12

3    the report, the legislative history, makes clear that            16:13

4    the technological measure, the technical measure has             16:13

5    to be that of the copyright owner.  I point that out.            16:13

6        I would remind us all that this is a 12(b)(6)                16:13

7    motion, and given that federal courts are notice                 16:13

8    pleading, we believe that we have sufficiently pled              16:13

9    elements to survive a motion to dismiss and proceed              16:13

10   forward and obtain factual information, particularly             16:13

11   to the extent that we're going back around talking               16:13

12   about what YouTube's intent was in the design of its             16:13

13   particular software or what it was supposed to be                16:13

14   doing.  I think that does lend itself to a factual               16:13

15   determination.                                                   16:13

16       Thank you very much, your Honor, and I                       16:13

17   appreciate you listening to my somewhat impassioned             16:13

18   argument.                                                        16:13

19            THE COURT:  Thank you.                                   16:13

20            Ms. Ehler.                                               16:13

21            MS. EHLER:  Yes, your Honor.  I'll correct my           16:13

22   name.  It's actually "E-ler."  But thank you.  I                 16:13

23   appreciate you trying.  It's hard.                               16:13

24       I wrote down a few points but I'm sensitive                  16:14

25   to how long we've been going, so if the Court doesn't           16:14

1    need to hear more, that's okay, or I can try to get          16:14

2    through them in just a minute or two.                         16:14

3            THE COURT:  That's fine.  Go ahead.  I'm              16:14

4    ready.                                                        16:14

5            MS. EHLER:  Thank you.                                16:14

6            On my friend's point, Mr. Mudd's point               16:14

7    regarding whether the technological protection               16:14

8    measure has to be applied by the copyright owner, I          16:14

9    believe the language in the statute is "with the             16:14

10   authorization."                                              16:14

11           And, you know, in the cases, *Reimerdes*, these      16:14

12   other cases, it was the DVD Copy Control Association.        16:14

13   So in all of these DVD cases, it was an association          16:14

14   licensed to the technology players.                         16:14

15           Here you have a licensed -- a licensee who is        16:14

16   authorized to have the copies of these works and            16:14

17   then, of course, to stream them subject to the              16:14

18   agreements; and the evidence for that is in the             16:14

19   YouTube terms of service which are judicially               16:14

20   noticeable.                                                 16:15

21           On the access to the work point, the idea           16:15

22   that you can stream -- because you can stream through       16:15

23   YouTube, that that translates to authorization to          16:15

24   actually download the file, that's just -- that's          16:15

25   wrong, and that's been rejected by the cases that          16:15

1    reject the idea that buying a DVD and owning a copy          16:15

2    of a DVD still does not give you the right to                16:15

3    circumvent the technological protection measures on          16:15

4    those DVDs.  The same is true here.  Just because you        16:15

5    have the ability to view streams, that does not give         16:15

6    you the right to access the underlying digital files         16:15

7    of those copyrighted works and download them.                16:15

8           And then on the various subsections of                16:15

9    1201(a) and (b), 1201(a) deals with access controls.         16:15

10   That goes to access of the underlying files which            16:15

11   we've been talking about.  1201(b) is sort of copy           16:15

12   controls.  The difference in the language is really          16:15

13   in what the technological protection measure is, and         16:15

14   the difference in 1201(b) I think is actually even           16:15

15   easier to be met.  It includes just limiting access          16:16

16   to be able to copy those files.                              16:16

17          And then on the trafficking provisions, those         16:16

18   are disjunctive.  So it really is any one of the             16:16

19   trafficking subsections.  I'll just highlight sort of        16:16

20   one easy fact.  Yout's name, Y-O-U-T, very similar to        16:16

21   YouTube, pretty spatially obvious as to what the             16:16

22   service is existing to accomplish.                           16:16

23          And then just in sum, going back to what we           16:16

24   have in the complaint, you know, paragraph 64 shows          16:16

25   how YouTube operates in the normal course, a video          16:16

1    that you could click play on and stream through the          16:16

2    YouTube authorized player.                                    16:16

3          Paragraph 98 talks about a signature value,            16:16

4    what's sort of existing in the underlying source code         16:16

5    that Yout does concede it's interacting with.                 16:16

6          And then paragraph 69 -- and I'm sort of               16:16

7    simplifying here.  But paragraph 69 is where we talk          16:16

8    about modifying the portions of the source code; and          16:17

9    that modification, of course, is necessary in order           16:17

10   to avoid and bypass what would otherwise happen               16:17

11   through the authorized YouTube player.                        16:17

12         So there is enough there to find that this --          16:17

13   the technological protection measures are there and           16:17

14   that Yout is circumventing.                                   16:17

15         MR. MUDD:  Your Honor, if I could just make a          16:17

16   couple points.                                                16:17

17         THE COURT:  Quickly.                                    16:17

18         MR. MUDD:  Yes.  On that last point, it's not          16:17

19   the source code that's modified.  It's just a URL.            16:17

20         With respect to the section-by-section                 16:17

21   analysis in the house on 1201, with respect to                16:17

22   1201(a), I quote from that:  "Subsection (a) of new           16:17

