# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

YOUT, LLC,
     Plaintiff,

    v.

RECORDING INDUSTRY
ASSOCIATION OF AMERICA, INC., and
DOE RECORD COMPANIES 1-10,
     Defendants.

No. 3:20-cv-1602 (SRU)

## RULING ON DEFENDANT'S MOTION TO DISMISS

Yout LLC ("Yout") filed this four-count suit against The Recording Industry Association of America, Inc. (the "RIAA") and Doe Record Companies 1-10, seeking a declaratory judgment that Yout's software, which allows users to download audio, video, and audio/video files from major streaming websites, does not violate section 1201 of the Digital Millennium Copyright Act ("DMCA"). Yout seeks damages in connection with the DMCA, a common law business disparagement claim, and a common law defamation claim for claimed misrepresentations made by the RIAA alleging that Yout infringed unidentified RIAA members' copyrights.

The RIAA moves to dismiss Yout's complaint for failure to state a claim under Rule 12(b)(6), primarily arguing that the facts pled by Yout establish that the software at issue circumvents an effective technological measure in violation of section 1201 as a matter of law. Under the same reasoning, the RIAA avers that it made no misrepresentations about Yout's software in its circumvention notices. Additionally, the RIAA alleges that Yout does not have a plausible claim for damages under section 512(f) because the DMCA does not penalize a misrepresentation of circumvention.

For the reasons that follow, I **grant** the RIAA's motion to dismiss Yout's declaratory judgment claim, section 512(f) claim, and common law defamation claims.

## I.     Background

### A.     Factual Allegations[1]

Plaintiff Yout is a Connecticut limited liability company that has its principal place of business in Hartford, Connecticut.  Second Amended Complaint ("SAC"), Doc. No. 45, at 1 ¶ 2.

Defendant RIAA is a trade organization incorporated under New York law and headquartered in Washington, D.C.  *Id.* at 1 ¶ 3.  The RIAA represents various record companies, including defendants Doe Record Companies 1-10.[2]  *Id.* at 2 ¶ 4.  Collectively, the RIAA and Doe Record Companies 1-10 are "Defendants."

#### 1.   *Yout*

The Internet contains diverse types of content, some of which may be accessed via a unique hyperlink, a uniform resource locator (commonly referred to as "URL" or "web address"), that directs computing devices to content on the Internet.  *Id.* 4 ¶¶ 25-26.  Access to some internet content is limited by a paywall or protective technologies such as encryption, content scrambling, or ciphers.  *Id.* at 4 ¶¶ 27-32.

Yout created and operates a service by which a user can enter a URL linked to internet content, in specific formats, to create a personal copy of the content on the user's device.  *Id.* at 5 ¶ 34.  The content accessed by Yout is not behind a paywall, encrypted, or subject to a cipher. *Id.* at 4 ¶¶ 27-32.  It is publicly accessible.  *Id.* at 4 ¶ 33.

#### 2.   *The Yout Service*

On the domain yout.com, a user may insert a URL and choose to create a local copy of the content in a specific format, such as an MP3 audio file or an MP4 video file.  *Id.* at 5-6 ¶¶ 36-

---

[1] The facts are drawn from the second amended complaint, and for purposes of the present motion, I assume them to be true and draw all reasonable inferences in Yout's favor.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[2] The true names of Doe Record Companies 1-10 are unknown to Yout. *See* SAC, Doc. No. 45, at 2 ¶ 5 n.2. Yout intends to seek leave to amend its complaint once the true names and capacities of the companies are ascertained. *Id.*

39, 43.  As a result, a user can listen to or watch the locally-stored copy when he or she is not connected to the internet, such as during a long flight, without visiting the website where the original content resides.  *Id.* at 6 ¶¶ 43-44, 7 ¶ 52.  Yout describes its service by explaining that users may "time shift" the content.[3]  *Id.* at 7 ¶ 46, 23 ¶ 103, 25 ¶ 121.

The content recorded by Yout users is never saved or retained by Yout's platform or servers.  *Id.* at 5 ¶ 35, 7 ¶ 47.

### a.  YouTube

One of the platforms on which a Yout user may obtain a local copy of a file, and the platform at the heart of this dispute, is YouTube.  *Id.* at 8 ¶ 55.  YouTube content plays on any HTTP user agent, including a web browser or user-side software, with a Javascript interpreter.[4]  *Id.* at 8 ¶¶ 57-58, 22-23 ¶¶ 98-99.  When a HTTP user agent encounters YouTube's "signature mechanism," it reads and interprets the JavaScript program sent by YouTube, derives a "signature value," and sends that value back to YouTube to initiate the video stream.  *Id.* at 22 ¶ 98.  YouTube content is not encrypted, *i.e.*, under a "digital rights management" regime, nor subject to a "secret key," like a DVD.  *Id.* at 8 ¶¶ 57-60.

Following a series of steps, a user may download a YouTube video and/or audio file directly in the Chrome browser.  *Id.* at 10-18 ¶¶ 63-77.  For example, a user may utilize the Chrome browser's Developer Tools menu to view the YouTube "Request URL," a lengthy web

---

[3] To the extent that Yout analogizes its service to recording a television program on a VHS tape, Yout appears to intend to push the boundaries of existing anti-circumvention law by drawing a parallel to well-settled anti-infringement law.  SAC, Doc. No. 45, at 24 ¶ 107; *see Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 446 (1984) (holding that time shifting—making a personal copy of a television program to watch at a later time— did not constitute copyright infringement).  But this case concerns alleged violations of the DMCA rather than copyright infringement, so the analogy-by-implication to anti-infringement law is inapposite.

[4] HyperText Transfer Protocol is a "standard application-level protocol used for exchanging files on the World Wide Web. . . . Web browsers are HTTP clients that send file requests to Web servers, which in turn handle the requests via an HTTP service."  *HTTP*, Encyc. Britannica, https://www.britannica.com/technology/HTTP.  A "user agent" is a "client program that is used to access servers on a network, typically the Internet."  *Encyclopedia: User Agent*, PC Mag., https://www.pcmag.com/encyclopedia/term/user-agent.

address containing the text "range=" followed by a sequence of numbers that can be modified to begin at zero and end at a much larger number. *Id.* at 12-13 ¶¶ 68-70. Using the Chrome browser's Developer Tools menu, the user may identify the largest file on the YouTube player page, which the Second Amended Complaint implies is the downloadable video file. *Id.* at 11 ¶ 67. If the user copies and pastes the YouTube "Request URL" for the video file into a new browser window or tab, then modifies the sequence of numbers in the "Request URL" to begin at zero, then a full-size video (without sound) will appear. *Id.* In addition to the video, a three-dot menu containing a "Download" option will also appear. *Id.* at 15 ¶¶ 71-72. By selecting the Download option, the user can save a local copy of the video file (without audio) to his or her computer. *Id.*

The user may also download the audio file for the video by returning to the Developer Tools menu; identifying the file with the shortest "Request URL" among the large files; then repeating the copy, paste, and modify-the-number-sequence process. *Id.* at 16 ¶ 73. As a result, the user may download, separately, a video file and an audio file. Of note, the Second Amended Complaint provides no instructions regarding how a user can download an audio/video file to save a local copy of a video with its audio.

The internet contains numerous articles and videos explaining how to download YouTube video and audio files using the aforementioned procedure. *Id.* at 17-19 ¶¶ 75-78.

   b.   The Yout Service

The Yout platform enables a user to complete the process of manually downloading files directly from YouTube in a "cleaner and easier format" and "fewer steps" by "automat[ing]" the process described above. *Id.* at 8 ¶ 56, 20 ¶ 79, 21 ¶ 91, 23 ¶ 102.

A Yout user enters a link to the video.  *Id.* at 5 ¶ 34.  The same as any browser or other user-side software, Yout reads and interprets a JavaScript program sent by YouTube, deriving a signature value, which it then sends back to YouTube to initiate the video stream.  *Id.* at 22 ¶ 98. To record video or audio from a particular YouTube video, Yout utilizes a configured version of the youtube-dl tool with ffmpeg.  *Id.* at 23 ¶ 100 n.5.[5]

The mechanism used by Yout's platform does not require any password, key, or other secret knowledge to access a YouTube video.  *Id.* at 23 ¶¶ 99-100.  Rather, YouTube provides the means of accessing its videos to anyone who requests them.  *Id.* at 23 ¶ 100.  Any digital mechanism designed as anti-circumvention technology, such as "digital rights management," can stop Yout users from recording and saving the content.  *Id.* at 22 ¶ 94.

3.  *The RIAA Notices*

On October 25, 2019, the RIAA, on behalf of Doe Record Companies 1–10, sent a notice to Google with the intent to cause Google to delist Yout's software platform from searches.[6]  *Id.* at 20 ¶ 83.  The October 25, 2019 notice stated:

> To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading.

---

[5] "[Y]outube-dl is a command-line utility for streaming and downloading user-uploaded videos from various websites, including YouTube. . . .  [Y]outube-dl stands in place of a Web browser and performs a similar function with respect to user-uploaded videos."  Mitchell Stoltz*, EFF letter to GitHub on youtube-dl Takedown*, ELECTRONIC FRONTIER FOUNDATION (Nov. 15, 2020), https://www.eff.org/document/eff-letter-github-youtube-dl-takedown [hereinafter "EFF Letter"].  The Court takes judicial notice of the letter, which is expressly referenced in the SAC. *See* SAC, Doc. No. Doc. No. 45, at 23 ¶ 100 n.5; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (authorizing taking judicial notice of a document incorporated in the complaint by reference)

[6] Yout in its amended complaint alternatively refers to the various notices sent by the RIAA to Google as anti-circumvention notices and DMCA notices.  *Compare* SAC, Doc. No. 45, at 20 ¶ 83 ("RIAA, on behalf of Doe Record companies 1-10, sent an anti-circumvention notice. . . . "), *with id.* at 20 ¶ 85 ("RIAA, on behalf of Doe Record Companies 1-10, sent a second DMCA notice).  Yout's assertion in its complaint that the RIAA's notices were sent "under 17 U.S.C. § 512(c)(3)" and thus constitute a DMCA notice is a conclusory legal allegation rather than a factual allegation and accordingly does not need to be taken as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

circumvention content: The services provided at the URLs indicated circumvent YouTube's technological protection measures.

circumvention mechanism: To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading.