23   Section 1201 applies when a person who is not                 16:17

24   authorized to have access to a work seeks to gain             16:17

25   access by circumventing a technological measure put           16:17

1  in place by the copyright owner that effectively          16:17
2  controls access to the work.  The relevant                16:17
3  terminology is defined in paragraph (3) as described      16:17
4  below."                                                   16:17
5          With respect to 1201(b) and page 13 of that       16:18
6  report, depending on, I guess, the pagination that        16:18
7  you might have, quote:  "Subsection (b) applies when      16:18
8  a person has obtained authorized access to a copy or      16:18
9  a phonorecord of a work but the copyright owner has       16:18
10 put into place technological measures that               16:18
11 effectively protect his or her rights under Title 17     16:18
12 to control or limit the nature of the use of the         16:18
13 copyrighted work.  This is echoed in House Report        16:18
14 105-551."                                                16:18
15         Finally, you know, I'm not suggesting that by     16:18
16 having access to a streaming video, that that            16:18
17 necessarily gives somebody a right to copy any or        16:18
18 download any file.  But what we have here are the        16:18
19 terms -- the only thing that we have here that's         16:18
20 saying that maybe you shouldn't copy or download is      16:18
21 the YouTube terms of service.  And with respect to       16:19
22 creating a technical measure, that's not enough and      16:19
23 actually shouldn't even be looked to under 1201.  We     16:19
24 don't have any agreements from the Recording Industry    16:19
25 with YouTube.  We don't have agreements between them     16:19

1    or the understanding that they had when they were                16:19

2    submitting or the people were submitting works to the             16:19

3    YouTube.  We don't have how many works are actually               16:19

4    on YouTube that contain the sound recordings of the               16:19

5    Recording Industry because the Recording Industry is              16:19

6    only talking about the sound recordings.  We don't                16:19

7    have the same problem with the Motion Picture                     16:19

8    Association or any other parties that the actually                16:19

9    use YouTube and have, as we've alleged in the                     16:19

10   complaint, invited people to download the videos.                 16:19

11         And so I think that we really don't have                    16:19

12   enough for this complaint to be dismissed here.  You              16:19

13   don't --                                                          16:19

14         Like with respect to what the Congress said,                16:19

15   "Section (b) applies when a person has obtained                   16:19

16   authorized access to copy a phonorecord of a work but             16:19

17   the copyright owner has put into place technological              16:19

18   measures that effectively protect the rights."                    16:20

19         Even assuming that that could be the                        16:20

20   copyright owner relying on YouTube, you've got to                 16:20

21   have some evidence of that.  I don't have that                    16:20

22   evidence.  You've got to have some evidence of that               16:20

23   relationship that the Recording Industry, the                     16:20

24   members, the Recording Industry Association or its                16:20

25   record companies had an affirmative agreement with                16:20

1    YouTube that understood that that URL or that effort                16:20

2    was a technical measure to limit the ability to                     16:20

3    download the work.  I don't see that anywhere in the                16:20

4    terms of service which are really immaterial.  They                 16:20

5    haven't shown any contracts.  Their DMCA notice are                 16:20

6    very amorphous with allegations.  They never even                   16:20

7    cite a specific copyrighted work.                                   16:20

8          And so I believe, in sum, your Honor, it                      16:20

9    would be very premature to dismiss the complaint                    16:20

10   without at least some discovery here to obtain the                  16:20

11   information that would support their argument under                 16:20

12   1201, because while there might be an argument that                 16:21

13   it's possible there is a technical measure with                     16:21

14   respect to that URL, they don't know.  That's not                   16:21

15   their technical measure.  They don't know whether it               16:21

16   was designed to be a technical measure or not, and I                16:21

17   can't allege what Yout might -- or YouTube might have               16:21

18   intended with that or not.                                          16:21

19         But the evidence that's before the Court that                16:21

20   was presented through the Danish court in their                     16:21

21   documents from the Recording Industry demonstrates or               16:21

22   has language in there, and I'd ask that the Court go                16:21

23   back and look at it, that YouTube put that there for                16:21

24   bandwidth purposes.  That's not protecting the                      16:21

25   ability of a copyright owner to download something or               16:21

1    not.                                                      16:21

2         Thank you.                                           16:21

3         THE COURT:  All right.  Thank you both.  I'll        16:21

4    take it under advisement and get you a ruling as          16:21

5    quickly as I can.                                         16:21

6         MR. MUDD:  Thank you.                                16:21

7         MS. EHLER:  Thank you, your Honor.                   16:21

8         THE COURT:  Bye-bye.                                 16:22

9         (Proceedings adjourned, 4:22 p.m.)                   16:22

10

11              C E R T I F I C A T E

12

13       RE: YOUT LLC v. RECORDING INDUSTRY
            ASSOCIATION OF AMERICA, INC. ET AL.
14              No. 3:20-cv-01602-SRU

15

16       I hereby certify that the within and

17   foregoing is a true and accurate transcript taken in

18   the aforementioned matter to the best of my skill and

19   ability.

20

21        /s/_Melissa J. Cianciullo_____

22      MELISSA J. CIANCIULLO, RDR, CRR, CRC
              Official Court Reporter
23          United States District Court
              915 Lafayette Boulevard
24            Bridgeport, CT 06604
                 (203) 606-1794

25