*Id.* at 20 ¶ 84.  The RIAA sent similarly-worded notices again on October 26, 2019 and June 22, 2020.[7]  *See id.* at 20-21 ¶¶ 85-88.

Relying on the RIAA's notices, Google delisted Yout and rendered it undiscoverable to Yout's users.  *Id.* at 20 ¶¶ 83, 85, 87.  Users searching for "yout.com" via Google now receive a notice stating that "[i]n response to multiple complaints we received under the US Digital Millennium Copyright Act, we have removed 2 results from this page.  If you wish, you may read the DMCA complaints that caused the removals at LumenDatabase.org: [links to Defendants' DMCA notices]."  *Id.* at 24 ¶ 110.  In response, some Yout customers have cancelled their subscriptions to Yout's services.  *Id.*

In addition, Yout's PayPal account was shut down due to the RIAA's notices, causing Yout financial and reputational damage.  *Id.* at 24 ¶ 111.

B. Procedural History

On October 25, 2020, Yout filed this lawsuit.  Compl., Doc. No. 1.

On December 14, 2020, Yout filed an amended complaint.  *See* Am. Compl., Doc. No. 9. On January 14, 2021, the RIAA moved to dismiss the complaint, doc. no. 28, which Yout opposed, doc. no. 35.

On August 5, 2021, I held oral argument on the motion to dismiss.  Minute Entry, Doc. No. 42.  At that hearing, although the parties' arguments were directed towards whether

---

[7] Yout does not explain why the RIAA sent multiple notices or which of them prompted Google to delist Yout's service.

YouTube's access control mechanisms were effective and whether Yout's technology circumvented them, the disputes principally focused on the nature of YouTube and Yout's technologies. *See generally* Hrg. Tr. (August 5, 2021), Doc. No. 46. I observed that the parties' arguments had "wandered well, well beyond the complaint," and I invited the parties to consider filing a joint stipulation of facts or engaging in limited discovery in service of a motion for summary judgment. *Id.* at 48:12-13, 48:4-9. I also encouraged Yout to file an amended complaint detailing its technology with more specificity. *Id.* at 47:12-48:17. Anticipating a second amended complaint, I granted the RIAA's motion to dismiss the amended complaint without prejudice and granted Yout leave to amend its amended complaint. *Id.* at 50:21-23.

On September 4, 2021, Yout filed a four-count second amended complaint (the "Second Amended Complaint" or the "instant complaint"). *See* SAC, Doc. No. 45. Count One seeks a declaratory judgment that Yout's software does not violate 17 U.S.C. § 1201. *Id.* at 25-26 ¶¶ 66-127. Count Two alleges that the RIAA violated section 512(f) of the DMCA, 17 U.S.C. § 512(f), by knowingly misrepresenting that Yout's software circumvents YouTube's "rolling cipher" in take down notices sent to Google. *Id.* at 27-28 ¶¶ 129-48. Counts Three and Four allege that the RIAA's take down notices constituted business disparagement and defamation *per se*. *Id.* at 29-32 ¶¶ 149–82.

The RIAA moved to dismiss the Second Amended Complaint on October 20, 2021, doc. no. 49, which Yout opposed on February 18, 2021, doc. no. 35. The RIAA filed a reply on January 5, 2022. Doc. No. 56. I heard oral argument on August 25, 2022. Doc. No. 59.

## II.     Standard of Review

When deciding a motion to dismiss pursuant Federal Rule of Civil Procedure 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable

inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

## III.    Discussion

The RIAA moves to dismiss this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). I grant the RIAA's motion to dismiss the declaratory judgment claim, rendering the subsequent claims meritless.

### A.    Count One (Declaratory Relief Under 17 U.S.C. § 1201)

In the first cause of action, Yout seeks a declaratory judgment that its platform does not violate 17 U.S.C. § 1201. SAC, Doc. No. 45, at 25. I begin with an overview of the pertinent statutory scheme, then apply the statute to the case at bar.

1.  *The Applicable Law: The Digital Millennium Copyright Act*

The Copyright Act provides copyright protection for "original works of authorship fixed in any tangible medium of expression," including "musical works" and "motion pictures and other audiovisual works." 17 U.S.C. § 102(a). The Copyright Act endows the owners of copyrighted works the exclusive right to distribute copies of such works and to perform those works via digital audio transmission. *See* 17 U.S.C. § 106. A copy is a "material object . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated either directly or with the aid of a machine or device." 17 U.S.C. § 101. An individual commits copyright infringement by violating one or more of the exclusive rights of the copyright owner, as set forth in the Copyright Act. *See id.* For example, an individual infringes when, *inter alia*, reproducing, distributing, publicly displaying a protected work, or publicly and digitally playing a sound recording in an unprivileged manner. *Id.*

The Digital Millennium Copyright Act ("DMCA") was enacted to "strengthen copyright protection in the digital age," in an era in which Congress expressed concerns about the "ease with which pirates could copy and distribute a copyrightable work in digital form." *Universal City Studios v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001). Congress sought to protect the interests of copyright owners and encourage owners to make digital works more readily available. *See* S. Rep. No. 105-190, at 8 (1998). Congress did so by enacting three prohibitions.

In the first, Congress enacted the anti-circumvention provision set forth in subsection 1201(a)(1), which provides that "[n]o person shall circumvent a technological measure that effectively controls access to" a copyrighted work. 17 U.S.C. § 1201(a)(1)(A). This so-called "access control" or "effective access" provision "bars one whom technology locks out of a

9

copyrighted work from breaking into it." 4 Nimmer on Copyright § 12A.03[A][1] (2022) (cleaned up).

In the second, Congress enacted the anti-trafficking provision set forth in subsection 1201(a)(2), which proscribes "manufactur[ing], import[ing], offer[ing] to the public, provid[ing], or otherwise traffic[king] in any technology, product, service, device, component, or part thereof" that satisfies one of the following criteria:

> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. § 1201(a)(2).  In other words, the anti-trafficking provision forbids trafficking in services or devices that aid an individual to circumvent a technological measure.  David Nimmer, *Appreciating Legislative History the Sweet and Sour Spots of the DMCA's Commentary*, 23 Cardozo L. Rev. 909, 921 (2002) [hereinafter Nimmer, *Legislative History*].

In the third, Congress adopted the "additional violations" provision, including subsection 1201(b), which proscribes "manufactur[ing], import[ing], offer[ing] to the public, provid[ing], or otherwise traffic[king] in any technology, product, service, device, component, or part thereof" that satisfies one of the following criteria:

> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;
>
> (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively

10

protects a right of a copyright owner under this title in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

17 U.S.C. § 1201(b).  Whereas subsection 1201(a) focuses on technological measures that "control access" to a copyrighted work, subsection 1201(b) focuses on technological measures that "protect[]" or control "a right of a copyright owner."[8]  Because a copyright owner's rights include an exclusive right to reproduce a copyrighted work and to distribute copies by sale or otherwise, 17 U.S.C. § 106, subsection 1201(b) is often deemed the "copy-control" provision.

Section 1201(c)(3) further provides that "[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title." 17 U.S.C. § 1201(c)(3).

   2.  *Declaratory Relief Under the Anti-Circumvention Provision, 17 U.S.C. § 1201(a)(1)*

To obtain a declaratory judgment that Yout does not violate 17 U.S.C. § 1201(a)(1), the anti-circumvention provision of the DMCA, Yout must plausibly plead that the copyrighted works are not protected by a "technological measure" that "effectively controls access" to the works or that Yout does not circumvent an effective technological measure to access the works. 17 U.S.C. § 1201(a).

The RIAA argues that Yout fails to state a plausible claim for a declaratory judgment that its service does not violate the anti-circumvention provision of the DMCA for three reasons: (1) common sense and Yout's allegations establish that YouTube employs technological measures

---

[8] Professor Nimmer explains that the anti-circumvention provision "protects the sanctity of the copyright owner's 'castle'" whereas the copy-control provision governs "violations of the seigneur's edict, once access to his stronghold has been freely granted."  Nimmer, *Legislative History*, at 948-49.

that, "in the ordinary course of [YouTube's] operation," require "the application of information,"
"a process," or "a treatment" authorized by the copyright owner to access the digital file copies
of copyrighted works; (2) Yout "circumvents" YouTube's technological measures by "avoiding"
or "bypassing" them; and (3) Yout does not and cannot allege that it acts "with the authority of"
copyright owners.  *See generally* Docs. No. 49 and 49-1.

There is no dispute that Yout constitutes "technology" within the meaning of the DCMA,
but every other aspect of the analysis is contested.  I address each issue seriatim and conclude
that Yout has not plausibly pled that YouTube lacks a technological measure; that Yout has not
plausibly pled that the YouTube technological measure is not effective; that Yout has not
plausibly pled that Yout has not circumvented the YouTube technological measure; and that
Yout has not plausibly pled that Yout has not violated section 1201(a) of the DMCA.

> a. Yout's allegations suggest that YouTube has a "technological measure" that
>    controls access to copyrighted works, within the meaning of 17 U.S.C. § 1201(a).

Yout attempts to frame the core dispute in connection with the RIAA's motion to dismiss
as whether YouTube has a "technological measure" that "controls access" to a copyrighted work
in the first place.[9]  Yout argues that YouTube has no technological measure to circumvent
because YouTube offers "publicly available means" to download files "freely given in the
ordinary course of users streaming videos via a web browser."  Opp'n, Doc. No. 55, at 5 (citing
SAC, Doc. No. 45, at 23 ¶ 102); *see also* SAC, Doc. No. 45, at 22 ¶¶ 96-101.  Yout's step-by-
step instructions imply that any layperson can access the files Yout's software downloads, access
that Yout merely "automates" to "accomplish the same result."  *Id*. at 10-18 ¶¶ 62-77, 23 ¶ 102.

---

[9] The parties interchangeably use the phrase "technological measure," "technical protection measure," and "TPM" to
describe this concept.

For its part, the RIAA counters that YouTube has a technological measure because, *inter alia*, "[t]here is no download button or other feature [on a YouTube watch page] that allows users to copy the underlying digital files," that consumers would not need Yout if YouTube's files were freely accessible, and that Yout's "convoluted" step-by-step instructions rebut its claim of "freely given" access and suggest that, in the "ordinary course," an "ordinary" YouTube user does not engage in the enumerated procedure.  Mem. of Law, Doc. No. 49-1, at 9.

To determine whether Yout plausibly pleads that its technology does not violate the DMCA because YouTube has no technological measure for Yout to circumvent, I begin by defining "technological measure."  Applying that definition to the allegations in the Second Amended Complaint, it appears that YouTube does have a technological measure in place.  Accordingly, I conclude that Yout does not plausibly allege that YouTube lacks a technological measure.

       i.   A "technological measure," within the meaning of 17 U.S.C. § 1201(a), is an "access control."

To decide the contested issue of whether YouTube has a "technological measure," within the meaning of section 1201(a), I must begin by defining a technological measure.  The statute itself does not expressly define the phrase, the parties do not expressly propose their own definition, and no judicial decision that I have found appears to define technological measure separately from an effective technological measure.  By necessity, I linger on this first step of the analysis.

In the Second Amended Complaint, Yout seems to define "technological measure" as a measure "put in place by a copyright owner to control access to a copyrighted work."  SAC, Doc. No. 45, at 21 ¶ 89.  At oral argument Yout's counsel repeatedly seemed to define "controls access" by asserting that a technological measure "prevents" access to a protected work.  Hrg.

Tr. (Aug. 25, 2022), Doc. No. 60, at 48:9.  The RIAA appears to define "technological measure" as a measure that "requires the application of information, or a process or a treatment" to gain access to a copyrighted sound or video recording "in the ordinary course of [the technological measure's] operation," the same way it defines an effective technological measure.  Reply, Doc. No. 56, at 6 (quoting 17 U.S.C. § 1201(a)(3)(B)).  Looking to the statutory text and precedent, I hold that a technological measure, within the meaning of subsection 1201(a), is a technology that "controls access" to a work protected by copyright.

First, I begin with the text of the statute.  *Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163, 173 (2009).  Section 1201(a) provides that "[n]o person shall circumvent a technological measure that effectively controls access to [a copyrighted work]."  17 U.S.C. § 1201(a). Although the statute defines the phrase "to 'circumvent' a technological measure" and further defines "a technological measure [that] 'effectively controls access to a work'," the statute does not likewise define the phrase "technological measure."  *See* 17 U.S.C. § 1201(a)(3).  That said, section 1201(a) appears to speak for itself that a "technological measure," within the meaning of section 1201(a), is a technology that "controls access" to a copyrighted work.

Second, courts appear to have embraced a literal definition of the phrase.  *See*, *e.g.*, *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440-41 (2d Cir. 2001) ("the focus of subsection 1201(a)(2) is circumvention of *technologies designed to prevent access* to a work") (emphasis added); *Universal City Studios, Inc. v. Reimerdes,* 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000) ("defendants' construction, if adopted, would limit the application of the statute to *access control measures* that thwart circumvention, but withhold protection for those measures that can be circumvented") (emphasis added); *accord Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864 (9th Cir. 2017) ("§ 1201(a) governs *TPMs that control access* to copyrighted works")

(emphasis added); *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 n.17
(Fed. Cir. 2004) ("a technological measure *controlling access* to a copyrighted work") (emphasis
added); *Prudent Tr. Co. Ltd. v. Touray*, 2014 WL 12575854, at *5 (C.D. Cal. Nov. 25, 2014)
("technological measures that allowed [the plaintiff] *access to control* its copyright-protected
work").[10]

Employing a literal "access control" definition begs an obvious question: How restrictive
must an access control be to constitute a technological measure?  In an oft-repeated phrase,
Congress once described circumvention as "the electronic equivalent of breaking into a locked
room in order to obtain a copy of a book." *Reimerdes*, 111 F. Supp. 2d at 316 (S.D.N.Y. 2000)
(quoting H.R. Rep. No. 105–551, at 17 (1998)).  The Second Circuit has implied that section
1201(a) governs "technologies designed to *prevent* access to a work," characterizing
technological measures as "digital walls," including encryption codes or password protections,
and likening the content scrambling system at issue in *Corley* to a "lock on a homeowner's door,
a combination of a safe, or a security device attached to a store's products." *Corley*, 273 F.3d at
441, 443, 453 (emphasis mine).

Judicial rulings regarding anti-circumvention, including *Corley*, often address the two
technological measures expressly provided for in the DMCA: "scrambled" and "encrypted"
works.  *E.g.*, *id*. at 453 (holding that Content Scramble System ("CSS") encryption, a technology
protecting motion pictures on DVDs through an algorithm scheme configured by a set of "keys,"
constituted an access control); *accord CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 110 (1st Cir.
2008) (determining that a cable company's pay-per-view system, which scrambled pay-per-view
programming unless a subscriber purchased the content, constituted an access control).  But the

---

[10] In *VidAngel*, the Ninth Circuit rejected the notion that a technological measure "cannot serve as both an access
control and a use control" while holding that the access control and rights control regimes were discrete within the
statute.  869 F.3d at 864.

definition of "circumvent a technological measure" in the DMCA suggests that scrambling and encryption are *prima facie* examples of technological measures (and *prima facie* examples of effective technological measures, at that). *See* 17 U.S.C. § 1201(a)(3)(A) ("to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner"). As the *Reimerdes* court explained, "the House Commerce Committee made clear that measures based on encryption or scrambling 'effectively control' access to copyrighted works." 111 F. Supp. 2d at 318 (citing H.R. Rep. No. 105–551 at 39 (1998)). Accordingly, courts in the Second Circuit and beyond have uniformly held that scrambling and encryption are access control measures. *See Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 463 (E.D.N.Y. 2012) (regarding scrambling-based encryption); *Paramount Pictures Corp. v. 321 Studios*, 2004 WL 402756, at *1 (S.D.N.Y. Mar. 3, 2004) (regarding CSS encryption); *Macrovision v. Sima Prods. Corp.*, 2006 WL 1063284, at *1 (S.D.N.Y. Apr. 20, 2006) (same). In my view, however, the special status accorded to scrambling and encryption in the statute suggests limits on the instructiveness of those decisions when the technological measure is neither scrambling nor encryption, which is the case in the case at bar.

To decide the extent of restrictiveness effected by "technological measure" other than through scrambling and encryption, I look to "the particular statutory language at issue." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). I begin with the plain and ordinary meaning of the phrase "controls access." Merriam Webster defines control as "to exercise restraining or directing influence over" and access as "freedom or ability to obtain or make use of something." *Control*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/control (last

visited August 9, 2022); *Access*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/access (last visited August 9, 2022). Taken together, the plain meaning of a measure that "controls access" to a protected work appears to be broader than a measure that "prevents" access to a copyrighted work. In the instant context, the plain meaning of the phrase "controls access" may include technical protective measures that restrain a YouTube user's freedom or ability to access the location where downloadable files are stored and download them.

Turning to "the language and design of the statute as a whole," *K Mart Corp.*, 486 U.S. at 291, section 1201 of the DMCA suggests that it should be relatively easy for a technology to constitute a technological measure. The statute distinguishes a technological measure from one that "effectively" controls access to a protected work, as defined in subsection 1201(a)(3)(B). Obviously, a "technological measure" must encompass a broader range of measures than an "effective" measure. Further, the statute treats the existence of a technological measure (and the existence of an effective technological measure) as a separate inquiry from circumvention of that measure, defining an effective technological measure separately from the act of "circumvent[ing]" such measure. *See* 17 U.S.C. § 1201(a)(3)(A). The logical implication of section 1201 as a whole is that whether an access control is effective or whether it has been circumvented does not necessarily bear on whether, as a threshold matter, it "controls access."

Two, as I address in the next section, prevailing precedent construes the term "effective" capaciously and holds that a technological measure need not establish an impenetrable barrier around a protected work to be "effective" as a matter of law. Therefore, to define a technological measure in a manner that requires an access control to be more restrictive than an "effective" access control would engender an absurd result, which should be avoided. *K Mart*

*Corp.*, 486 U.S. at 325 n.2 (Scalia, J., concurring) ("[I]t is a venerable principle that a law will not be interpreted to produce absurd results.").

Three, construing "technological measure" capaciously is consistent with the purposes of the Copyright Act.  Although the DMCA reflects Congress's intent that scrambling and encryption are technological measures *per se*, scrambling and encryption do not constitute an exhaustive list of technological measures.  Rather, Congress used broad enough language to ensure that the DMCA would accommodate new and evolving technologies.  Accordingly, an access control need not necessarily "prevent access" in the way that a "lock," a "safe," or a "security device" do, as suggested by the Second Circuit, to constitute a technological measure. *Corley*, 273 F.3d at 441, 453.  For that reason, the Second Amended Complaint's allegations that YouTube does not have a DRM regime nor any "password, key, or other secret knowledge" do not compel the conclusion that YouTube lacks a technological measure, just that it lacks the specified technological measures.  SAC, Doc. No. 45, at 8 ¶ 57, 23 ¶ 99.

A related issue is whether, as Yout asserts, a technological measure must be put in place by a copyright owner himself or herself.  *See* SAC, Doc. No. 45, at 21 ¶ 89.  To Yout, YouTube cannot have a technological measure because the copyright owner— not a third party like YouTube— must put the measure in place.  For this theory, Yout relies on testimony before the House Judiciary Committee for the proposition that that "[t]he act of circumventing a technological protection measure *put in place by a copyright owner* to control access to a copyrighted work is the electronic equivalent of breaking into a locked room in order to obtain a copy of a book."  Hrg. Tr. (Aug. 25, 2022), Doc. No. 60, at 55:23 - 56:5 (citing *Reimerdes*, 111 F. Supp. 2d at 316 (quoting H.R. Rep. No. 105–551 at 17 (1998) (emphasis added))).  I am not persuaded.

Yout's argument is contrary to the plain text of the statute, which does not set forth a requirement that the copyright owner put a technological measure in place.  *See*, *e.g.*, 17 U.S.C. § 1201(a) (providing that "[n]o person shall circumvent a technological measure that effectively controls access to a [protected] work," without specifying who must put the access control in place).  The statute defines circumvention and effectiveness in reference to the "authority of the copyright owner," but it does not require that the copyright owner establish an access control. *See id*. § 1201(a)(3).  Accordingly, the text suffices to resolve the issue, and I may not use legislative history to read a requirement into the DMCA that Congress did not legislate.  *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (advising that, "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself" and that "[w]here, as here, that examination yields a clear answer, judges must stop").  Accordingly, I reject Yout's contention that a copyright owner must be the one who puts a technological measure in place.

> ii.  <u>YouTube appears to have a technological measure, within the meaning of 17 U.S.C. § 1201(a).</u>

Yout asserts that YouTube lacks a technological measure in the first place; thus, the allegations in the Second Amended Complaint make the task of defining the YouTube technological measure somewhat challenging.  Nevertheless, I conclude there is enough information in the Second Amended Complaint to answer the threshold question of whether YouTube has a technological measure in the affirmative, and to conclude that Yout does not plausibly plead that YouTube lacks a technological measure, within the meaning of section 1201(a).  Applying the plain language "access control" definition, I conclude that Yout does not plausibly allege that YouTube lacks a TPM, because the Second Amended Complaint appears to

allege that YouTube's technology restrains a user's freedom or ability to access and download video and audio files.

Yout repeatedly alleges that YouTube streams content.  SAC, Doc. No. 45, at 23 ¶ 99 ("Yout's software . . . reads and interprets the JavaScript program . . . to initiate the video *stream*."), 10 ¶ 35 ("If one chooses to *view* [a music video on YouTube], the music video can be *viewed* at a specific URL.") (emphasis added).  Indeed, the Second Amended Complaint contains a screenshot of a YouTube player page in which it is self-evident that a user can stream a video by pressing the "play" button.  *See id.* at 10 ¶ 64.  From the face of the Second Amended Complaint, the YouTube player page appears to contain the following options: a play button, a next button, a speaker button, a gears button, and several buttons that appear to control the size of the YouTube player within the window.  *Id.*  It is self-evident from the screenshot that YouTube does not readily offer a download button or another feature by which the user may access a downloadable audio or video file.  YouTube, then, restrains its users' access to audio, video, and audio/video files by directing users to stream, not download, audio and video.

At the same time, Yout alleges that its platform creates downloadable files of streaming content.  *E.g.*, SAC, Doc. No. 45, at 6 ¶ 38 ("Yout's software platform facilitates a user preserving an audio portion of streamed sound or video content by storing it locally on the user's computer. . . ."), 22 ¶ 98 ("A person could use Yout to save [a] recording on their personal computer for later viewing," including when that person lacks connectivity sufficient to support "streaming content.").  In other words, Yout facially alleges that its platform accomplishes a task contrary to YouTube's restraints, which direct the user to stream rather than download.

Sources of which I may take judicial notice corroborate my understanding of YouTube's technology, without supplementing the allegations in the Second Amended Complaint.  For

example, YouTube's terms of service assert that the platform contains "features that . . . limit the use of the Service or Content" to streaming.[11]  Terms of Service, Doc. No. 49-2, at 7.  In a recent ruling granting record companies default judgment in an anti-circumvention case against a different platform employing the same youtube-dl application, the Eastern District of Virginia made a finding of fact that "YouTube's standard service does not allow users to download the videos or audio files streamed on the watch pages, and users are faced with technological obstacles in accessing the media-file URLs in the media page source codes."  *UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907, *4 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, No. 1:18-cv-957, Doc. No. 144 (E.D. Va. Feb. 10, 2022).  Although the allegations in the Second Amended Complaint make defining the YouTube technological measure difficult, I comfortably conclude that YouTube has some sort of access control in place.

Nevertheless, to assess whether Yout plausibly pleads that the technological measure is not effective and/or not circumvented, I must identify the technological measure at issue in greater specificity.  To do so, I rely on the allegations in the Second Amended Complaint and logical inferences.  The task is not easy.   The Second Amended Complaint is vague about Yout's technology, even though I directed Yout to provide more detailed allegations regarding its technology when granting Yout leave to amend its original complaint.  *See* Hrg. Tr. (Aug. 5, 2021), Doc. No. 46, at 48:21-24 ("I'm thinking that the complaint probably should be resubmitted with greater detail. That would permit a more meaningful determination of the motion to dismiss.").  In addition to being vague, the Second Amended Complaint employs consequential terms that it does not clearly define— including youtube-dl, ffmpeg, "request

---

[11] *See McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 600 n.2 (S.D.N.Y. 2020) (taking judicial notice of Instagram's terms of service because the terms are "publicly accessible; there is no dispute as to the authenticity of the items; and while the meaning of the terms in the items may be in dispute, the existence of the terms themselves is not" (citing Fed. R. Evid. 201(b)(2)).

URL," "signature mechanism," "signature value," and "rolling cipher"— and uses those terms to describe or to object to the RIAA's characterizations of the salient technologies.  In my view, the Second Amended Complaint's limited description of YouTube and Yout's technologies is especially noteworthy in light of the stark contrast between those anemic allegations in contrast to its precise statements about protections YouTube does not have (no DRM, password, key, or other secret knowledge) and its meticulous instructions about how to download video and audio files via the Chrome browser without using Yout's technology.  *See* SAC, Doc. No. 45, at 23 ¶¶ 99-100.

To define the YouTube technological measure, I draw on and draw out the Second Amended Complaint's allegation that Yout merely "automates" a "process already available using common web browsers" by which a user may access and download audio and video files from YouTube.  SAC, Doc. No. 45, at 23 ¶ 102; Opp'n, Doc. No. 55, at 5.  To illustrate this point, the Second Amended Complaint explains how to access and download file using the Developer Tools function in the Chrome browser.  *See* SAC, Doc. No. 45, at 10-18 ¶¶ 63-77.  I walk through the steps in turn.

To begin, Yout directs the reader to the URL of a music video on YouTube.  There, the music video appears on a typical YouTube page, against a white background and accompanied by the characteristic features of YouTube: a search bar above the video, a description below, and a menu of other videos on the right.  SAC, Doc. No. 45, at 10 ¶ 64.

Once there, Yout advises the reader to select the following options in a prescribed sequence from "the Chrome menu bar," using the MacOS operating system: the "View" menu, the "Developer" submenu, and the "Developer Tools" submenu.  *Id.* at 10-11 ¶¶ 64-65.  As a result, frames that seem to display YouTube source code appear.  *Id.*  At that point, the reader

must open the "Network" tab.[12]  *Id.* at 10-11 ¶¶ 64-66.  Within the Network frame, columns

headed as follows appear: name, status, type, initiator, size, time, and waterfall.  *Id.* at 11 ¶ 67.

Even though the display does not use the word "file" anywhere, Yout alleges that the Network

tab provides the opportunity to sort files by size, *id.*, and from there "observe" and "copy" the

"Request URL," *id.* at 12 ¶ 68.  The Second Amended Complaint does not define "Request

URL," but I infer that it is a function of the "signature mechanism" of the "JavaScript program

sent by YouTube" that Yout alleges a browser must "read[] and interpret[]" in order to "initiate

[a] video stream."  *Id.* at 22 ¶ 98.

At the end of the "Request URL" code, the phrase "range=" appears and is immediately

followed by a "sequence of numbers."  *Id.* at 13 ¶ 69.  In the screenshot of the Network tab, the

"range=" sequence is visible in the bottom line of code and appears to be "6713723-8113387."

*Id.* at 12 ¶ 68.  I infer that the "range=" sequence constitutes the "signature value" that Yout

alleges the browser specifically "sends . . . back to YouTube to initiate the video stream," and

that Yout alleges the RIAA refers to as a "rolling cipher" in the take down notices.  *Id.* at 22 ¶

98.

Yout next alleges that the Request URL can be copied and pasted into a new browser

window, that the first value in the "range=" sequence "can be modified to begin at 0," and that

the modified Request URL code will return a full-size video, "albeit without sound."  *Id.* at 12-

14 ¶¶ 68-70.  The resulting video display is unlike the YouTube player page at which this

journey began, because it does not contain the previously-described features of a YouTube

player page.  *Compare id.* at 10 ¶ 64 *with* 14 ¶ 70.  In contrast, the post-modification player

provides the music video on a black background and offers the following features: a play button,

---

[12] For clarity, I supplement the text of the Second Amended Complaint with narrowly-drawn inferences arising from the screenshots included with the text.  For example, the Seconded Amended Complaint does not direct the reader to select the "Network" tab, but the necessity of doing so is evident from the included screenshot.

a speaker button, a full-size-window button, and a heretofore-unseen three-dot menu.  *Id.* at 14 ¶ 70.  Unlike the YouTube player page at which this journey began, the post-modification player window's three-dot menu contains a "Download" option.  *Id.* at 14-15 ¶¶ 70-71.  By selecting Download, the Chrome Browser will access and download an MP4 file for the music video, in full and without sound, to the user's computer.  *Id.* at 15 ¶ 72.  The reader may then play the locally-stored MP4 file using video player software.  *Id.*

Yout next advises that the user may repeat a substantially similar version of the aforementioned steps to find the audio file, locating the "shorter URL" in the Network frame and separately downloading the MP3 audio, in full but without video, to the user's computer.  *Id.* at 16-17 ¶ 73-74.

Yout, however, never alleges that a user may follow the enumerated steps to download a video with audio, such as the music video an individual may play from the YouTube player page on which this journey began.

In my view, it is evident from the Second Amended Complaint that Yout alleges that YouTube has a technological measure in place.  As explained, YouTube directs users to stream videos and, by not making a download option readily available on the player page, restrains users' ability to access and copy audio and video files.  Indeed, from Yout's own allegations, YouTube appears to altogether prevent users from accessing and copying audio/video files.  Moreover, initiating a stream requires a browser to read and interpret the signature mechanism and to derive a signature value.  Unleashing access to the downloadable audio or video files requires modifying the "range=" sequence, which I infer is the "signature value" without which there is no stream.  Without modifying the signature value, there is no access to the downloadable file.  Because Yout alleges that the download option only appears in the post-

modification player window and will not work without modifying the "range=" value, I infer from the allegations that the "signature value" must constitute an access control.

Furthermore, the Second Amended Complaint fatally undermines Yout's claim that YouTube makes the files Yout users download "freely available" without a TPM, because Yout does not actually allege that the enumerated steps yield the same outcome as its platform. To be precise, the Second Amended Complaint alleges that a person can download an audio/video file using Yout. *See* SAC, Doc. No. 45 at 6 ¶ 39 ("If the person seeks *video and audio*, the person can choose the MP4 format.") (emphasis added). In contrast, Yout does not allege that YouTube freely gives videos *with their audio*. Indeed, Yout clarified at oral argument that Yout creates combined audio/video files using ffmpeg software, which is not alleged to be part of the steps Yout "automates" in the Second Amended Complaint. *See* Hrg. Tr. (Aug. 25, 2022), Doc. No. 60, at 41:23-24. Plainly, then, the steps outlined to download content via Chrome's Developer Tools menu are not "automated" by Yout's technology as asserted. Instead, the lengthy recitation of steps to access the location where YouTube stores video and audio files illustrates that YouTube "exercises restraining or directing influence over" its users in a manner that limits their "freedom and ability" to access the downloadable files and make local copies of them.

Accordingly, I conclude that Yout's argument that YouTube lacks a technological measure— undermined by its own allegations— is unavailing.

      iii.  <u>Yout's theory that YouTube lacks a "technological measure" relies on inapposite caselaw.</u>

Finally, I observe that Yout's technological measure theory appears to be entirely legally unsupported. The only decision on which Yout relies for its proposition that YouTube lacks a technological measure is inapposite, because the decision does not define "technological measure" or focus on whether the technology at issue constituted a technological measure.

Specifically, Yout appears to rely on *DISH Network L.L.C. v. World Cable Inc.* Opp'n, Doc. No. 55, at 11 (citing to 893 F. Supp. 2d 452 (E.D.N.Y. 2012)).  In that case, subscription-based satellite television distributor DISH Network employed a "conditional access system" to secure its satellite signals, limiting access to its signals to its subscribers.  *Id.* at 456.  DISH Network alleged that defendant telecommunications distributor World Cable violated 17 U.S.C. § 1201(a)(1) by descrambling the satellite signals using DISH Network's affiliated receiver/decoding devices and rebroadcasting channels to which DISH Network had exclusive rights.  *Id.* at 466.

However, that decision does not shed light on the meaning of "technological measure," because the Eastern District of New York observed that there was "no dispute" that DISH Network's conditional access system constituted a technological measure that effectively controlled access to the encrypted satellite signals.  *Id.* at 462-63.  There also was no dispute that the defendants had accessed the encrypted signals.  *Id.*  Instead, as Yout explains, the decision principally addressed the meaning of "circumvention."  *Id.* at 466.  Therefore, I cannot conclude that *World Cable* supports Yout's theory that YouTube lacks a technological measure.

>   b.   Yout has not plausibly alleged that the YouTube technological measure does not "effectively" control access to the copyrighted works.

Under section 1201(a), a technological measure "effectively controls access" to a copyrighted work "if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).  Because the legal standard does not require airtight protection, I agree with the RIAA that Yout does not plausibly plead that YouTube lacks an effective TPM.

As a threshold matter, I agree with the RIAA that the "ordinary course" language in subsection 1201(a)(3)(B) requires evaluating efficacy from the point of view of an "ordinary consumer" using the platform in the "ordinary course of its operation."  *See RealNetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 932 (N.D. Cal. 2009) ("A plain reading of this statutory language means that access-control is at the level of an ordinary consumer.").  The parties appear to vigorously dispute the meaning of the "ordinary consumer."  The Second Amended Complaint— with its step-by-step instructions and references to other instructions available on the internet— suggests that the ordinary consumer can do what Yout alleges its platform does.  In contrast, the RIAA suggests that the YouTube technological measure is effective precisely because the ordinary consumer cannot easily make use of the "signature mechanism" independent of the Yout platform.  Mem. of Law, Doc. No. 49-1, at 16 ("[I]f the average consumer could bypass YouTube's TPMs, there would be no need for Yout to exist.").

In my view, I do not need to resolve the definitional dispute regarding the ordinary consumer because, even assuming *arguendo* that an ordinary user can access the downloadable files, Yout does not plead that an ordinary user does so in the ordinary course.  Although I must construe all inferences in favor of the plaintiff on a motion to dismiss, I do not need to check common sense at the door.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  The steps outlined constitute an extraordinary use of the YouTube platform, which is self-evident from the fact that the steps access downloadable files through a side door, the Developer Tools menu, and that users must obtain instructions hosted on non-YouTube platforms to explain how to access the file storage location and their files.  As explained in the previous section, the ordinary YouTube player page

provides no download button and appears to direct users to stream content. I reasonably infer, then, that an ordinary user is not accessing downloadable files in the ordinary course.

I now turn to the legal question at bar, whether Yout plausibly alleges that YouTube does not have an effective technological measure in place. Yout argues that YouTube lacks a TPM; thus, YoutTube must also lack an effective TPM. The RIAA counters that YouTube employs a TPM satisfying the statutory definition of an effective technological measure because, "in the ordinary course of its operation," YouTube requires "the application of information," "a process," or "a treatment" authorized by the copyright owner to access the digital file copies of copyrighted works. Mot. to Dismiss, Doc. No. 49, at 2 (citing 17 U.S.C. § 1201(a)(3)(B)). I agree with the RIAA that Yout's claim must fail in light of the capacious understanding of an effective measure under prevailing precedent.

Under section 1201(a), a technological measure effectively controls access to a copyrighted work "if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). Binding authority has not set the contours of an effective technological measure under section 1201, but many courts (and the RIAA) rely on the plain language of subsection 1201(a)(3)(B) to conclude that an effective technological measure entails "the application of information," "a process," or "a treatment" that functions to control access. *E.g.*, *Reimerdes*, 111 F. Supp. 2d at 318 ("a technological measure 'effectively controls access' to a copyrighted work if its *function* is to control access") (emphasis added); *accord JCW Software, LLC v. Embroidme.com, Inc.*, 2012 WL 13015051, at *10 (S.D. Fla. May 29, 2012) ("So long as the technological measure, in the ordinary course of its operation, functions to prevent access to a copyrighted work, it does not matter whether it provides a strong means of

protection.") (cleaned up); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d

1085, 1094-95 (N.D. Cal. 2004); *Realnetworks, Inc. v. Streambox, Inc.*, 2000 WL 127311, *7

(W.D. Wash. Jan. 18, 2000); *see also* 4 Nimmer On Copyright § 12A.03.

Here, the Second Amended Complaint suggests that YouTube's technological measure is

effective by alleging that YouTube has technology that functions to control access to

downloadable files. *See id.* at 318. Yout's allegations demonstrate that YouTube applies

information and a process— specifically, that YouTube utilizes the signature value, after it is

interpreted from the JavaScript program sent by YouTube— to "restrict" access YouTube

content and "direct" users to stream content. *See* SAC, Doc. No. 45, at 22 ¶ 98. Indeed, it does

not appear to be meaningfully disputed that Yout's technology must employ a "process" to

access copyrighted works, because the Second Amended Complaint repeatedly makes use of the

term. *See* SAC, Doc. 45, at 45 ¶ 73, 17 ¶ 76, 20 ¶ 79, 21 ¶ 91, 23 ¶ 102. Accordingly, under this

literal definition, Yout does not plausibly allege that the YouTube TPM is not an effective

technological measure.

Although Yout seems to suggest that YouTube lacks an effective TPM because its

content is not encrypted and its technology does not descramble— though Yout rejects that

characterization of its allegations— the argument is entirely unavailing. SAC, Doc. No. 45, at 4

¶¶ 30-32, 22 ¶ 93. As I have already explained, the definition of "circumvent a technological

measure" in the DMCA indicates that scrambling and encryption are *prima facie* examples of

technological measures, but it does not follow that scrambling and encryption constitute an

exhaustive list. Courts in the Second Circuit and beyond have held that a wide range of

technological measures not expressly incorporated in statute are "effective," including password

protection and validation keys. *E.g., I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*, 307 F.

Supp. 2d 521, 531 (S.D.N.Y. 2004) (password protection); *Adobe Sys. v. Feather*, 895 F. Supp.

2d 297, 302 (D. Conn. 2012) (activation and validation keys for software); *see also Davidson &*

*Assocs. v. Jung*, 422 F.3d 630, 642 (8th Cir. 2005) ("secret handshake" protocols); *Ticketmaster*

*L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1112 (C.D. Cal. 2007) (CAPTCHA).  A

variety of measures may "effectively control[] access" within the meaning of subsection

1201(a)(3)(B).

Importantly, even if the YouTube technological measure can be circumvented, it may still

be effective.  There is a legal consensus that the fact that a person may deactivate or go around a

TPM does not "mean that the technology fails to offer 'effective control,'" because so holding

would render the DCMA "nonsensical." 4 Nimmer on Copyright § 12A.03; *see also Reimerdes*,

111 F. Supp. 2d at 317-18 (if an alternative means of access rendered a technological measure

"ineffective," then "the statute [would] offer protection where none is needed but . . . withhold

protection precisely where protection is essential"); *accord Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 387 F.3d 522, 549 (6th Cir. 2004) (advising same); *Sony Computer Entm't*

*Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965 (N.D. Cal. 2006) (same).  Indeed,

"[n]umerous courts have embraced the proposition that it is irrelevant whether alternative means

of access to the work exist." *JCW Software, LLC*, 2012 WL 13015051, at *10 (collecting cases).

Even the existence of ubiquitous tools to circumvent the TPM will not necessarily render the

measure ineffective as a matter of law.  *See*, *e.g.*, *321 Studios*, 307 F. Supp. 2d at 1095 (rejecting

the argument that the availability of keys on the internet rendered DVD encryption software

ineffective as "equivalent to a claim that, since it is easy to find skeleton keys on the black

market, a deadbolt is not an effective lock to a door"); *DVD Copy Control Ass'n*, 641 F. Supp. 2d

at 932 (rejecting the claim that widespread availability of DVD encryption keys and algorithms

30

rendered the encryption software ineffective); *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 941-42 (N.D. Cal. 2009) ("The fact that circumvention devices may be widely available *does not* mean that a technological measure is not, as the DMCA provides, effectively protecting the rights of copyright owners in the ordinary course of its operation.") (cleaned up).  In other words, the relative strength or weakness of a technological measure is not dipositive regarding its efficacy.  *See, e.g., Reimerdes*, 111 F. Supp. 2d at 317-18 (rejecting argument that the weakness of a 40-bit encryption key rendered it ineffective).

      c.   Yout has not plausibly alleged that its technology does not circumvent the YouTube technological measure.

Yout pleads that its software does not circumvent the allegedly non-existent YouTube TPM because the software simply uses the same process as a web browser and uses a code that is freely given to any user who requests one.  *E.g.*, SAC, Doc. No. 45, at 23 ¶ 102, 25 ¶ 123. Because the "signature value" necessary to access video streams on YouTube is freely given to any JavaScript program that encounters the software without any form of encryption or secret knowledge, Yout argues, no circumvention occurs.  *See* SAC, Doc. No. 45, at 23 ¶ 102.  The argument is unavailing.

To "circumvent a technological measure," within the meaning of Section 1201(a)(1)(A), is "to descramble a scrambled work[;] to decrypt an encrypted work[;] or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).  Beyond the expressly-stated "descrambl[ing]" and "decrypt[ing]," the plain language of the statute suggests that circumvention is limited to

actions that "avoid" or "bypass" a technological measure.  *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015) (citing *World Cable*, 893 F. Supp. 2d at 622).[13]

Yout's allegations suggest that it "bypasses" the YouTube player page and its measures that direct a user to stream content, rather than access files to download.  To bypass is to "avoid by means of a bypass," or a "passage to one side."  *Bypass*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/bypass (last visited August 9, 2022).  As previously explained, the Second Amended Complaint explains how a user may access downloadable video and audio files by making an end-run around YouTube's TPMs via Chrome's Developer Tools menu, and Yout alleges that it merely "automates" such a process.  By bypassing and thereby avoiding the YouTube technological measures, Yout seems to access the files outside of the "ordinary course" by which an "ordinary user" operates YouTube, as set forth in 17 U.S.C. § 1201(a)(3)(B).

Moreover, Yout's technology clearly "bypasses" YouTube's technological measures because it affirmatively acts to "modify[]" the Request URL (*a.k.a.* signature value), causing an end user to access content that is otherwise unavailable.  *See* SAC, Doc. No. 45, at 13 ¶ 69.  As explained, without modifying the signature value, there is no access to the allegedly freely-available downloadable files.  Accordingly, I cannot agree with Yout that there is "nothing to circumvent."  Opp'n, Doc. No. 55, at 5.

---

[13] Yout relies on persuasive authority, *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, for the proposition that "a person circumvents a technological measure only when he affirmatively performs an action that disables or voids the measure that was installed to prevent them from accessing the copyrighted material."  497 F. Supp. 2d 627, 644 (E.D. Pa. 2007).  I respectfully disagree with that decision's statement that a measure can only be circumvented if it is "disable[d] or void[ed]."  *Id.*  In contrast, in its reasoning, the *Healthcare Advocates* court defined "avoid" as including "keep[ing] clear of" and defined bypass as "avoid[ing]."  *Id.*  Those broader definitions are consistent with my reasoning in the case at bar.

       i.   <u>Yout's theory that it does not circumvent YouTube's technological measures</u>
           <u>relies on inapposite caselaw.</u>

Yout again relies on *DISH Network L.L.C. v. World Cable Inc.*, and the decision is

likewise inapposite in this context.  Opp'n, Doc. No. 55, at 11 (citing to 893 F. Supp. 2d 452,

466 (E.D.N.Y. 2012)).  There, the Eastern District of New York concluded that World Cable's

re-broadcasting scheme did not violate the anti-circumvention provision.  *Id.* at 466.

Specifically, the court reasoned that World Cable had authorized access to DISH Network's

signals, because individuals affiliated with World Cable who were DISH Network subscribers

had lawfully obtained the receiver/decoder devices used to decrypt the encrypted satellite

signals; therefore, as a factual matter, World Cable had not used "pirate access device[s]," such

as software supplying descrambling codes or modifying the descrambling/decrypting smartcard.

*Id.*  The court held that, even though the defendants had unauthorizedly re-broadcasted the

content, the defendants' "use of the normal process" to decrypt the encrypted satellite signals

"did not avoid or bypass the conditional access system," because the defendants "used the

intended mechanism[s] . . . in precisely the manner in which they were designed to function."  *Id.*

at 466.

    *World Cable*, as applied to Yout's theory of the case, is readily distinguishable.  There,

the defendants' used "the *normal process*" to decrypt the satellite signal "in precisely the manner

in which [the conditional access system was] *designed to function*."  *Id.* at 466 (emphasis added).

Here, YouTube is a streaming platform, and Yout's lengthy instructions leave no doubt that a

user must go outside of the "normal process" and manner in which the platform was designed to

function— avoiding the YouTube player page and accessing the files via a side door, such as the

Developer Tools menu— to access the downloadable video and audio files.  *See also* Reply,

Doc. No. 56, at 10 (arguing same).  Moreover, as explained, Yout clearly alleges that its platform

bypasses the YouTube technological measure, because Yout's technology requires modifying the signature value of a URL in YouTube's source code to download a file.  SAC, Doc. No. 45, at 13 ¶ 69.

Yout also relies on *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D. Pa. 2007).  In that case, due to a temporary system malfunction on a database service's servers, the plaintiff's intended technological measure failed to provide any restriction on accessing copyrighted content on the servers.  *Id.* at 643.  Specifically, the plaintiff had implemented a robots.txt protocol to shield applications, including the Wayback Machine, from scanning the content on its website and to block users from accessing archived screenshots of the website.  *Id.*  However, due to a malfunction on the Wayback Machine's servers, the application failed to recognize the plaintiff's website's robots.txt protocol.  *Id.*  As a result, the Wayback Machine scanned and archived the plaintiff's website, and the defendant accessed the should-have-been-shielded content.

That decision is also inapposite.  For one, the RIAA successfully distinguishes that case on the basis that *Healthcare Advocates* addressed a malfunctioning service, and Yout's service circumvents YouTube's properly-functioning technological measures.  Reply, Doc. No. 56, at 10-11; *see also Healthcare Advocates*, 497 F. Supp. 2d at 645 ("They did not 'pick the lock' and avoid or bypass the protective measure, because there was no lock to pick.").  But the case is also inapposite for a more persuasive reason.  There, the court took pains to explain that the alleged circumventer "did not use alter[ed] code language to render the [technological measure] void."  *Id*. at 645.  Here, of course, Yout *does* allege that it alters the source code by modifying the initial number in the "range" in the "Request URL" to zero.

Although it is well-established that unauthorized access without circumvention does not constitute a violation of the DMCA, that line of precedent is distinguishable because Yout alleges "avoid[ing] or bypass[ing] the deployed technological measure in the measure's gatekeeping capacity." *I.M.S.*, 307 F. Supp. 521 at 532. Courts consistently conclude that the unauthorized use of an authorized password is not a circumvention under section 1201. *Id.* (concluding that no circumvention occurred when defendant used password intentionally issued by plaintiff to another entity because the DMCA does not provide a cause of action for unauthorized access alone); *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 113 (D.D.C. 2005) ("[U]sing a username/password combination as intended— by entering a valid username and password, albeit without authorization— does not constitute circumvention under the DMCA"); *R.C. Olmstead, Inc. v. CU Interface LLC*, 657 F. Supp. 2d 878, 889 (N.D. Ohio 2009) ("Simply put, [the defendant] did not circumvent or bypass any technological measures of the [plaintiff's] software— it merely used a username and password— the approved methodology— to access the software."); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 692 (D. Md. 2011) ("[U]sing a password or security code to access a copyrighted work, even without authorization, does not constitute 'circumvention' under the DMCA"). The use of an authorized password does not disable or void a technological measure in its gatekeeping capacity, but rather makes use of the technology to gain access without permission. But Yout alleges more than just *using* available information, it also alleges modifying that information to obtain unauthorized access to downloadable files— the kind of unauthorized access that YouTube, as a streaming platform, was designed to gatekeep.

Finally, when arguing that "[t]o prove a violation of § 1201, Defendant's members must show not only circumvention but that the circumvention results in access to a copyrighted work,"

Yout fights an issue that is not meaningfully in dispute.  Opp'n, Doc. No. 55, at 12-13 (citing *Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 237 (D. Mass. 2010), and *Chamberlain Group, Inc. v. Skylink Tech., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004)).  Here, there can be no meaningful dispute that Yout facilitates accessing and copying at least some audio and video content protected by copyright, including but not limited to the example Yout employs in its complaint:  Taylor Swift's "The Lakes (Original Version)."

Accordingly, I agree with the RIAA that Yout's circumvention entails bypassing YouTube's technological measures and modifying YouTube's "signature value" to facilitate unauthorized access to a downloadable digital copy.  Reply, Doc. No. 56, at 10.  Because that bypass and modification constitute a "process," I conclude that Yout does not plausibly allege that it does not circumvent the YouTube TPM, within the meaning of section 1201(a).

> d.   Yout has not plausibly alleged that its technology does not cause unauthorized access to copyrighted works.

Under Section 1201(a)(3)(A), a circumventer may avoid liability by having "the authority" of the copyright owner to employ the particular means of avoiding or bypassing the technological measure.  *Corley*, 273 F.3d at 444 ("That provision exempts from liability those who would 'decrypt' an encrypted DVD with the authority of a copyright owner.").

Yout insists that no authorization is required because authority to access the downloads has "already been provided to everyone in the world."  SAC, Doc. No. 45, at 9 ¶ 61.  Yout further asserts that some content creators "encourage their audience and fans to use Yout to record and play back their original content," implying that those creators are authorizing use of its service.  *Id.* at 7-8 ¶¶ 48-54, 20 ¶ 81.  The argument is inconsistent with binding authority.

In *Corley*, the Second Circuit analogously rejected the argument that someone who buys a copy of a movie on DVD has "the 'authority of the copyright owner'" to access the digital files

therein.  273 F.3d at 444.  There, the panel defined the authority of a copyright owner as the specific authority to engage in the circumventing conduct— the specific authority to avoid, bypass, or otherwise gain access to the digital file of the copyrighted work.  *Id.* (observing that section 1201(a)(3)(A) "exempts from liability those who would 'decrypt' an encrypted DVD with the authority of a copyright owner, not those who would 'view' a DVD with the authority of a copyright owner"); *accord Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865 (9th Cir. 2017) (an owner's right to view the contents of a DVD on an authorized DVD player did not encompass authority to access and copy the digital files on the DVD); *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 943-44 (N.D. Cal. 2009) ("[T]he fair use of the copyrighted material by end users is not a defense to, and plays no role in determining, liability under the DMCA."); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1096 (N.D. Cal. 2004) (rejecting that the DVD owner "has [the] authority of the copyright holder to bypass" and "decrypt CSS" because the owner is permitted to view the contents of a DVD on an authorized player).

Taken together, Yout does not plausibly plead that the copyrighted works are not protected by a "technological measure" that "effectively controls access" to the works or that a "technological measure" is not circumvented to access the works, within the meaning of 17 U.S.C. § 1201(a).

### 3.   *Declaratory Relief Under the Anti-Trafficking Provision, 17 U.S.C. § 1201(a)(2)*

To obtain a declaratory judgment that Yout does not violate 17 U.S.C. § 1201(a)(2), the anti-trafficking provision of the DMCA, Yout must plausibly plead that it does not "manufacture, import, offer to the public, provide, or otherwise traffic in" a technology or

service that circumvents an access control and violates one of the three enumerated conditions. 17 U.S.C. § 1201(a)(2).

"[T]he anti-trafficking provision of the DMCA is implicated where one presents, holds out or makes a circumvention technology or device available, knowing its nature, for the purpose of allowing others to acquire it." *Reimerdes*, 111 F. Supp. 2d at 325. I have concluded that YouTube's technological measures effectively control access to copyrighted works and that Yout's technology is capable of unlawful circumvention, and I conclude that Yout does not plausibly plead that it does not traffic in circumventing technology. The only remaining question under subsection 1201(a)(2) is whether Yout satisfies one of the three necessary conditions it sets forth— whether Yout either "is primarily designed or produced for the purpose" of trafficking in a technology that unlawfully circumvents an access control, "has only limited commercially significant purpose or use other than" such purpose; or is knowingly marketed for such purpose. 17 U.S.C. § 1201(a)(2)(A)-(C). The statute is disjunctive, and only one condition must be satisfied.

First, Yout does not plausibly plead that its website is not designed to circumvent YouTube's technological measures. *See* 17 U.S.C. § 1201(a)(2)(A). Trafficking in circumvention technology violates subsection 1201(a)(2) where its "primary purpose" is to circumvent a technological measure controlling access to copyrighted streaming video or music content. *See, e.g.*, *Realnetworks, Inc. v. Streambox, Inc.*, 2000 WL 127311, *7-*8 (W.D. Wash. Jan. 18, 2000). Yout pleads that its platform is designed to "create," "preserv[e]," and "save" a local copy of certain web content, including copyrighted audio, video, and audio/video content, "on the person's computing device." SAC, Doc. No. 45, at 5 ¶ 34, 6 ¶ 38, 6 ¶ 43. To do so, as I have explained, Yout circumvents YouTube's technological measures.

Second, I cannot conclude that Yout plausibly alleges that its technology has limited other commercially significant purposes other than to circumvent YouTube's technological measures.  *See* 17 U.S.C. § 1201(a)(2)(B).  Yout derives profit from its service downloading streaming audio, video, and audio/video files, apparently by selling advertisements and "pro" subscriptions.  SAC, Doc. No. 45, at 17 ¶ 37 (including screenshots featuring an advertisement and a plea to "Click here to upgrade to PRO"), 31 ¶ 165 (alleging lost profits).

Third, Yout does not plausibly plead that it does not market its technology to circumvent the technological measures.  *See* 17 U.S.C. § 1201(a)(2)(C).  Yout's website describes itself as a "stream recording tool."  SAC, Doc. No. 45, at 17 ¶ 37.  As this opinion repeatedly explains, Yout encourages its users to download copyrighted audio, video, and audio/video content.  As Yout explains, it "created and operates a service by which a person can enter a url linked to . . . Web Content in certain limited formats and create a personal copy on the person's computing device."  *Id.* at 5 ¶ 34.  Its "straightforward" homepage "invites a person to insert a url to Web Content."  *Id.* at 5 ¶ 36.

To any extent that Yout suggests that its platform was not created for the improper purpose of circumventing streaming protections, the *Reimerdes* court advised:

> Whether defendants [developed the technology] in order to infringe, or to permit or encourage others to infringe, copyrighted works in violation of other provisions of the Copyright Act simply does not matter for purposes of Section 1201(a)(2).  The offering or provision of the program is the prohibited conduct—and it is prohibited irrespective of why the program was written, except to whatever extent motive may be germane to determining whether their conduct falls within one of the statutory exceptions.

*Reimerdes*, 111 F. Supp. 2d at 319.  Yout attempts to distinguish itself by describing lawful uses of its platform, but downstream users' lawful or fair use of a platform does not relieve that platform from liability for trafficking in a circumventing technology.  *See 321 Studios*, 307 F.

Supp. 2d at 1097.   Taken together, Yout does not plausibly plead that it does not violate

subsection 1201(a)(2).

Taken together, because Yout has insufficiently pled that its software does not violate 17

U.S.C. § 1201(a)(1) or 1201(a)(2), I **grant** the RIAA's motion to dismiss the Count One of

Yout's complaint.[14]

B. Count Two (Violation of 17 U.S.C. § 512(f))

To hold an internet service provider liable for copyright infringement, the DMCA

requires copyright owners to follow the notice provisions under section 512(c) ("take down

notice").   *See* 17 U.S.C. § 512(c)(3); *see generally Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F.

Supp. 2d 1132 (N.D. Cal. 2008) (explaining the DMCA safe harbors and the notification

process).   To protect against take down notices filed in bad faith, section 512(f) penalizes any

person who knowingly misrepresents under section 512 that a material or activity is infringing.

17 U.S.C. § 512(f). Specifically, section 512(f) of the DMCA provides that:

> Any person who knowingly materially misrepresents under this section (1)
> that material or activity is infringing, or (2) that material or activity was
> removed or disabled by mistake or misidentification, shall be liable for
> any damages, including costs and attorneys' fees, incurred by the alleged
> infringer, by any copyright owner or copyright owner's authorized
> licensee, or by a service provider, who is injured by such
> misrepresentation, as the result of the service provider relying upon such
> misrepresentation in removing or disabling access to the material or
> activity claimed to be infringing, or in replacing the removed material or
> ceasing to disable access to it.

17 U.S.C. § 512(f).

---

[14] Yout broadly seeks a declaration that its technology does not violate 17 U.S.C. § 1201.  The Second Amended
Complaint repeatedly refers to section 1201 broadly.  Yout's memorandum in opposition expressly address
subsections 1201(a)(1) and 1201(a)(2).  In contrast, neither the Second Amended Complaint nor Yout's
memorandum in opposition address whether Yout's technology violates the copy-control provision set forth in
section 1201(b).  Accordingly, I deem the argument that Yout does not violate 17 U.S.C. § 1201(b) waived.

Yout alleges that the RIAA knowingly misrepresented that Yout's software circumvents YouTube's rolling cipher in its take down notices, in violation of section 512(f).  SAC, Doc. No. 45, at 27 ¶ 129 *et seq*.  The RIAA argues that Yout's claim fails as a matter of law because section 512(f) only penalizes knowing misrepresentation of alleged copyright infringement, not circumvention.  Def.'s Mem. of Law, Doc. No. 49-1, at 21.  I agree with the RIAA for the reasons that follow, and I grant the RIAA's motion to dismiss Count Two.

Section 512(f) has is limited to misrepresentations of copyright infringement.  *See Twelve Inches Around Corp. v. Cisco Sys.*, 2009 WL 928077, at *3 (S.D.N.Y. Mar. 12, 2009) ("While Section 512(f) is not explicitly limited to misrepresentation of copyright infringement, it requires that the misrepresentation be 'under [Section 512],' which deals exclusively with copyright infringement, and sets forth in great detail when and how an internet service provider can be liable for copyright infringement"); *Arista Records, Inc. v. MP3Board, Inc.*, 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 29, 2002) ("Section 512 only penalizes copyright holders for knowingly materially misrepresenting 'that material or activity is infringing.' It does not provide a cause of action for knowingly materially misrepresenting [other claims]."); *accord Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (setting forth that a section 512(f) cause of action is an "expressly limited cause of action for improper infringement notifications").

Here, Yout has failed to plead a plausible claim for relief under section 512(f) because it has only alleged that the RIAA knowingly misrepresented that Yout's software circumvents the YouTube technological measures, not that Yout is infringing certain copyrighted works.  *See* SAC, Doc. No. 45, at 28 ¶¶ 138-140.  Although the circumvention notices sent by the RIAA superficially resemble take down notices under section 512(c), the notices do not identify any

copyrighted works and accordingly are incapable of being misrepresentations under section 512. *See id.* at 28 ¶¶ 136-137.  Yout attempts to remedy this deficiency by alleging that the RIAA's circumvention notices amount to an allegation of secondary copyright infringement and that Yout's customers interpreted the notices as alleged copyright infringement.  *See* SAC, Doc. No. 45, at 27 ¶¶ 136-137.  But Yout's arguments are not persuasive, because the notices stated that YouTube's technological measure (therein, "rolling cipher") "*protects* [the RIAA's] members' works on YouTube from unauthorized copying/downloading," not that Yout itself was infringing the copyrighted works.  *Id.* at 28 ¶ 137.

Furthermore, even assuming that the RIAA's notices constituted an allegation of secondary copyright infringement, Yout has provided no case law that suggests that such an allegation could result in a violation of section 512(f), nor have I found any caselaw suggesting so.  I decline to credit that claim.

Moreover, I agree with the RIAA that Yout alleges no facts suggesting that the RIAA "knowingly" misrepresented the nature of Yout's service.  To do so, a defendant must have actual knowledge that it is making a misrepresentation of fact.  *Cabell v. Zimmerman*, 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010).  But, again, Yout alleges no facts suggesting that the RIAA "knowingly" misrepresented the nature of Yout's service.  *Ningbo Mizhihe I&E Co., Ltd. v. Does 1-200*, 2020 WL 2086216, at *3-4 (S.D.N.Y. Apr. 30, 2020) (dismissing a Section 512(f) claim where "there [wa]s insufficient material in the pleadings to support the inference that [the p]laintiff knew their copyrights were not enforceable"); *Cabell*, 2010 WL 996007, at *4 (dismissing a Section 512(f) claim where the complaint "allege[d] no facts from which a court could find it facially plausible that Defendant knew it was misrepresenting the facts when it wrote to YouTube").

Because section 512(f) only covers knowing misrepresentations of copyright infringement and not circumvention of a technological measure, I **grant** the RIAA's motion to dismiss Yout's 17 U.S.C. § 512(f) claim.

C.   Counts Three and Four (Business Disparagement and Defamation Per Se)

Yout additionally alleges common law business disparagement and defamation *per se* claims, arguing that the RIAA's issuing of public take down notices to Google has prejudiced Yout and resulted in damages, including "harmed reputation, loss of business, loss of profits, loss of revenue, and loss of goodwill."  SAC, Doc. No. 45, at 29-31 ¶¶ 149-168.  The RIAA contends that Yout has failed to state a claim because the statements made in the notices are not false because Yout has not sufficiently pled that its software does not circumvent YouTube's technological measures.  *See* Doc. No. 28-1, at 16-18.  Because I have concluded that Yout has not pled that its software plausibly does not circumvent the YouTube TPM, I grant the RIAA's motion to dismiss Yout's common law defamation claims.

1.   *Yout has not plausibly alleged all the necessary elements for its business disparagement and defamation per se claims.*

To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.  *Dorfman v. Smith*, 342 Conn. 582, 600 n.7 (2022).  Business disparagement is treated like common law defamation as applied to "a statement that disparages a person's goods or services."  *Qsp, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 360 (Conn. 2001).

Here, Yout has not plausibly pled every element of a prima facie case of business

disparagement and defamation *per se*.  The element that the RIAA argues Yout has failed to

plausibly plead is that the assertions in the take down notices were false.  As discussed above,

Yout has not plausibly pled that its software does not violate section 1201 of the DMCA.

Therefore, the statements made by the RIAA in its take down notices are plausibly not false.

Accordingly, I **grant** the RIAA's motion to dismiss Counts Three and Four.

### D.  Leave to Replead

In general, the Court will grant leave to amend a complaint upon granting a motion to

dismiss.  *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (cleaned up).  However,

"[a]lthough Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend

'shall be freely given when justice so requires,' it is within the sound discretion of the district

court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200

(2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)).  The Court may deny leave for a good reason,

including futility, bad faith, undue delay, or undue prejudice to the opposing party.  *Foman v.

Davis*, 371 U.S. 178, 182 (1962).  I conclude that dismissal with prejudice is warranted here for

two reasons.

One, I have already granted Yout leave to amend the deficiencies in its Amended

Complaint, which repleading did not cure.  At that time, the RIAA had already moved to dismiss

its amended complaint, and Yout was on notice of the RIAA's arguments.  Nevertheless, Yout

did not cure the deficiencies in the Amended Complaint upon repleading.  In such circumstances,

denying leave to amend is not an abuse of discretion.  *See, e.g.*, *Nunes v. Cable News Network,

Inc.*, 31 F.4th 135, 147 n.7 (2d Cir. 2022) (denial of leave to replead was proper where, *inter

alia*, the plaintiff had "receiv[ed] a preview" of the defendant's motion to dismiss); *In re*

*American Express Co. Shareholder Litigation*, 39 F.3d 395, 402 (2d Cir. 1994) (affirming dismissal with prejudice because, *inter alia*, plaintiffs had two opportunities to amend their complaint); *Mooney v. Vitolo*, 435 F.2d 838, 839 (2d Cir. 1970) (affirming dismissal with prejudice where plaintiffs had twice amended their complaint).

Two, the instant complaint is Yout's second amended complaint, and there is no reason to believe that Yout could amend its complaint to cure the deficiencies herein.  The Second Circuit has advised that when the problem with a cause of action is substantive and better pleading will not cure it, repleading is futile and the Court should not grant the party leave to replead.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss.") (internal citation and quotation marks omitted).  In such circumstances, leave to replead is not required.  *E.g.*, *Joseph v. Springer Nature Am. Inc.*, 2021 WL 6105369, at *2 (2d Cir. Dec. 21, 2021) ("Because Joseph has already had two chances to amend his complaint and the substantive problems with it remain, we affirm the District Court's decision to deny Joseph's motion to amend his complaint a third time."); *Perry v. Mary Ann Liebert, Inc.*, 765 F. App'x 470, 473 (2d Cir. 2019) ("Perry's already twice amended complaint, 'liberally read, does not suggest that the plaintiff 'has a claim that she has inadequately or inartfully pleaded' and that she should therefore be given a chance to reframe her claim.") (quoting *Cuoco*, 222 F.3d at 112).

**IV.      Conclusion**

For the foregoing reasons, I **grant** the RIAA's motion to dismiss.  I direct the Clerk to

enter judgment in favor of the defendants and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
